IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
Fayetteville Division

| | |
|---|---|
| In re:<br><br>ALLENS, INC. and ALL VEG, LLC,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. Case No. 13-73597 and 13-73598<br><br>(Joint Administration Requested)<br>Under Case No. 13-73597 |

**MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER (A) AUTHORIZING THE DEBTORS TO PAY AND HONOR ALL:  (I) PREPETITION COMPENSATION AND BENEFITS TO EMPLOYEES, (II)  PREPETITION COMPENSATION AND RELATED FEES ASSOCIATED WITH TEMPORARY EMPLOYEES, (III)  PREPETITION EMPLOYEE BENEFIT PROGRAMS; AND (IV)  WITHHOLDING OBLIGATIONS, AND (B) AUTHORIZING BANKS TO HONOR RELATED TRANSFERS**

The above-captioned debtors and debtors in possession (collectively, the "**Debtors**") hereby move the Court (the "**Motion**") pursuant to sections 105, 363, 503, 507(a)(4), 507(a)(5), 541, 1107 and 1108 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**"), and Rules 6003 and 6004(h) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), for entry an order substantially in the form of the proposed order annexed as **Exhibit A**  (a) authorizing, but not directing, the Debtors to pay and honor (i) prepetition compensation and other amounts owed to the Debtors' current employees up to the relevant statutory cap for each employee,[2] (ii) prepetition compensation and related fees associated with the Debtors' temporary employees, including payments to and through its temporary staffing agencies, (iii) all prepetition employee benefit programs, as described herein, (iv)  all prepetition federal, state and other withholding obligations (collectively, the "**Employee**

---

[1] The Debtors, along with the last four digits of each Debtor's tax identification number, are: All Veg, LLC (9250) and Allens, Inc. (5020).  The Debtors' business address is 305 E. Main Street, Siloam Springs, Arkansas 72761.

[2]  The Debtors do not believe that any employee is owed more than the statutory cap of $12,425 provided in Section 507(a)(4) of the Bankruptcy Code.

1

**Obligations**"); and (b) authorizing all banks to honor the Debtors' prepetition checks or electronic transfers for payment of any of the foregoing. In support of the Motion, the Debtors respectfully state as follow:

## Status of the Case

1. On the date hereof (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

2. The Debtors have continued in possession of their properties and are operating and managing their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. No request has been made for the appointment of a trustee or examiner. A creditors' committee has not yet been appointed in these cases.

## Jurisdiction, Venue, and Statutory Predicates

4. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. § 1408. This matter is core within the meaning of 28 U.S.C. § 157(b)(2).

5. The statutory predicate for the relief sought herein are sections 105, 363, 503, 507, 541, 1107 and 1108 of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004(h).

## Background

6. Allens, Inc. ("**Allens**"), a wholly owned subsidiary of All Veg, LLC, ("**All Veg**" and together with Allens, the "**Debtors**"), is a leading independent producer of canned vegetables serving the United States retail and foodservice channels. The Debtors are headquartered in Siloam Springs, Arkansas. All Veg is a holding company without employees or assets other than the stock of Allens. A detailed factual background of the Debtors' business and

2

operations, as well as the events precipitating the commencement of these cases, is more fully set forth in the *Declaration of Jonathan C. Hickman in Support of the Debtors' Chapter 11 Petitions and Requests for First Day Relief* (the "**First Day Declaration**"), filed contemporaneously herewith and incorporated herein by reference.

**A.     Employees**

7.     The Debtors employ approximately 1173 individuals, which includes Rick Allen, Josh Allen and Josh Allen, as part of their business enterprise, approximately 766 are hourly employees (the "**Hourly Employees**") and approximately 162 are salaried (the "**Regular Employees**"). In addition, as of the Petition Date, the Debtors' workforce was comprised of approximately 319 temporary employees hired on a temporary basis through one of three staffing agencies (the "**Temporary Employees**" and together with the Regular Employees, the "**Employees**").

8.     The Employees perform a variety of crucial functions for the Debtor, including, without limitation, processing various products for its vegetable production business and canned vegetable business lines, interacting with customers and vendors, marketing the Debtors' products and generally sustaining the Debtors' business operations through various administrative, accounting, supervisory and managerial functions. The Employees' skills and their knowledge and understanding of the Debtors' infrastructure, operations and customer relations are essential to the Debtors' efforts to preserve and maximize the value of the Debtors' business and assets. Without the continued dedicated services of the Employees, the Debtors would not be able to continue operations.

**B.      Wages and Salary**

9.      All Regular Employees are paid their wages or salaries (for the purposes of this Motion, the term "**Wages**" shall mean wages, commissions and/or salaries) each Friday on a weekly basis one week in arrears. Certain members of the Allens' sales team are eligible to earn commissions if the sales team member achieves certain targets. The sales commissions are paid at the end of each fiscal quarter. Throughout each week, the Hourly Employees report their time and attendance through a Kronos system at each of the Debtors' facilities. Each Monday the Debtors begin processing payroll for the period ending the prior Saturday. Payroll is paid out each Friday. Nearly all of the Regular Employees receive their Wages via direct deposit either through their existing bank accounts or through a bank card account opened specifically for the payment of Wages. Therefore, for any given pay period the Debtors cut only a handful of checks related to Regular Employees who have not been set up for direct deposit. The Debtors' process payroll through their corporate office; no third-party processor is involved.

10.      Weekly gross Wages to the Regular Employees average approximately $774,000. Because the Debtors pay their Regular Employees in arrears, as of the Petition Date approximately one weeks' Wages will be outstanding. As of the Petition Date, the Debtors estimate the accrued and unpaid Wages are approximately $885,000.

**C.      Benefits**

11.      In the ordinary course of business, and as is customary for companies of their size, the Debtors maintain various employee benefits and policies that provide the Regular Employees with medical, dental, disability insurance and other benefits which are described in more detail below (collectively, the "**Employee Benefits**").

4

    a.    <u>Vacation Days, Sick/Personal Days and Other Leaves</u>

12.    The Debtors offer paid time off ("**PTO**") and certain paid holidays to all Employees. Employees may use their PTO for either vacation or sick days, in their discretion. Employees accrue PTO on a schedule that is dependent on the individual Employee's length of service. Employees whose length of service is (a) less than one year earn four (4) PTO hours per month (and may earn up to six (6) PTO days per year), (b) more than one (1) year, but less than eight (8) years, earn eight (8) PTO hours per month (and may earn up to twelve (12) PTO days per year), (c) more than eight (8) years, but less than twenty (20) years, receive earn twelve (12) PTO hours per month (and may earn up to eighteen (18) days per year), and (d) twenty (20) or more years earn sixteen (16) PTO hours per month (and may earn up to twenty-four (24) PTO days per year). Employees' PTO accrues based on the Debtors' fiscal year (March 1 to February 28/29).

13.    Employees must use their PTO in the year in which it is earned. Employees may not receive pay in lieu of time off. Employees may take up to half of their maximum PTO at any time during the fiscal year by "borrowing" PTO against their maximum.

14.    The Debtors seek authority to continue to allow its Employees to use their PTO in the ordinary course of business, including PTO that accrued for prepetition services, in accordance with the Debtors' prepetition practices and procedures.

    b.    <u>Medical/Dental/Vision/Prescription Drugs</u>

15.    The Debtors currently provide a preferred provider plan (the "**PPO Plan**") to its Regular Employees and their dependents and one former employee, which includes medical, vision, and prescription drug benefits. The PPO Plan is administered by Blue Cross Blue Shield. The PPO Plan is self-insured through a health benefit trust. Therefore, although Blue Cross Blue

5

Shield administers the PPO Plan, the Debtors are ultimately responsible for the payment of any claims (less deductibles and co-pays) made against that plan. Premiums, as determined by actuarial analysis, are funded approximately 75% by the company and 25% by the employees. As of the Petition Date, the Debtors estimate that the accrued and unpaid costs for the PPO Plan is approximately $648,000 for all of its Employees.

16. Regular Employees receive prescription drug coverage through Script Care. Regular Employees may also enroll in a dental benefits plan administered by Delta Dental, which requires a small weekly payroll deduction for premiums, and vision care through Blue Cross Blue Shield for a flat $200 worth of coverage a year. As of the Petition Date, the Debtors estimate that the accrued and unpaid costs for Script Care is approximately $42,500 for all of its Regular Employees. Further, the Debtors estimate that the accrued and unpaid costs owed to Delta Dental as of the Petition Date are approximately $5,000 for all of its Regular Employees.

17. Because the PPO Plan is deemed a "high deductible plan" the Debtors' Regular Employees may contribute pre-tax dollars to a Health Savings Account to help pay for premiums, deductibles and co-pays under PPO Plan and dental plan. The Debtors believe that such withheld funds, to the extent that they remain in the Debtors' possession, constitute moneys held in trust and therefore, are not property of the Debtors' bankruptcy estates.

    c.    <u>Workers Compensation</u>

18. As described more fully in the *Motion of the Debtors for Entry of an Order Authorizing Debtors to (A) Maintain Existing Insurance Policies, Pay All Policy Premiums and Brokers' Fees Arising Thereunder, and Renew or Enter into New Policies, and (B) Continue Insurance Premium Financing Programs, Pay Insurance Premium Financing Obligations Arising in Connection Therewith and Renew or Enter into New Premium Financing*

*Arrangements*, the Debtors maintain self-insured workers' compensation insurance through group captive insurance (the "**Group Captive**"). The Group Captive is prefunded and collateralized. The Debtors pay premiums to the Group Captive through a premium financing agreement. The Debtors also maintain other workers compensation insurance through other collateralized insurance programs.

    d.    <u>Post Employment Programs and Plans</u>

19. The Debtors also offer insurance as required under COBRA to all employees who leave the employ of the Debtors (the "**COBRA Plan**") which is administered by Ceridian COBRA Services. In addition, the Debtors offered a fully-insured health insurance plan to retirees of the Debtor who retired before January 1, 2005, were at least sixty years of age at retirement, and who had accrued at least ten years of service with the Debtor at the time of their retirement (the "**Retiree Plan**"). Approximately 27 retired former employees currently participate in the Retiree Plan and no new enrollees in the Retiree Plan are permitted. The Retiree Plan's monthly premium of approximately $2,250 is funded by the Debtors. As of the Petition Date, the Debtors estimate that the accrued and unpaid cost for the Retiree Plan is approximately $2,250. On October 25, 2013, the Debtors notified those former employees participating in the Retiree Plan that the Debtors were terminating the Retiree Plan effective immediately, but would continue to provide benefits under the Retiree Plan until January 31, 2014.

20. Regular Employees are eligible to enroll in a 401(k) plan (the "**401k Retirement Plan**") on the first day of hire or any time thereafter. The 401k Retirement Plan is administered by Bank of America Merrill Lynch, and it allows participating Employees to defer as much as one hundred percent (100%) of their eligible wages up to the IRS dollar limitation. The fees

associated with the 401k Retirement Plan are paid through disbursements from the 401k Retirement Plan or through the amounts Employees have invested. The Debtors do not pay any fees related to the 401k Retirement Plan. The Debtors match 25% of the first 4% that the employee contributes, excluding highly compensated individuals as defined by the Internal Revenue Service. The Debtors request authority to continue its 401k Retirement Plan, including matching of contributions consistent with past practices.

21. The Debtors further offer a supplemental executive retirement plan ("**Supplemental Retirement Plan**") to approximately twenty-seven (27) of the Debtors' Employees who are deemed to be "highly compensated" under the Tax Code. The Debtors do not match any contributions made by participating Employees in the Supplemental Retirement Plan. The Debtors request authority to continue its Supplemental Retirement Plan.

e. <u>Other Employee Plans</u>

22. In addition to the foregoing, the Debtors offer a number of other plans and programs to the Regular Employees. Regular Employees enrolled in the health plan are automatically enrolled in a basic life and accidental death and dismemberment plan through Lincoln Life. The Debtors pays 75% of Regular Employees' premiums. At their option, Employees may obtain additional coverage by paying an additional premium.

23. Salaried Employees are also automatically enrolled in both short-term and long-term disability plans. The short term disability plan is self insured and the long-term disability is fully insured. The Debtor pays premiums at an average cost of $4,800 per month for the Salaried Employees' long-term disability programs. Due to the short-term disability being self insured, the average monthly cost for salaried employees varies by the amount of claims incurred. For the past twelve months the claims incurred by salaried employees have equaled $5,000 per

month on average. For hourly employees, the debtor maintains a separate voluntary long-term disability plan that is fully insured and administers a self insured voluntary short term disability program. The hourly disability plans are purchased by Employee-paid premiums.

24. The Debtors further provide term life insurance for certain employees that have been employed with the Debtors for approximately 20 years under a program in place at the time they were hired, at a cost of approximately $3,600 per year to the Debtors. As of the Petition Date, the Debtors estimate that the accrued and unpaid costs for the term life insurance is approximately $3,600 for all of its Regular Employees.

25. The Debtors also offer all Regular Employees the option of participating in voluntary supplemental life insurance and permanent life insurance programs. The regular Employees may also purchase supplemental medical insurance and other medical programs. Each of these plans are fully insured and purchased by Employee-paid premiums.

  f. <u>Reimbursement of Employee Costs and Expenses</u>

26. The Debtors have a formal policy whereby their Employees seek reimbursement of business-related expenses. The Debtors reimburse Employees on a regular basis for certain ordinary course expenses incurred within the scope of the Employees' employment, including travel, lodging, transportation, meals, cell phone bills, fax charges and other miscellaneous expenses (collectively, the "**Business Expenses**"). All reimbursement requests must be submitted by means of an approved expense report along with the receipts. The Debtors anticipate that many Employees will have not yet submitted their requests for accrued and unpaid Business Expenses. Therefore, by this Motion, the Debtors seek authority to continue their prepetition practices with respect to the Business Expenses and to pay all prepetition amounts outstanding in connection therewith.

27.     The Debtors provide certain employees either (i) an automobile allowance or (ii) an additional benefit to allow certain employees to operate a vehicle, and to facilitate those employees' commute to work (the "**Car Allowance**").  As of the Petition Date, approximately 19 employees receive a Car Allowance, these employees include Rick Allen, Nick Allen and Josh Allen.  The Debtors estimate that as of the Petition Date, the accrued and unpaid expenses related to the Car Allowance are approximately $2,100.

28.     The Debtors also own a number of properties near their operations which the Debtors rent out to Regular Employees at a below market rate.  As of the Petition Date, the Debtors are renting properties to approximately 4 Regular Employees.  The Debtors request authority to continue to renting these properties to their Regular Employees.

**D.     Withholding Obligations**

29.     The Debtors, as employers, are required by law to withhold certain amounts from their Employees' Wages for remittance to appropriate authorities which may include, but is not limited to, federal, state and local taxes, Social Security, Medicare, unemployment taxes, disability, or garnishments,[3] or, other voluntary withholdings such as contributions to 401K plans, insurance contributions, and charitable contributions, if any (collectively, the "**Withholding Obligations**").  Because some amounts withheld on account of Withholding Obligations may be attributable to prepetition periods, and may be in the Debtors' possession on the Petition Date, the Debtors seek authority to continue and honor those Withholding Obligations.

---

[3] To the extent required to comply with orders received regarding the garnishment of Wages for, *inter alia*, domestic support, health support, or taxes, the Debtors garnish such Wages and remit the garnished funds to the applicable governmental authority.

NY 242982072v22

30. The Debtors believe that such withheld funds, to the extent that they remain in the Debtors' possession, constitute moneys held in trust and therefore, are not property of the Debtors' bankruptcy estates. Thus, whether or not such funds are prepetition amounts, the Debtors believe that providing such funds to the appropriate parties does not require Court approval. Nevertheless, out of an abundance of caution, the Debtors are seeking Court authority to pay any outstanding amounts owed by the Debtors for Withholding Obligations, in the ordinary course of business, including those incurred prior to the Petition Date.

**D.    Temporary Employees**

31. At any given time, approximately 25% of the Debtors' workforce is comprised of Temporary Employees hired on a temporary basis through one of three staffing agencies – Worksource, Inc. (for traditional staffing needs), Allegiant International (for farm and seasonal agricultural workers), and National Trucking Services (for truck drivers) (collectively, the "**Staffing Agencies**"). The number of the Debtors' Temporary Employees fluctuates depending on the season. All three companies have common ownership.

32. A large number of the Temporary Employees are farm and agricultural employees. The Debtors are required to comply with the Migrant and Seasonal Agricultural Worker Protection Act (the "**MSPA**") with respect to many of the Temporary Employees. The MSPA is designed to provide migrant and seasonal farmworkers with protections concerning pay, working conditions, and work-related conditions, to require farm labor contractors to register with the U.S. Department of Labor, and to assure necessary protections for farmworkers, agricultural associations, and agricultural employer. The Debtors are not licensed farm contractors, therefore they rely on the services of the Staffing Agencies, one of which is a licensed farm contractor.

11

33.     The Wages owed to the Temporary Employees are paid on a weekly basis, on Fridays, in arrears, by ACH payment directly to the Staffing Agencies.  The Staffing Agencies make payment to the individual Temporary Employees for housing, meals, healthcare, unemployment and workers' compensation insurance and taxes.  As of the Petition Date, weekly Wages to Temporary Employees (through the Staffing Agencies), average approximately $225,000.  One payment to each Staffing Agency, rather than individual payments to over 250 Temporary Employees greatly lessens the burden on the Debtors' payroll department and reduces the costs associated therewith.  As of the Petition Date, the Debtors estimate that the accrued and unpaid cost for Temporary Employees is approximately $800,000.

34.     Because Temporary Employees represent 20%-25% of the Debtors' workforce at a given time and without the Staffing Agencies the Debtors are unable to meet the requirements for retaining such workers, maintenance of the Debtors relationship with the Staffing Agencies is critical to the Debtors' relationship with its Temporary Employees, which, in turn, is critical to the Debtors' continued viability. As such, the Debtors respectfully request the authority to pay those amounts earned by unpaid to Temporary Employees by continued payment to the Staffing Agencies.

## Relief Requested[4]

35.     In order to enable the Debtors to maintain morale during this critical time, retain their current Employees, and minimize the personal hardship such Employees may suffer if prepetition Employee Obligations are not paid when due or honored as expected, the Debtors, by this Motion, seek an order of this Court authorizing, but not directing, the Debtors to pay and

---

[4] Any payment to be  made or authorization requested, hereunder shall be subject to the requirements and restrictions imposed on the Debtors under any order authorizing the use of cash collateral or authorizing the Debtors to enter into a debtor-in-possession financing facility and the documents associated with such facility, and shall be subject to all claims, liens, security interests and priorities granted in connection with such facility.

NY 242982072v22

honor all Employee Obligations and authorizing all banks to honor the Debtors' prepetition checks or electronic transfers for payment of any of the Employee Obligations.

36. In addition, the Debtors seek an order authorizing all banks to receive, process, honor, and pay any and all checks or electronic transfers drawn on the Debtors' payroll and general disbursement accounts related to ordinary course Employee Obligations, whether presented before or after the Petition Date, provided that sufficient funds are on deposit in the applicable accounts to cover such payments.

## Basis for Relief Requested

37. Courts generally acknowledge that it is appropriate to authorize the payment (or other special treatment) of prepetition employee obligations in appropriate circumstances. Pursuant to Bankruptcy Code sections 1107(a) and 1108, debtors in possession are authorized to operate the business while maintaining a "fiduciary duty to act in the best interest of the estate as a whole, including its creditors, equity interest holders and other parties in interest." *LaSalle Nat'l Bank v. Perelman*, 82 F.Supp.2d 279, 292 (D. Del. 2000). Implicit in the fiduciary duties of any debtor in possession is the obligation to "protect and preserve the estate, including an operating business's going-concern value." *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002). Some courts have noted there are instances in which a debtor can fulfill this fiduciary duty "by the preplan satisfaction of a prepetition claim." *Id*. The *CoServ* court specifically noted that preplan satisfaction of prepetition claims would be a valid exercise of the debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate." *Id*.

38. In the instant case, payment of the Employee Obligations is necessary to protect and preserve the Debtors' business operations. At this important time, the Debtors can ill afford

13

the devastating hit to employee morale that would result if the Debtors were not able to honor the Employee Obligations to its Employees, including its Temporary Employees. This is especially true for the Wages owed to the Regular Employees who are paid directly by the Debtors as well as the Temporary Employees who are paid via lump sum payment to the Staffing Agencies. These Employees simply must be paid on account of their Wages, which they are paid one week in arrears, for the Debtor to continue as a viable enterprise. Thus, the Court should authorize the relief requested in this Motion.

39. Consistent with the Debtors' fiduciary duties, this Court may also grant the relief requested herein pursuant to sections 363(b), 363(c), and 105(a)[5] of the Bankruptcy Code and the "necessity of payment" doctrine (discussed below). 11 U.S.C. §§ 363(b), 363(c), and 105(a). Section 363(b)(1) of the Bankruptcy Code states in pertinent part that: "The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). If a debtor's determination to use estate assets represents a reasonable business judgment, the bankruptcy court should approve such use. Moreover, this Court, as well as other courts have approved the payment of prepetition claims of employees for wages, salaries, expenses, and benefits on the ground that the payment of such claims were necessary to effectuate a successful reorganization or liquidation. *See, e.g., In re Nat'l Home Centers, Inc.*, Case No. 09-bk-76195 (Bankr. W.D. Ark. Dec. 15, 2009); *In re Affiliated Foods SW, Inc.,* Case No. 09-13178 (RDT) (Bankr. E.D. Ark. May 23, 2009).

40. The "necessity of payment" doctrine authorizes the relief requested in this Motion because the Employees are indispensable to both the Debtors' operations and the successful resolution of these chapter 11 cases. In addition, the Debtors believe that the unpaid wages and

---

[5] Section 105(a) of the Bankruptcy Code further provides, in pertinent part, that a "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

other benefits earned within 180 days of the Petition Date that the Debtors seek to pay are entitled to priority status under sections 507(a)(4) and (a)(5) of the Bankruptcy Code and individually do not exceed $12,425 (*i.e.*, the maximum priority amount under that statute, effective April 1, 2013).

41.     The Employees are essential to the continued operation of the Debtors' business, and the Employees' morale directly affects their effectiveness and productivity. Consequently, it is critical that the Debtors continue, in the ordinary course, those personnel policies, programs, and procedures that were in effect prior to the Petition Date. If the checks issued and electronic fund transfers requested in payment of any of the compensation or other Employee obligations are dishonored, or if such obligations are not timely paid postpetition, the Employees may likely suffer extreme personal hardship and may be unable to pay their daily living expenses. A loss of employee morale and goodwill at this juncture would undermine the Debtors' stability, and undoubtedly would have an adverse effect on the Debtors, their customers, the value of their assets and business, and their ability to achieve their objectives in chapter 11. As noted by the court in *In re Equalnet Communications Corp.*, 258 B.R. 368 (Bankr. S.D. Tex. 2000), "the need to pay prepetition employee wage claims in an ordinary course of business time frame is simple common sense. Employees are more likely to stay in place and to refrain from actions which could be detrimental to the case and/or the estate if their pay and benefits remain intact and uninterrupted." *Id.* at 370.

42.     As part of the foregoing relief, the Debtors also seek authority to pay all Withholding Obligations. The failure to make such payments may also subject the Debtors and their officers to federal or state liability. *See City of Farrell v. Sharon Steel Corp.*, 41 F.3d 92 (3d Cir. 1994) (state law requiring debtor to withhold city income tax from its employees' wages

15

created trust relationship between debtor and city for payment of withheld taxes); *DuCharmes & Co. v. Michigan* (*In re DuCharmes & Co.*), 852 F.2d 194 (6th Cir. 1988) (noting the special liabilities for failure to pay trust fund taxes). Moreover, the monies payable for amounts held in trust like the Withholding Obligations generally are not property of a debtor's estate. *See Begier v. IRS,* 496 U.S. 53, 59 (1990) (because the debtor does not own an equitable interest in property he holds in trust for another, that interest is not "property of the estate"). The failure to transfer these withheld funds could result in hardship to certain Employees or others. Furthermore, if the Debtors cannot remit these amounts, the Employees may face legal action due to the Debtors' failure to submit these payments. Finally, payment of Withholding Obligations that constitute "trust fund" taxes will not prejudice general unsecured creditors of the Debtors' estates as the relevant taxing authorities would assert priority claims under section 507(a)(8) of the Bankruptcy Code in respect of such obligations.

43. The relief requested in this Motion is necessary to the viability of the Debtors' business and maximization of the value of the Debtors' assets. Accordingly, the Debtors submit that the relief sought herein is consistent with sections 105(a), 507(a), and 541 of the Bankruptcy Code.

44. Nothing in this Motion, nor any payments made by the Debtors pursuant to the Motion, shall be deemed an assumption or rejection of any Employee Benefit Plan, employment agreement, other program or contract, or otherwise affect the Debtors' rights under section 365 of the Bankruptcy Code to assume or reject any executory contract between the Debtors and any Employee.

**Bankruptcy Rule 6003 Satisfied and Request for Waiver of Stay**

45. The Debtors further submit that because the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtors for the reasons set forth

herein, Bankruptcy Rule 6003 has been satisfied and the relief requested herein should be granted.

46. Specifically, Bankruptcy Rule 6003 provides:

> Except to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, grant relief regarding the following: . . . (b) a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition, but not a motion under Rule 4001.

47. No court within the Eighth Circuit has interpreted the "immediate and irreparable harm" language in the context of Bankruptcy Rule 6003 in any reported decision. However, the Eighth Circuit Court of Appeals has interpreted the same language in the context of preliminary injunctions. In that context, irreparable harm has been interpreted as a continuing harm that cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation. *S.J.W. ex rel. Wilson v. Lee's Summit R-7 School Dist.*, 696 F.3d 771, 778 -779 (8th Cir. 2012) (citing *Roudachevski v. All–Am. Care Ctrs., Inc.*, 648 F.3d 701, 706 (8th Cir. 2011)). Further, the harm must be shown to be actual and imminent, not speculative or unsubstantiated. *Id.* ("[T]he speculative nature of the threatened harm support[s] the denial of injunctive relief.") (quoting *Minn. Ass'n of Health Care Facilities, Inc. v. Minn. Dep't of Pub. Welfare*, 602 F.2d 150, 154 (8th Cir.1979)).

48. The Debtors further seek a waiver of any stay of the effectiveness of the order approving this Motion. Pursuant to Rule 6004(h) of the Bankruptcy Rules, "[an] order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of fourteen (14) days after entry of the order, unless the court orders otherwise." As

set forth above, the relief requested herein is essential to prevent irreparable damage to the Debtors' operations, going-concern value, and restructuring efforts.

49. Accordingly, the relief requested herein is appropriate under the circumstances and under Bankruptcy Rules 6003 and 6004(h).

## Notice

50. As this Motion is seeking "first day" relief, the Debtors are serving copies of the Motion as a "First Day Motion" by email, fax or overnight mail to the "Special Service List" as defined and set forth in the *Motion To Limit Notice, Approve Special Service List And Establish Notice Procedures* and the *Motion For Expedited Hearing On First Day Motions*, each filed on the Petition Date. The Debtors respectfully submit that because the relief requested in the Motions is necessary to avoid immediate and irreparable harm to the Debtors' estates, cause exists to limit the notice pursuant to 11 U.S.C. § 102(1) and Bankruptcy Rule 2002(a)(2) and that no other or further notice is necessary.

## No Prior Request

51. No previous application for the relief sought herein has been made to this or any other court.

## Conclusion

WHEREFORE, the Debtors respectfully request that this Court enter an order granting the relief requested herein and that it grant the Debtors such other and further relief as is just and proper.

Dated: October 28, 2013          Respectfully submitted,

                                           MITCHELL, WILLIAMS, SELIG,
                                           GATES & WOODYARD, P.L.L.C.
                                           425 West Capitol Avenue, Suite 1800
                                           Little Rock, Arkansas 72201-3525

Telephone: (501) 688-8800
Facsimile: (501) 688-8807

By: */s/ Stan D. Smith*
    Stan D. Smith (Ark. Bar No. 90117)
    Lance R. Miller (Ark. Bar No. 85109)
    Chris A. McNulty (Ark. Bar No. 08198)

    -and-

GREENBERG TRAURIG, LLP
Nancy A. Mitchell (*pro hac vice pending*)
Maria J. DiConza (*pro hac vice pending*)
Matthew L. Hinker (*pro hac vice pending*)
200 Park Avenue
New York, New York 10166
Telephone: (212) 801-9200
Facsimile: (212) 801-6400

*Proposed Counsel for the Debtors
and Debtors in Possession*