## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF ARKANSAS
### Fayetteville Division

| | |
|---|---|
| In re: | Chapter 11 |
| ALLENS, INC. and ALL VEG, LLC,[1] | Case No. 5:13-bk-73597 (BTB) and 5:13-bk-73598 (BTB) |
| Debtors. | Joint Administration Under Case No. 5:13-bk-73597 (BTB) |

**AGREED INTERIM ORDER PURSUANT TO 11 U.S.C. SECTIONS 105, 361, 362, 363 AND 364 AND RULES 2002, 4001 AND 9014 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE (1) AUTHORIZING INCURRENCE BY THE DEBTORS OF POST-PETITION SECURED INDEBTEDNESS WITH ADMINISTRATIVE SUPERPRIORITY, (2) GRANTING LIENS, (3) AUTHORIZING USE OF CASH COLLATERAL BY THE DEBTORS PURSUANT TO 11 U.S.C. SECTION 363 AND PROVIDING FOR ADEQUATE PROTECTION, (4) MODIFYING THE AUTOMATIC STAY AND (5) SCHEDULING A FINAL HEARING**

THIS MATTER having come before this Court upon motion (the "**DIP Motion**") by All Veg, LLC and Allens, Inc. (collectively, the "**Debtors**"), as debtors in the above captioned chapter 11 cases (collectively, the "**Chapter 11 Cases**"), seeking, among other things, entry of an interim order (this "**Interim Order**") authorizing the Debtors to:

(i)     Obtain credit and incur debt on an interim basis for a period (the "**Interim Period**") from the commencement of the case through and including the earlier of (x) the Final Hearing (as defined below) and (y) twenty-four (24) days after the Petition Date, up to the aggregate amount of $114,358,560.09 at any time outstanding (inclusive of debt previously extended by the Pre-Petition First Lien Secured Parties (as defined below) and refinanced with the proceeds of such credit as set forth below);

---

[1] The Debtors, along with the last four digits of each Debtor's tax identification number, are: All Veg, LLC (9250) and Allens, Inc. (5020).  The Debtors' business address is 305 E. Main Street, Siloam Springs, Arkansas 72761.

*NY 371120084v8*

(ii)      (a) Establish that financing arrangement (the "**DIP Facility**") pursuant to (I) that certain Debtor-In-Possession Credit Agreement substantially in the form attached hereto as Exhibit A and introduced into evidence at the Interim Hearing (the "**DIP Credit Agreement**"),[2] by and among Allens, Inc. (the "**Borrower**"), All Veg, LLC (the "**Guarantor**"), Bank of America, N.A., as agent (the "**DIP Agent**") and the lenders and other financial institutions party thereto or which have extended credit thereunder (the "**DIP Lenders**," collectively with the DIP Agent, the "**DIP Secured Parties**") and (II) all other agreements, documents and instruments executed and/or delivered with, to, or in favor of the DIP Secured Parties including all "Loan Documents" under and as defined in the DIP Credit Agreement (in each case, as amended, modified or supplemented and in effect from time to time, the "**DIP Loan Documents**"); and (b) incur the "**Obligations**" under and as defined in the DIP Credit Agreement (collectively, the "**DIP Obligations**");

(iii)      Authorize the use of "cash collateral" (as such term is defined in section 363 of the Bankruptcy Code and the DIP Credit Agreement (the "**Cash Collateral**"), the proceeds of the loans made under the DIP Credit Agreement and of Letters of Credit issued (or deemed issued) under the DIP Credit Agreement for the purposes set forth herein and in the DIP Loan Documents and in accordance with the Budget attached hereto as Exhibit B and introduced into evidence at the Interim Hearing (the "**Budge**t");

(iv)      Grant, pursuant to section 364(c)(1) of the Bankruptcy Code, the DIP Agent (for the benefit of the DIP Secured Parties) superpriority administrative claim status in respect of all DIP Obligations, subject only to the Carve Out as provided herein;

---

[2]      Capitalized terms used in this Interim Order but not defined herein shall have the meanings ascribed to such terms in the DIP Credit Agreement.

2

*NY 371120084v8*

(v)     Grant, pursuant to sections 364(c)(2), 364(c)(3) and 364(d) of the Bankruptcy Code, the DIP Agent (for the benefit of the DIP Secured Parties) first priority priming, valid, perfected and enforceable liens, subject only to the Carve Out (as defined below), upon all of the Debtors' real and personal property as provided in and as contemplated by this Interim Order, the DIP Facility and the DIP Loan Documents;

(vi)     Grant the Pre-Petition Second Lien Agent (for the benefit of the Pre-Petition Second Lien Secured Parties) (each as defined below) Pre-Petition Second Lien Replacement Liens and Pre-Petition Second Lien Superpriority Claims (each as defined below) as adequate protection solely to the extent of any Diminution in Value (as defined below) of the Pre-Petition Second Lien Agent's interests in the Pre-Petition Second Lien Collateral (as defined below);

(vii)     Vacate and modify the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Loan Documents and this Interim Order;

(viii)     Schedule a final hearing (the "**Final Hearing**") to consider entry of an order (the "**Final Order**") granting the relief requested in the DIP Motion on a final basis and approve the form of notice with respect to the Final Hearing; and

(ix)     Waive any applicable stay and provide for immediate effectiveness of this Interim Order.

This Court having considered the DIP Motion, the Declaration of Jonathan C. Hickman in support of the Debtors' first day motions and orders, the DIP Facility, the DIP Credit Agreement and the other DIP Loan Documents and the evidence submitted at the hearing on this Interim Order (the "**Interim Hearing**"); and in accordance with Rules 2002, 4001(b), (c) and (d)

3

and Rule 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), due and proper notice of the DIP Motion and the Interim Hearing having been given; the Interim Hearing having been held and concluded; and it appearing that approval of the interim relief requested in the DIP Motion is necessary to avoid immediate and irreparable harm to the Debtors pending the Final Hearing and otherwise is fair and reasonable and in the best interests of the Debtors and their estates and is essential for the continued operation of the Debtors' business; and it further appearing that the Debtors are unable to secure unsecured credit for money borrowed allowable as an administrative expense under Bankruptcy Code section 503(b)(1); and there is adequate protection of the interests of holders of liens on the property of the estates on which liens are to be granted; and all objections, if any, to the entry of this Interim Order having been withdrawn, resolved or overruled by this Court; and after due deliberation and consideration and for good and sufficient cause appearing therefor:

**BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

A.     **Petition Date**.  On October 28, 2013 (the "**Petition Date**"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in this Court.   The Debtors continue in possession of their properties and operating their businesses as a debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

B.     **Jurisdiction and Venue**.  This Court has jurisdiction over these proceedings, pursuant to 28 U.S.C. §§ 157(b) and 1334, and over the persons and property affected hereby. Consideration of the DIP Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2). Venue for the Chapter 11 Cases and proceedings on the DIP Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

*NY 371120084v8*

C.      **Committee Formation**.  A statutory committee of unsecured creditors has not yet been appointed in the Chapter 11 Cases.

D.      **Notice**.   The Interim Hearing is being held pursuant to the authorization of Bankruptcy Rules 2002 and 4001.  Notice of the Interim Hearing and the emergency relief requested in the DIP Motion has been provided by the Debtors, whether by telecopy, email, overnight courier or hand delivery on the Petition Date, to certain parties in interest, including: (i) the Office of the United States Attorney General for the Western District of Arkansas, (ii) the Office of the United States Trustee, (iii) creditors holding the twenty (20) largest unsecured claims as set forth in the consolidated list filed with the Debtors' petitions, (iv) counsel to the Pre-Petition First Lien Agent, (vi) the Pre-Petition First Lien Agent, (vii) counsel to the Pre-Petition Second Lien Agent, (viii) the Pre-Petition Second Lien Agent, (ix) counsel to the proposed DIP Agent; (x) all secured creditors of record and (xi) the Internal Revenue Service (collectively, the "**Notice Parties**").  Under the circumstances, such notice of the Interim Hearing and the relief requested in the DIP Motion is due and sufficient notice and complies with sections 102(1), 364(c) and 364(d) of the Bankruptcy Code and Bankruptcy Rules 2002, 4001(c), 4001(d).

E.      **Debtors' Acknowledgements and Agreements**.  Without prejudice to the rights of parties in interest as set forth in paragraph 7 below, the Debtors admit, stipulate, acknowledge and agree that (collectively, paragraphs E (i) through E (ix) hereof shall be referred to herein as the "**Debtors' Stipulations**"):

        **(i)      Pre-Petition First Lien Loan Agreement**.  Prior to the commencement of the Chapter 11 Cases, the Borrower was party to (A) that certain Fourth Amended and Restated Credit Agreement dated as of June 20, 2012 (the "**Pre-Petition First Lien Loan Agreement**"), by and among the Debtor, Allens, Inc., as borrower, Bank of America, N.A., as Administrative Agent and L/C Issuer (the "**Pre-Petition First Lien Agent**"), and the financial institutions party thereto or

that have extended credit thereunder (the "**Pre-Petition First Lien Lenders**", collectively with the Pre-Petition First Lien Agent, the "**Pre-Petition First Lien Secured Parties**") and (B) all other agreements, documents and instruments executed and/or delivered with, to, or in favor of Pre-Petition First Lien Secured Parties, including the "Loan Documents" under and as defined in the Pre-Petition First Lien Loan Agreement (collectively with the Pre-Petition First Lien Loan Agreement, in each case, as amended, modified or supplemented and in effect from time to time, collectively, the "**Pre-Petition First Lien Loan Documents**").

(ii)     **Pre-Petition Second Lien Agreement**.  Prior to the commencement of the Chapter 11 Cases, the Debtors were party to that certain Second Lien Note Purchase Agreement, dated as of June 20, 2012 (the "**Pre-Petition Second Lien Note Purchase Agreement**"), by and among the Borrower, Cortland Capital Market Services LLC, as administrative agent (the "**Pre-Petition Second Lien Agent**"), and the financial institutions party thereto or that have extended credit thereunder (the "**Pre-Petition Second Lien Lenders**", and collectively with the Pre-Petition Second Lien Agent, the "**Pre-Petition Second Lien Secured Parties**" and, together with the Pre-Petition First Lien Secured Parties, collectively, the "**Pre-Petition Secured Parties**") and (B) all other agreements, documents and instruments executed and/or delivered with, to, or in favor of Pre-Petition Second Lien Secured Parties, including the "Note Documents" under and as defined in the Pre-Petition Second Lien Note Purchase Agreement (collectively, in each case, as amended, modified or supplemented prior to the Petition Date in accordance with the Pre-Petition First Lien Loan Documents, the "**Pre-Petition Second Lien Note Documents**");

(iii)     **Pre-Petition Debt Amount**.  As of the Petition Date, the Debtors were indebted under (A) the Pre-Petition First Lien Loan Documents in the approximate principal amount of $114,358,560.09, plus interest accrued and accruing, costs, expenses, fees (including attorneys' fees and legal expenses) other charges and other obligations, including, without limitation, all "Obligations" under and as defined in the Pre-Petition First Lien Loan Agreement (collectively the "**Pre-Petition First Lien Debt**"); and (B) the Pre-Petition Second Lien Note Documents in the approximate principal amount of $65,601,637.92, plus interest accrued and accruing, costs, expenses, fees (including attorneys' fees and legal expenses) other charges and other obligations, including, without limitation, all "Second Lien Obligations" as defined in the Pre-Petition First Lien Loan Agreement (collectively the "**Pre-Petition Second Lien Debt**" and together with the Pre-Petition First Lien Debt, the "**Pre-Petition Debt**").

(iv)     **Pre-Petition First Lien Guaranty and Collateral**.  The Pre-Petition First Lien Debt is guaranteed by All Veg, LLC (the "**Parent**") pursuant to that certain Parent Guaranty, dated as of June 20, 2012, executed by the Parent in favor of the Pre-Petition First Lien Agent (the "**Pre-Petition First Lien Guaranty**").  To secure the Pre-Petition First Lien Debt (including under and pursuant to the Pre-Petition First Lien Guaranty), the Debtors granted security interests and liens (the "**Pre-Petition First Liens**") to the Pre-Petition First Lien Secured Parties

6

upon substantially all of the Debtors' assets (the **"Pre-Petition First Lien Collateral"**),[3] with priority over all other liens except those liens permitted under the terms of the Pre-Petition First Lien Loan Documents and consented to by the Pre-Petition First Lien Agent.

**(v)** <u>**Pre-Petition Second Lien Guaranty and Collateral**</u>. The Pre-Petition Second Lien Debt is guaranteed by the Parent pursuant to that certain Parent Guaranty, dated as of June 20, 2012, executed by the Parent in favor of the Pre-Petition Second Lien Agent (the **"Pre-Petition Second Lien Guaranty"**). To secure the Pre-Petition Second Lien Debt (including under and pursuant to the Pre-Petition Second Lien Guaranty), the Debtors granted security interests and liens (the **"Pre-Petition Second Liens"**) to the Pre-Petition Second Lien Secured Parties upon substantially all of the Debtors' assets (collectively, the **"Pre-Petition Second Lien Collateral"**, and together with the Pre-Petition First Lien Collateral, the **"Pre-Petition Collateral"**), with priority over all other liens except the Pre-Petition First Liens and those liens permitted under the terms of the Pre-Petition First Lien Loan Documents and consented to by the Pre-Petition First Lien Agent.

**(vi)** <u>**Pre-Petition First Liens**</u>. (a) As of the Petition Date, the Debtors believe that (i) the Pre-Petition First Liens are valid, binding, enforceable and perfected first-priority liens, subject only to any Permitted Prior Liens (as defined below), and are not subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, (ii) the Pre-Petition First Lien Debt constitutes legal, valid and binding obligations of the Debtors, enforceable in accordance with the terms of the Pre-Petition First Lien Loan Documents (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code), no offsets, defenses or counterclaims to any of the Pre-Petition First Lien Debt exists, and no portion of the Pre-Petition First Lien Debt is subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law and (iii) the Pre-Petition First Lien Debt constitutes allowed secured claims and (b) without limiting in any way the releases and waivers set forth in the DIP Credit Agreement and the other DIP Loan Documents, which the Debtors hereby expressly acknowledge, on the date that this Interim Order is entered, on the terms set forth in this Interim Order and the DIP Loan Documents, the Debtors, in their own right, on behalf of each of their bankruptcy estates and on behalf of all their successors, assigns, subsidiaries, guarantors and any affiliates and any Person acting for and on behalf of, or claiming through them, (collectively, the **"Releasing Parties"**), hereby fully, finally and forever release and discharge the DIP Agent, the DIP Secured Parties, the Pre-Petition First Lien Agent and the Pre-Petition First Lien Secured Parties and all of the DIP Agent's, the DIP Secured Parties', the Pre-Petition First Lien Agent's and the Pre-Petition First Lien Secured Parties' past and present officers, directors, agents, attorneys, assigns, heirs, parents, subsidiaries, and each person

7

acting for or on behalf of any of them from, among other rights, any right any Debtor may have (x) to challenge or object to any of the Pre-Petition First Lien Debt, (y) to challenge or object to the security for the Pre-Petition First Lien Debt and (z) to bring or pursue any and all claims, objections, challenges, causes of action and/or choses in action arising out of, based upon or related to, the Pre-Petition First Lien Loan Documents or otherwise.

The Debtors do not possess and will not assert any claim, counterclaim, setoff or defense of any kind, nature or description which would in any way affect the validity, enforceability and non-avoidability of any of the Pre-Petition First Lien Loan Documents or the Pre-Petition First Liens, or any claim of the Pre-Petition First Lien Secured Parties pursuant to the Pre-Petition First Lien Loan Documents.

**(vii)** **Pre-Petition Second Liens**. (a) As of the Petition Date, the Debtors believe that (i) the Pre-Petition Second Liens are valid, binding, enforceable and perfected first-priority liens, subject only to the Pre-Petition First Liens and any Permitted Prior Liens (as defined below), and are not subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, (ii) the Pre-Petition Second Lien Debt constitutes legal, valid and binding obligations of the Debtors, enforceable in accordance with the terms of the Pre-Petition Second Lien Note Documents (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code), no offsets, defenses or counterclaims to any of the Pre-Petition Second Lien Debt exists, and no portion of the Pre-Petition Second Lien Debt is subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law and (iii) the Pre-Petition Second Lien Debt constitutes allowed claims and (b) the Releasing Parties hereby fully, finally and forever release and discharge the Pre-Petition Second Lien Agent and the Pre-Petition Second Lien Secured Parties, and all of the Pre-Petition Second Lien Agent's and the Pre-Petition Second Lien Secured Parties' past and present officers, directors, agents, attorneys, assigns, heirs, parents, subsidiaries, and each person acting for or on behalf of any of them from, among other rights, any right any Debtor may have (x) to challenge or object to any of the Pre-Petition Second Lien Debt, (y) to challenge or object to the security for the Pre-Petition Second Lien Debt and (z) to bring or pursue any and all claims, objections, challenges, causes of action and/or choses in action arising out of, based upon or related to, the Pre-Petition Second Lien Note Documents or otherwise.

The Debtors do not possess and will not assert any claim, counterclaim, setoff or defense of any kind, nature or description which would in any way affect the validity, enforceability and non-avoidability of any of the Pre-Petition Second Lien Note Documents or the Pre-Petition Second Liens, or any claim of the Pre-Petition Second Lien Secured Parties pursuant to the Pre-Petition Second Lien Note Documents.

*NY 371120084v8*

**(viii)** **Cash Collateral**. The Pre-Petition First Lien Secured Parties and the Pre-Petition Second Lien Secured Parties have a security interest in Cash Collateral, including all amounts on deposit in the Debtors' banking, checking or other deposit accounts and all proceeds of Pre-Petition Collateral, to secure the Pre-Petition First Lien Debt and the Pre-Petition Second Lien, respectively, to the same extent and order of priority as that which was held by each such party prior to the Petition Date.

**(ix)** **Priming of DIP Facility**. In entering into the DIP Loan Documents, and as consideration therefor, the Debtors hereby agree that until Full Payment[4] of all DIP Obligations, the Debtors shall not in any way prime or seek to prime the security interests and DIP Liens provided to the DIP Secured Parties under this Interim Order by offering a subsequent lender or a party-in-interest a superior or *pari passu* lien or claim pursuant to section 364(d) of the Bankruptcy Code or otherwise.

F. **Findings Regarding the Post-Petition Financing**.

(i) **Need for Post-Petition Financing**. An immediate need exists for the Debtors to obtain funds from the DIP Facility in order to continue operations and to administer and preserve the value of their estates. The ability of the Debtors to finance their operations, to preserve and maintain the value of the Debtors' assets and maximize a return for all creditors requires the availability of working capital from the DIP Facility, the absence of which would immediately and irreparably harm the Debtors, their estates and creditors and the possibility for a successful reorganization or sale of the Debtors' assets as a going concern or otherwise.

---

[3] For all purposes of this Interim Order, "Full Payment" shall mean, with respect to the DIP Obligations and/or the First Lien Pre-Petition Debt, (A) the termination of the Pre-Petition First Lien Loan Agreement or the DIP Credit Agreement, as applicable, and all commitments to make further advances or other extensions of credit thereunder; (B) the full and indefeasible cash payment of all DIP Obligations and Pre-Petition First Lien Debt, as applicable, including any and all principal, interest, fees, expenses, reimbursements, indemnities and other charges, including those accruing during any Insolvency Proceeding (as defined in the Pre-Petition First Lien Loan Agreement) (whether or not allowed in the proceeding), other than unasserted contingent indemnity obligations; (C) with respect to DIP Obligations, if such DIP Obligations are LC Obligations, Secured Bank Product Obligations or inchoate or contingent in nature, the provision of cash collateral or a standby letter of credit acceptable to DIP Agent in its reasonable discretion, in each case, in an amount equal to 105% of the LC Obligations or 100% of the DIP Agent's good faith estimate of the amount that is due or could become due, including all fees and other amounts relating to Secured Bank Product Obligations or DIP Obligations inchoate or contingent in nature; and (D) the funding in cash of the Indemnity Account (as defined below).

(ii)     **No Credit Available on More Favorable Terms**.  The Debtors have been unable to obtain unsecured credit allowable under Bankruptcy Code section 503(b)(1) as an administrative expense.  The Debtors are also unable to obtain secured credit, allowable only under Bankruptcy Code sections 364(c)(2), 364(c)(3) and 364(d) on more favorable terms and conditions than those provided in the DIP Credit Agreement, the other DIP Loan Documents and this Interim Order.  The Debtors are unable to obtain credit for borrowed money without granting to the DIP Secured Parties the DIP Protections (as defined below).

(iii)     **Prior Liens**.  Nothing herein shall constitute a finding or ruling by this Court that any Pre-Petition First Liens, Pre-Petition Second Liens or the Permitted Prior Liens are valid, senior, perfected and unavoidable, except as provided in paragraph 7 of this Interim Order.  Moreover, nothing herein shall prejudice the rights of any committee appointed pursuant to section 1102 of the Bankruptcy Code, or any party in interest, other than the Debtors and the Second Lien Secured Parties, to challenge the validity, priority, perfection and extent of the Pre-Petition First Liens, the Pre-Petition Second Liens or the Permitted Prior Liens as set forth in paragraph 7 of this Interim Order.

G.     **Adequate Protection for Pre-Petition Second Lien Secured Parties**.  As a result of, among other things, the grant of the DIP Liens, subordination to the DIP Liens and the Carve Out and the use, sale or lease of the Pre-Petition Second Lien Collateral (including Cash Collateral), the Pre-Petition Second Lien Secured Parties are entitled to receive adequate protection pursuant to sections 361, 362, 363 and 364 of the Bankruptcy Code for any diminution in the value of their respective interests in the Pre-Petition Collateral (including Cash Collateral) resulting from the imposition of the automatic stay, the DIP Facility (including the subordination of the Pre-Petition Second Liens to the DIP Liens and the Carve-Out), and/or the

10

Debtors' use, sale or lease of the Pre-Petition Collateral (including Cash Collateral) during the Chapter 11 Cases (collectively, and solely to the extent of any such diminution in value, the "**Diminution in Value**").  As adequate protection, the Pre-Petition Second Lien Agent (for the benefit of the Pre-Petition Second Lien Secured Parties) will receive: (1) the Pre-Petition Second Lien Replacement Liens (as defined below) and (2) the Pre-Petition Second Lien Superpriority Claim (as defined below).

H. **Section 552**.  In light of their agreement to subordinate their liens and superpriority claims (i) to the Carve Out in the case of the DIP Secured Parties and (ii) the Carve Out and the DIP Liens in the case of the Pre-Petition Second Lien Secured Parties, upon entry of the Final Order the DIP Secured Parties and the Pre-Petition Second Lien Secured Parties shall be each entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and the "equities of the case" exception shall not apply.

I. **Extension of Financing**.  The DIP Secured Parties have indicated a willingness to provide financing to the Debtors in accordance with the DIP Credit Agreement and the other DIP Loan Documents and subject to (i) the entry of this Interim Order and a Final Order and (ii) findings by this Court that such financing is essential to the Debtors' estates, that the DIP Secured Parties are good faith financiers, and that the DIP Secured Parties' claims, superpriority claims, security interests and liens and other protections granted pursuant to this Interim Order or the Final Order and the DIP Facility will not be affected by any subsequent reversal, modification, vacatur or amendment of this Interim Order or the Final Order or any other order, as provided in section 364(e) of the Bankruptcy Code.

J. **Business Judgment and Good Faith Pursuant to Section 364(e)**.  The terms and conditions of the DIP Facility, the DIP Credit Agreement and the other DIP Loan

11

Documents, and the fees paid and to be paid thereunder are fair, reasonable and the best available under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and are supported by reasonably equivalent value and consideration; (ii) the DIP Facility was negotiated in good faith and at arms' length between the Debtors and the DIP Secured Parties and (iii) use of the proceeds to be extended under the DIP Facility will be so extended in good faith, and for valid business purposes and uses, as a consequence of which the DIP Secured Parties are entitled to the protection and benefits of section 364(e) of the Bankruptcy Code.

K. **Relief Essential; Best Interest**. The relief requested in the DIP Motion is necessary, essential and appropriate for the continued operation of the Debtors' business and the management and preservation of the Debtors' assets and personal property. It is in the best interest of Debtors' estates to be allowed to establish the DIP Facility contemplated by the DIP Credit Agreement and the other DIP Loan Documents.

L. **Entry of Interim Order**. For the reasons stated above, the Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(c)(2).

**NOW, THEREFORE**, on the DIP Motion of the Debtors and the record before this Court with respect to the DIP Motion, and with the consent of the Debtors, the Pre-Petition First Lien Secured Parties, the Pre-Petition Second Lien Secured Parties and the DIP Secured Parties to the form and entry of this Interim Order, and good and sufficient cause appearing therefor,

**IT IS ORDERED** that:

1. **Motion Granted**. The DIP Motion is granted in accordance with the terms and conditions set forth in this Interim Order, the DIP Credit Agreement and the other DIP Loan Documents.

12

*NY 371120084v8*

2.    **DIP Loan Documents**.

(a)    **Approval of Entry Into DIP Loan Documents**. The Debtors are authorized and empowered to execute and deliver the DIP Loan Documents and to incur and to perform the DIP Obligations in accordance with, and subject to, the terms of this Interim Order and the DIP Loan Documents, and to execute and deliver all instruments and documents which may be required or necessary for the performance by the Debtors under the DIP Facility and the creation and perfection of the DIP Liens described in and provided for by this Interim Order and the DIP Loan Documents.  The Debtors are hereby authorized and directed to do and perform all acts, pay the principal, interest, fees, expenses and other amounts described in the DIP Credit Agreement and all other DIP Loan Documents as such become due, including, without limitation, closing fees, administrative fees, commitment fees, letter of credit fees and reasonable attorneys', financial advisors' and accountants' fees and disbursements, in each case, as provided for in the DIP Credit Agreement and the other DIP Loan Documents, which amounts shall not otherwise be subject to approval of this Court.  Upon execution and delivery, the DIP Loan Documents, including without limitation the waivers and releases set forth therein, shall represent valid and binding obligations of the Debtors enforceable against the Debtors in accordance with their terms.

(b)    **Authorization to Borrow**.  In order to enable them to continue to operate their business, during the Interim Period and subject to the terms and conditions of this Interim Order, the DIP Credit Agreement, the other DIP Loan Documents and the Budget, the Debtors are hereby authorized under the DIP Facility to borrow up to an aggregate principal amount of (i) $100,192,403.44 at any time outstanding (including the issuance or deemed issuance of Letters of Credit) of Revolving Credit Loans as described in Section 2.1.1 of the DIP Credit

Agreement, and subject to the terms of this Interim Order and the DIP Loan Documents and (ii) $14,166,156.65 of Term Loans as described in Section 2.2.1 of the DIP Credit Agreement and subject to the terms of this Interim Order and the DIP Loan Documents, in each case, which amounts shall be deemed fully funded by the DIP Lenders for all purposes under this Interim Order, the DIP Credit Agreement and the other DIP Loan Documents as of the date of this Interim Order and, in the case of the Revolving Credit Loans, which amounts may be repaid and reborrowed pursuant to the terms of the DIP Credit Agreement.

(c)        **Use of Cash Collateral and Proceeds of the DIP Facility**. Cash Collateral and the proceeds of the loans made under the DIP Loan Documents and of Letters of Credit issued (or deemed issued) under the DIP Credit Agreement shall be permitted to be used solely (i) to refinance the Pre-Petition First Lien Debt, (ii) to pay interest, fees and expenses owing to the DIP Agent and the DIP Lenders pursuant to the DIP Credit Agreement and the other DIP Loan Documents, (iii) to pay the fees and expenses of legal counsel and other professionals retained by the Pre-Petition First Lien Secured Parties, (iv) for post-petition operating expenses and other working capital, financing requirements and other general corporate purposes of the Debtors, (v) to pay certain pre-petition claims that are approved by this Court and consented to by the DIP Agent and the Pre-Petition First Lien Agent, (vi) to pay certain allowed administrative costs and expenses of these Cases, (vii) for the Carve-Out, and (viii) to pay certain transaction fees, costs and expenses, in each case of clauses (iv) through (viii) above, solely, in accordance with the Budget (subject to any Permitted Variances) and this Interim Order incorporating the terms hereof and of the DIP Loan Documents.

(d)        The Debtors represent and warrant to the DIP Agent, the Pre-Petition First Lien Agent and the Pre-Petition Second Lien Agent that the Budget contains their reasonable,

14

good faith best estimate of: (i) the expected revenues of the Debtors and the timing of the receipt of same for the periods indicated; and (ii) the necessary and foreseeable expenses to be incurred during the period covered by the Budget in the ordinary course of business of the Debtors and the timing of the incurrence of same. The Debtors shall not incur any administrative expenses not described in the Budget. The Debtors shall not make any disbursements other than those set forth in the Budget, subject to any Permitted Variances.

(e)     Notwithstanding anything to the contrary herein, and without limiting in any way the restrictions on use of Cash Collateral and proceeds of the DIP Facility set forth in the DIP Credit Agreement, no Cash Collateral or proceeds of the DIP Facility, including without limitation the Carve-Out, may be used to compensate professional services rendered or expenses incurred in connection with, directly or indirectly: (i) the modification, stay, or amendment of this Interim Order without the consent of the DIP Agent; (ii) seeking the use of Cash Collateral other than with the consent of the DIP Agent; (iii) a violation, breach, or default of this Interim Order or any provision of DIP Loan Documents made applicable to this proceeding by this Interim Order, including, without limitation, any claim or action the purpose of which is to seek or the result of which would be to obtain any relief (x) invalidating, setting aside, avoiding, or subordinating, in whole or in part, the DIP Obligations or the Pre-Petition First Lien Debt (as applicable) or the DIP Secured Parties' or the Pre-Petition First Lien Secured Parties' liens or security interests or mortgages in the DIP Collateral or the Pre-Petition First Lien Collateral, as applicable, or (y) preventing, hindering, or otherwise delaying, whether directly or indirectly, the DIP Agent's, the DIP Secured Parties', the Pre-Petition First Lien Agent's or the Pre-Petition First Lien Secured Parties', as applicable, assertion, enforcement, or realization upon any Collateral as permitted by this Interim Order, the DIP Loan Documents or the Pre-Petition First Lien Loan

NY 371120084v8

Documents, as applicable; or (iv) invalidating, setting aside, avoiding, or subordinating (other than with respect to the DIP Obligations and Pre-Petition First Lien Debt), in whole or in part, the Pre-Petition Second Lien Debt or the Pre-Petition Second Lien Secured Parties' liens or security interests or mortgages in the Pre-Petition Second Lien Collateral, including challenging or contesting the Debtors' Stipulations in the Interim Order with respect to the Pre-Petition Second Lien Debt and the Pre-Petition Second Lien Collateral..

(f) **Post-Petition Liens**. Effective immediately upon the entry of this Interim Order, the DIP Secured Parties are hereby granted, pursuant to sections 361, 362, 364(c)(1), 364(c)(2), 364(c)(3) and 364(d) of the Bankruptcy Code, priming first priority, continuing, valid, binding, enforceable, non-avoidable and automatically perfected post-petition security interests and liens (collectively, the "**DIP Liens**"), senior and superior in priority to all other secured and unsecured creditors of the Debtors' estates, except as to the Carve-Out and as otherwise provided in this Interim Order and the Final Order, upon and to all presently owned and hereafter acquired assets and real and personal property of the Debtors, wheresoever located, including, without limitation,

(i) all Real Estate on which the Debtors granted liens and mortgages in favor of the Pre-Petition Second Lien Agent (the "**Primed Pre-Petition Second Lien Real Estate Liens**") to secure, in part, the Pre-Petition Second Lien Debt; and

(ii) subject to entry of the Final Order, estate causes of action under Chapter 5 of the Bankruptcy Code, together with the proceeds thereof and property received thereby ("**Avoidance Actions**")

(collectively, together with all Pre-Petition First Lien Collateral and all Pre-Petition Second Lien Collateral, the "**DIP Collateral**"). For all purposes of this Interim Order, the DIP Credit Agreement and the other DIP Loan Documents, the DIP Agent and the DIP Lenders shall have the full benefit of the mortgages, the related real estate documents and all of the security agreements and related documents delivered in connection with the Pre-Petition First Lien Loan

16

Agreements as if such documents were delivered in connection the DIP Credit Agreement and the DIP Loan Documents.

(g) **Account Control Agreements**. The Debtors are authorized to deliver to the DIP Agent the account control agreements, if any, required pursuant to the terms of the DIP Loan Documents, duly executed by the appropriate depositary institution, securities intermediary or issuer as the case may be, in each case, in form and substance reasonably acceptable to the DIP Agent.

(h) **Intellectual Property License**. Immediately upon the entry of this Interim Order, the DIP Agent, for the benefit of the DIP Lenders, is hereby granted an irrevocable, non-exclusive license or other right to use, license or sub-license (without payment of royalty or other compensation to any Person) any or all Intellectual Property of any Debtor, including without limitation, patents, trademarks, copyrights, computer hardware and software, trade secrets, brochures, customer lists, promotional and advertising materials, labels, packaging materials and other property, in advertising for sale, marketing, selling, collecting, completing manufacture of, or otherwise exercising any rights or remedies with respect to, any DIP Collateral.

(i) **DIP Lien Priority**. The DIP Liens to be created and granted to the DIP Secured Parties, as provided herein, (a) are created pursuant to sections 364(c)(1), 364(c)(2), 364(c)(3) and 364(d) of the Bankruptcy Code, (b) are first, valid, prior, perfected, unavoidable and superior to any security, mortgage or collateral interest or lien or claim to any of the DIP Collateral, and are subject only to: (x) the Carve Out and (y) those liens approved by the DIP Agent that, under applicable law, are senior to, and have not been subordinated to, the liens of the Pre-Petition First Lien Agent under the Pre-Petition First Lien Loan Documents (and which

in no event shall include the Primed Pre-Petition Second Lien Real Estate Liens), but only to the extent that other such liens are valid, enforceable, properly perfected and nonavoidable liens as of the Petition Date (the "**Permitted Prior Liens**").   The DIP Liens shall secure all DIP Obligations.  The DIP Liens shall not be made subject to or *pari passu* with any lien or security interest by any order heretofore or hereafter entered in the Chapter 11 Cases and shall be valid and enforceable against any trustee appointed in the Chapter 11 Cases, upon the conversion of any of the Chapter 11 Cases to a case under Chapter 7 of the Bankruptcy Code or in any other proceedings related to any of the foregoing (any "**Successor Cases**"), and/or upon the dismissal of any of the Chapter 11 Cases.  The DIP Liens shall not be subject to sections 510, 549, 550 or 551 of the Bankruptcy Code, and, subject to entry of the Final Order, section 506(c) of the Bankruptcy Code.

(j)        Pursuant to Section 5.4 of the Intercreditor Agreement dated as of June 20, 2012 between the Pre-Petition Second Lien Agent and the Pre-Petition First Lien Agent (the "**Intercreditor Agreement**"), the Second Lien Secured Parties are deemed to have consented to the terms of the DIP Financing and the Debtors' use of Cash Collateral pursuant to the terms of this Interim Order and the DIP Loan Documents.

(k)        **Enforceable Obligations**.  The DIP Loan Documents shall constitute and evidence the valid and binding obligations of the Debtors, which obligations shall be enforceable against the Debtors, their estates and any successors thereto and their creditors, in accordance with their terms, including without limitation the waivers and releases set forth therein or in this Interim Order.

(l)        **Superpriority Administrative Claim Status**.  All DIP Obligations shall be an allowed superpriority administrative expense claim (the "**DIP Superpriority Claim**" and,

18

together with the DIP Liens, the "**DIP Protections**") with priority in each of the Chapter 11 Cases under sections 364(c)(1), 503(b) and 507(b) of the Bankruptcy Code and otherwise, subject to the Carve-Out, over all administrative expense claims and unsecured claims against the Debtors and their estates, now existing or hereafter arising, of any kind or nature whatsoever including, without limitation, administrative expenses of the kinds specified in, arising, or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 507(a), 507(b), 546(c), 546(d), 726(b), 1113 and 1114 of the Bankruptcy Code, and subject to entry of the Final Order, section 506(c) of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment. Other than the Carve Out, no costs or expenses of administration, including, without limitation, professional fees allowed and payable under Bankruptcy Code sections 328, 330 and 331, or otherwise, that have been or may be incurred in these proceedings, or in any Successor Cases, and no priority claims are, or will be, senior to, prior to or on a parity with the DIP Protections or the DIP Obligations, or with any other claims of the DIP Secured Parties arising hereunder.

(m)    **Indemnity Account**.  In the event that the aggregate proceeds of a sale or sales of all or substantially all of the Debtors' assets are equal to or greater than the sum of (i) the outstanding DIP Obligations and (ii) the Carve Out, then subject to the prior funding of the Carve Out in accordance with paragraph 8 of this Interim Order, upon the Full Payment of the DIP Obligations, the Debtors shall establish an account in the control of the Pre-Petition First Lien Agent (the "**Indemnity Account**"), into which the sum of up to $200,000 of proceeds of any sale, lease or other disposition of any of the Pre-Petition First Lien Collateral or DIP Collateral shall be deposited, as security for any reimbursement, indemnification or similar continuing obligations of the Debtors in favor of the Pre-Petition First Lien Secured Parties

*NY 371120084v8*

under the Pre-Petition First Lien Loan Documents and the DIP Secured Parties under the DIP Loan Documents (the "**Indemnity Obligations**"); <u>provided</u>, <u>however</u>, that the Indemnity Account shall terminate and all remaining amounts held therein shall be released to the Debtors, if the Full Payment (other than with respect to the funding of the Indemnity Account) of all Pre-Petition First Lien Debt and DIP Obligations have occurred and the earliest to occur of: (i) the Challenge Period Termination Date if, as of such date, no party has filed or asserted an adversary proceeding, cause of action, objection, claim, defense or other challenge as contemplated in paragraph 7 hereof, or if such a challenge has been brought, the entry of a final judgment resolving such challenge or (ii) the date this Court enters a final order closing the Chapter 11 Cases. The Indemnity Obligations shall be secured by a first priority lien on the Indemnity Account.

3.       <u>**Authorization to Use Cash Collateral and Proceeds of DIP Loans**</u>. Pursuant to the terms and conditions of this Interim Order, the DIP Credit Agreement and the other DIP Loan Documents, and in accordance with the Budget, the Debtors are authorized to use the advances under the DIP Loan Documents during the period commencing immediately after the entry of the Interim Order and terminating upon the Termination Date (as defined below). The Budget may be updated (with the prior written consent of the DIP Agent) from time to time, <u>provided</u> that such updated approved Budget shall be in form and substance acceptable to the DIP Agent, and the Debtors shall be required always to comply with the Budget (subject to any Permitted Variances) and the DIP Loan Documents. Nothing in this Interim Order shall authorize the disposition of any assets of the Debtors or their estates outside the ordinary course of business or other proceeds resulting therefrom, except as expressly permitted in the DIP Facility and the DIP Loan Documents.

*NY 371120084v8*

4.      **Adequate Protection for Pre-Petition Second Lien Secured Parties**.   As adequate protection for the interests of the Pre-Petition Second Lien Secured Parties in the Pre-Petition Collateral (including Cash Collateral), solely on account of and to the extent of any Diminution in Value of their interests in Pre-Petition Collateral, the Pre-Petition Second Lien Secured Parties are hereby granted the following:

(a)      **Pre-Petition Second Lien Replacement Liens**.   Pursuant to sections 361, 363(e) and 364(d) of the Bankruptcy Code, continuing, valid, binding enforceable and automatically perfected additional and replacement security interests and liens in the DIP Collateral (the "**Pre-Petition Second Lien Replacement Liens**") which shall be junior only to the DIP Liens, the Permitted Prior Liens, the Pre-Petition First Liens and the Carve Out, as provided herein.

(b)      **Pre-Petition Second Lien Superpriority Claim**.      An allowed superpriority administrative expense claim (the "**Pre-Petition Second Lien Superpriority Claim**") which shall have priority (except with respect to the Pre-Petition First Liens, the DIP Liens, the DIP Superpriority Claim and the Carve Out) in all of the Chapter 11 Cases under sections 364(c)(1), 503(b) and 507(b) of the Bankruptcy Code and otherwise over all administrative expense claims and unsecured claims against the Debtors and their estates, now existing or hereafter arising, of any kind or nature whatsoever including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 507(a), 507(b), 546(c), 546(d), 726(b), 1113 and 1114 of the Bankruptcy Code, and subject to entry of the Final Order, section 506(c) of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment. Other than the DIP Liens, the Pre-Petition First Liens,

21

the DIP Superpriority Claim and the Carve Out, no costs or expenses of administration, including, without limitation, professional fees allowed and payable under Bankruptcy Code sections 328, 330 and 331, or otherwise, that have been or may be incurred in these proceedings, or in any Successor Cases, and no priority claims are, or will be, senior to, prior to or on a parity with the Pre-Petition Second Lien Superpriority Claim.

5.     **Section 507(b) Reservation; No Waiver**.  Nothing herein shall impair or modify the Pre-Petition Second Lien Secured Parties' rights under section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Pre-Petition Second Lien Secured Parties hereunder is insufficient to compensate for the diminution in value of the interest of the Pre-Petition Second Lien Secured Parties in the Pre-Petition Collateral during the Chapter 11 Cases or any Successor Case, provided, however, that any section 507(b) claim granted in the Chapter 11 Cases to the Pre-Petition Second Lien Secured Parties shall be junior in right of payment to all DIP Obligations, all Pre-Petition First Lien Debt and subject to the Carve Out. Nothing herein shall constitute a waiver of the rights of the Pre-Petition Second Lien Secured Parties to seek additional adequate protection or with respect to the allowance and payment, to the extent permitted under Section 506(b) of the Bankruptcy Code of post-petition interest, fees (including professional fees and expenses of outside counsel and advisors to the Pre-Petition Second Lien Agent and/or the other Pre-Petition Second Lien Secured Parties) and other charges in accordance with the Pre-Petition Second Lien Note Documents or applicable law, and, in each case, subject to the terms of the Intercreditor Agreement.

6.     **Post-Petition Lien Perfection**.  All security interests, liens, mortgages, deeds of trust and other interests and rights granted by the Debtors in favor of DIP Agent, for the benefit of the DIP Lenders, shall be valid, binding, enforceable and perfected first priority interests

22

subject only to the Carve Out. This Interim Order shall be sufficient and conclusive evidence of the validity, perfection and priority of the DIP Liens and the Pre-Petition Second Lien Replacement Liens, and the DIP Agent, and the Pre-Petition Second Lien Agent, as applicable, shall not be required to execute or file security interests, liens, mortgages, deeds of trust, account control agreements, financing statements or other or similar instruments or notices in any jurisdiction or filing office, take possession or control, or to take any other action in order to validate or perfect the security interests, liens, mortgages, deeds of trust and other interests and rights granted by the Debtors to (x) the DIP Agent pursuant to the DIP Loan Documents or this Interim Order, and (y) the Pre-Petition Second Lien Agent pursuant to this Interim Order. With respect to the perfection, priorities and enforcement of the DIP Liens and the exercise of such other rights or remedies of the DIP Secured Parties under the DIP Loan Documents, the DIP Secured Parties shall be entitled to all of the benefits of the Pre-Petition First Lien Loan Documents and any and all other agreements or documents entered into by the Pre-Petition First Lien Agent prior to the commencement of the Chapter 11 Cases, as if such documents were delivered in connection the DIP Credit Agreement and the DIP Loan Documents. Notwithstanding the foregoing, the DIP Agent and the Pre-Petition Second Lien Agent may, each in its sole discretion, file such financing statements, mortgages, deeds of trust, notices of liens and other similar documents, and is hereby granted relief from the automatic stay of section 362 of the Bankruptcy Code in order to do so, and all such financing statements, mortgages, deeds of trust, account control agreements notices and other documents shall be deemed to have been entered into, filed or recorded at the time and on the date of the commencement of the Chapter 11 Cases. The Debtors shall execute and deliver to the DIP Agent and the Pre-Petition Second Lien Agent all such financing statements, mortgages, deeds of trust, notices and other

23

documents as such parties may reasonably request to evidence, confirm, validate or perfect or to insure the contemplated priority of, the DIP Liens and the Pre-Petition Second Lien Replacement Liens granted pursuant hereto.  The DIP Agent and the Pre-Petition Second Lien Agent, each in their sole discretion, may file a photocopy of this Interim Order as a financing statement, mortgage, deed of trust or other notice of lien, with any recording officer designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in which any Debtor has real or personal property, and in such event, the subject filing or recording officer shall be authorized to file or record such copy of this Interim Order.  The DIP Agent shall, in addition to the rights granted to it under the DIP Loan Documents, be deemed to be the successor in interest to the Pre-Petition First Lien Secured Parties with respect to all third party notifications in connection with the Pre-Petition First Lien Loan Documents and the Pre-Petition Second Lien Note Documents, all pre-petition collateral access agreements, landlord's waivers and all other agreements with third parties (including any agreement with a customs broker or freight forwarder) relating to, or waiving claims against, any Pre-Petition Collateral, including without limitation, each collateral access agreement and/or landlord's waiver duly executed and delivered by any landlord or warehouseman of the Debtors and including, for the avoidance of doubt, all account control agreements and credit card agreements, provided, that the Pre-Petition First Lien Agent and the Pre-Petition Second Lien Agent, as applicable, shall continue to have all rights pursuant to each of the foregoing.  Regardless of the time, order or method of grant, attachment, recording or perfection of any financing statements or other security interests, assignments, pledges, deeds, debentures, mortgages and other liens, or any defect or deficiency or alleged defect or deficiency in any of the foregoing, including, without limitation, any avoidance, invalidation or subordination by any third party or court of competent jurisdiction of

24

the security interests in the DIP Collateral granted to the DIP Secured Parties, the DIP Liens and Permitted Prior Liens shall have priority over the Pre-Petition Second Lien Replacement Liens as set forth in this Interim Order.

7.     **Reservation of Certain Third Party Rights and Bar of Challenges and Claims**.  Nothing in this Interim Order, DIP Credit Agreement or the other DIP Loan Documents shall prejudice whatever rights any Creditors' Committee or Interested Party (as such terms are defined below), solely to the extent the Creditors' Committee or such Interested Party has been granted standing, may have (a) to object to or challenge the findings herein, including, but not limited to, those in relation to (i) the validity, extent, perfection or priority of the mortgage, security interests and liens of the Pre-Petition Secured Parties in and to the Pre-Petition Collateral or (ii) the validity, allowability, priority, status or amount of the Pre-Petition Debt or (b) to bring suit against any of the Pre-Petition Secured Parties in connection with or related to the Pre-Petition Debt, or the actions or inactions of any of the Pre-Petition Secured Parties arising out of or related to the Pre-Petition Debt; provided, however, that, unless within (x) 60 days following the appointment of an official committee of unsecured creditors ("**Creditors' Committee**") or (y) within 75 days of the entry of this Interim Order, with respect to a party in interest ("**Interested Party**") other than a Creditors' Committee (the "**Challenge Period**," and the date that is the next calendar day after the termination of the Challenge Period, in the event that no objection or challenge is raised during the Challenge Period shall be referred to as the "**Challenge Period Termination Date**"), such Creditors' Committee or Interested Party, in each case solely to the extent the Creditors' Committee or such Interested Party has been granted standing, commences a contested matter or adversary proceeding raising such objection or challenge, including without limitation any claim against the Pre-Petition Secured Parties in the

25

nature of a setoff, counterclaim or defense to the Pre-Petition Debt (including but not limited to, those under sections 506, 544, 547, 548, 549, 550 and/or 552 of the Bankruptcy Code or by way of suit against any of the Pre-Petition Secured Parties), upon the Challenge Period Termination Date, any and all such challenges and objections by any party (including, without limitation, any official creditors' committee(s), any Chapter 11 or Chapter 7 trustee appointed herein or in any Successor Case, and any other party in interest) shall be deemed to be forever waived and barred, and the Pre-Petition Debt shall be deemed to be allowed in full, the Pre-Petition Liens shall be deemed valid, binding, enforceable and perfected in the respective priorities set forth in Finding E of this Interim Order and shall not be subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, and the Pre-Petition First Lien Debt shall be allowed as a fully secured claim within the meaning of section 506 of the Bankruptcy Code for all purposes in connection with the Chapter 11 Cases or any Successor Case, and the Debtors' Stipulations shall be binding on all creditors, interest holders and parties in interest.  To the extent any such objection or complaint is timely filed, the Pre-Petition First Lien Secured Parties and the Pre-Petition Second Lien Parties, as applicable, shall be entitled to include such costs and expenses, including but not limited to reasonable attorneys' fees, incurred in defending the objection or complaint as part of the Pre-Petition First Lien Debt and/or the Pre-Petition Second Lien Debt, as applicable, in each case to the extent allowable under section 506(b) of the Bankruptcy Code.

8.     **Carve Out**.  Notwithstanding anything to the contrary contained in this Interim Order or other order of this Court, the liens and claims granted to the DIP Secured Parties and the Pre-Petition Second Lien Secured Parties in this Interim Order, or otherwise, shall be subject and subordinate to the payment, without duplication, of the following fees and claims (the

amounts set forth below, together with the limitations set forth therein, collectively, the "**Carve Out**"):

(a) allowed and unpaid professional fees and disbursements incurred by the Debtors and the Creditors' Committee in the Chapter 11 Cases on or after the delivery by the DIP Agent of a written notice to the Debtors, the US Trustee, and to the Creditors' Committee, issued at any time following the occurrence and during the continuation of any Event of Default ("**Carve Out Trigger Notice**"), payable under Sections 330 and 331 of the Bankruptcy Code, in an amount not to exceed (except, until and only so long as otherwise consented to in writing by the DIP Agent) $350,000 in the aggregate (subject to final allowance by this Court and which remain unpaid after application of any retainers held by the relevant professionals to the extent not used to pay Pre-Default Accrued Fees, as defined below) (the "**Post-Default Carve Out Cap**") plus,

(b) subject to (and solely to the extent included in) the Budget and final allowance by this Court, the aggregate amount of any budgeted, accrued but unpaid professional fees and disbursements for each professional identified in the line item for such professional under the heading designated "Professional Fees" (other than professional fees in the line item designated "Non-Estate Professionals") in the Budget (less the amount of any unused retainer held by such professional) incurred by the Debtors and the Creditors' Committee in the Chapter 11 Cases prior to the delivery by the DIP Agent of a Carve-Out Trigger Notice measured on a cumulative basis for such pre-notice period (the "**Pre-Default Accrued Fees**") plus,

(c) the amount of any unpaid fees required to be paid in the Chapter 11 Cases to the Clerk of the Bankruptcy Court and to the office of the US Trustee under 28 U.S.C. §1930 (whether arising prior to or after the delivery of the Carve-Out Trigger Notice) (the "**US Trustee Fees**").

The Post-Default Carve Out Cap shall not be reduced by the amount of any compensation and reimbursement of expenses paid or incurred (to the extent ultimately allowed by this Court) prior to the date that is the earlier of any Debtors' receipt of a Carve-Out Trigger Notice under the DIP Facility or the Termination Date (the "**Carve Out Date**"), <u>provided</u>, however, that following the Carve-Out Date, any amounts paid to professionals by any means shall reduce the Carve-Out on a dollar-for-dollar basis.

9.      **Payment of Compensation**.  Nothing in this Interim Order shall be construed as consent to the allowance of any professional fees or expenses of any of the Debtors, any official

27

committee or of any other person (other than with respect to the professional fees or expenses of the Pre-Petition First Lien Secured Parties and the DIP Secured Parties) or shall affect the right of the DIP Secured Parties or the Pre-Petition Second Lien Secured Parties to object to the allowance and payment of such fees and expenses or to permit the Debtors to pay any such amounts not set forth in the Budget (other than with respect to the professional fees or expenses of the Pre-Petition First Lien Secured Parties and the DIP Secured Parties).

10.     **Use of Sale Proceeds and Refinancing Proceeds**.

(a)     In the event that the aggregate proceeds of a sale or sales of all or substantially all of the Debtors' assets are equal to or greater than the sum of (i) the outstanding DIP Obligations and (ii) the Carve Out, such aggregate sale proceeds shall be applied first to the Full Payment of all DIP Obligations, then to the Carve-Out and then to the Indemnity Account. In the event that a transaction or series of transactions results in the sale of all or substantially all of the Debtors' assets (other than as described in the immediately preceding sentence), (x) there shall be set aside from the proceeds of such sale or sales an amount sufficient to enable the Debtors to reserve for the payment of the Carve-Out but (y) no payment shall be made to fund the Carve Out until the completion of the sale or sales of all or substantially all of the Debtors' assets.  Notwithstanding the foregoing, unless the Carve-Out Trigger Notice has been delivered and is in effect, professional fees and expenses may be paid in accordance with the Budget.

(b)     Without limiting the provisions and protections of paragraph 12 below, if at any time prior to the Full Payment of all DIP Obligations, including subsequent to the confirmation of any Chapter 11 plan or plans (the "**Plan**") with respect to the Debtors, and the Full Payment of the Pre-Petition First Lien Debt, the Debtors' estates, any trustee, any examiner with enlarged powers or any responsible officer subsequently appointed, shall obtain credit or

28

incur debt pursuant to Bankruptcy Code sections 364(b), 364(c) or 364(d) whether or not in violation of the DIP Credit Agreement or any other DIP Loan Document, then all of the proceeds derived from such credit or debt shall immediately be turned over to the DIP Agent for application to the DIP Obligations pursuant to and in accordance with the DIP Credit Agreement and the other DIP Loan Documents.

11.     **Section 506(c) Claims**.  Nothing contained in this Interim Order shall be deemed a consent by the Pre-Petition Secured Parties or the DIP Secured Parties to any charge, security interest, lien, assessment or claim against the DIP Collateral or the Pre-Petition Collateral under section 506(c) of the Bankruptcy Code or otherwise.  Subject to entry of the Final Order, the Debtors hereby waive any right they may have to seek to impose any charge, security interest, lien, assessment or claim against the Pre-Petition Secured Parties' or the DIP Secured Parties' interests in the Pre-Petition Collateral or the DIP Collateral, respectively, under section 506(c) of the Bankruptcy Code or otherwise.  With the exception of the quarterly and other fees due the United States Trustee pursuant to 28 U.S.C. 1930, no costs or expenses of administration that have been or may be incurred in these proceedings, or in any conversion of these proceedings pursuant to sections 105 or 1112 of the Bankruptcy Code or otherwise, or in any other proceeding related thereto, and no priority claims, are or will be prior to or on a parity with the claims of the DIP Secured Parties or the Pre-Petition Secured Parties against the Debtors or any successor debtors-in-possession or trustee, or with the security interests, liens and mortgages of the Pre-Petition Secured Parties upon the Pre-Petition Collateral or the DIP Collateral.

12.     **Collateral Rights**.  Unless the DIP Agent has provided its prior written consent or the Full Payment of the DIP Obligations has occurred, there shall not be entered in these proceedings, or in any Successor Case, any order which authorizes any of the following:

(a)     Except as permitted in the DIP Loan Documents, the obtaining of credit or the incurring of indebtedness that is secured by a security interest, mortgage or collateral interest or other lien on all or any portion of the DIP Collateral, the Pre-Petition Collateral or the Indemnity Account and/or entitled to priority administrative status which is equal or senior to those granted to the DIP Secured Parties; or

(b)     relief from stay by any person other than the DIP Secured Parties on all or any portion of the DIP Collateral having an aggregate value in excess of $250,000; or

(c)     the Debtors' return of goods constituting DIP Collateral pursuant to section 546(h) of the Bankruptcy Code, except as permitted in the DIP Loan Documents.

13.     **Termination Date**.  All (a) DIP Obligations of the Debtors to the DIP Secured Parties shall be immediately due and payable and all commitments to lend shall be terminated and (b) authority to use the proceeds of the DIP Loan Documents and to use Cash Collateral shall terminate, in each case, on the date that is the earliest to occur of: (i) the date of acceleration of any outstanding borrowings or termination of any commitments under the DIP Facility pursuant to an Event of Default; (ii) the first business day on which the Debtors' authority to borrow under this Interim Order expires by its terms or is terminated, unless the Final Order has been entered and become effective prior thereto; (iii) conversion of any of the Chapter 11 Cases to a case under Chapter 7 of the Bankruptcy Code unless otherwise consented to in writing by the DIP Agent and the requisite DIP Lenders; (iv) dismissal of any of the Chapter 11 Cases, unless otherwise consented to in writing by the DIP Agent and the requisite DIP Lenders; (v) the date of consummation of the Approved Sale; and (vi) the effective date of any Debtors' plan of reorganization confirmed in the Chapter 11 Cases (the "**Termination Date**").

*NY 371120084v8*

14.     **Disposition of DIP Collateral**.

(a)     Except for the Approved Sale, absent the prior written consent of the DIP Secured Parties (and no such consent shall be implied, from any other action, inaction or acquiescence by the DIP Secured Parties or an order of this Court), the Debtors shall not (i) sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral, other than sales of the Debtors' inventory in the ordinary course of business or except as otherwise provided for in the DIP Loan Documents and this Interim Order and as approved by this Court or (ii) assume, reject or assign any leasehold interest without the prior consultation with the DIP Agent, except as otherwise provided for in the DIP Loan Documents.

(b)     All proceeds of DIP Collateral that is the subject of any Approved Sale and/or any Permitted Asset Disposition (as well as any other sales) shall continue to be subject to all liens of the DIP Agent as set forth in this Interim Order, the DIP Credit Agreement and the other DIP Loan Documents.  Any and all proceeds of such Approved Sale or Permitted Asset Disposition (as well as any other sales), as applicable, shall be applied upon consummation of such sale in accordance with paragraph 10(a) of this Interim Order and the terms of the DIP Credit Agreement and the other DIP Loan Documents.

15.     **Events of Default**.  The occurrence of any of the following events shall constitute an Event of Default under this Interim Order:

a.     failure by any Debtor to comply with any term of this Interim Order;

b.     the reversal, vacatur or modification of any provision of this Interim Order; or

c.      the occurrence of the Termination Date or, if sooner, the occurrence of any "Event of Default" under (and as defined in) the DIP Loan Documents.

31

Until (i) in respect of the DIP Obligations and the Pre-Petition First Lien Debt, Full Payment of all DIP Obligations and the Pre-Petition First Lien Debt, and (ii) in respect of the Pre-Petition Second Lien Debt, full payment thereof (including without limitation all adequate protection obligations and claims in respect thereof), the respective protections afforded to the DIP Secured Parties and the Pre-Petition Second Lien Secured Parties, as applicable, pursuant to this Interim Order and under the DIP Loan Documents, and any actions taken pursuant thereto, shall survive the entry of any order confirming a Plan or converting these cases into a Successor Case, and the DIP Liens, the DIP Superpriority Claim, the Pre-Petition Second Lien Replacement Liens and the Pre-Petition Second Lien Superpriority Claim shall continue in these proceedings and in any Successor Case, and the DIP Liens, DIP Superpriority Claim, Pre-Petition Second Lien Replacement Lien and the Pre-Petition Second Lien Superpriority Claim granted herein shall maintain their respective priority as provided by this Interim Order.

16.   **Rights and Remedies Upon Event of Default**.

(a)    Any automatic stay otherwise applicable to the DIP Secured Parties is hereby modified so that after the occurrence of any Event of Default and at any time thereafter upon three (3) business days prior written notice of such occurrence, in each case given to the Debtors, counsel to the Pre-Petition Second Lien Secured Parties, counsel for the Creditors' Committee, if any, and the U.S. Trustee, the DIP Secured Parties shall be entitled to exercise their rights and remedies in accordance with the DIP Loan Documents.  Unless otherwise consented to by the DIP Agent and the requisite DIP Lenders in writing, immediately following the giving of notice by the DIP Agent of the occurrence of an Event of Default: (i) the Debtors shall continue to deliver and cause the delivery of the proceeds of DIP Collateral to the DIP Agent as provided in the DIP Loan Documents and this Interim Order; (ii) the DIP Agent shall

continue to apply such proceeds in accordance with the provisions of this Interim Order and of the DIP Loan Documents; (iii) the Debtors shall have no right to use any of such proceeds, nor any other Cash Collateral other than (x) towards the satisfaction of the DIP Obligations and the Carve-Out, (y) for the payment of payroll in accordance with the Budget and (z) as otherwise consented to in writing by the DIP Agent; and (iv) any obligation otherwise imposed on the DIP Agent or the DIP Lenders to provide any loan or advance to the Debtors pursuant to the DIP Facility shall be suspended.  Following the giving of notice by the DIP Agent of the occurrence of an Event of Default, the Debtors shall be entitled to an emergency hearing before this Court within such three (3) business day period following notice of the occurrence of any Event of Default and solely for the purpose of contesting whether an Event of Default has occurred.  If the Debtors do not contest whether an Event of Default has occurred within such time period, or if the Debtors do timely contest the occurrence of an Event of Default and this Court after notice and hearing declines to stay the enforcement thereof within such 3 business day period, (x) the Debtors shall no longer have the right to use Cash Collateral pursuant to this Order or the DIP Credit Agreement, (y) the automatic stay, as to the DIP Secured Parties, shall automatically terminate at the end of such notice period and the DIP Secured Parties may exercise all rights and remedies pursuant to the terms of the DIP Loan Documents and this Interim Order and (z) the DIP Agent and any officer or agent of DIP Agent, shall be deemed appointed, with full power of substitution, as the Debtors' true and lawful attorney-in-fact with full power and authority in the place and stead of the Debtors or in the DIP Agent's own name, in each case, in DIP Agent's discretion, to take any action and to execute any and all documents and instruments to maintain, complete the manufacturing, processing and/or packaging of, sell, lease, liquidate or dispose of the DIP Collateral.  In the event that the DIP Agent elects in its sole discretion to

enforce the rights and powers of the Debtors with respect to the DIP Collateral, the DIP Agent shall have all of the rights and powers of the Debtors, under the Bankruptcy Code or otherwise, as if the Debtors were enforcing such rights and powers themselves.

(b)     If the DIP Secured Parties exercise any of their rights and remedies upon the occurrence of an Event of Default under the DIP Loan Documents, the DIP Agent may retain one or more agents to complete the manufacturing, processing and/or packaging of, or sell, lease or otherwise dispose of the DIP Collateral.  In any exercise of their rights and remedies upon an Event of Default under the DIP Loan Documents, the DIP Agent and DIP Lenders are authorized to proceed under or pursuant to the DIP Loan Documents.  Without limiting the foregoing, subject to the terms of the DIP Loan Documents, in the exercise of the DIP Agent's rights and remedies upon an Event of Default, the DIP Agent may by written notice to the Debtors require the Debtors, without reduction of the Post-Default Carve-Out Cap, to file a motion seeking to retain one or more agents to complete the manufacturing, processing and/or packaging of, or sell, lease or otherwise dispose of the DIP Collateral on terms acceptable to the DIP Agent.  The Debtors shall file such motion within ten (10) days of the DIP Agent's request and shall diligently prosecute such motion, without reduction of the Post-Default Carve-Out Cap.  If the Debtors fail to so file the motion, the DIP Agent may, file and prosecute such a motion in the name of the Debtors.

(c)     All costs incurred by or on behalf of the DIP Secured Parties or any agent thereof in connection with any of the foregoing shall be deemed to be DIP Obligations and are hereby authorized.  All proceeds realized from any of the foregoing shall be turned over to the DIP Agent for application to the DIP Obligations under, and in accordance with the provisions of, the DIP Loan Documents and this Interim Order.

*NY 371120084v8*

(d)     Nothing included herein shall prejudice, impair or otherwise affect Pre-Petition First Lien Secured Parties' or DIP Secured Parties' rights to seek any other or supplemental relief in respect of the Debtors nor the DIP Secured Parties' rights, as provided in the DIP Credit Agreement and the DIP Loan Documents, to suspend or terminate the making of loans under the DIP Credit Agreement and the DIP Loan Documents.

17.   **Other Rights and Obligations**.

(a)     **Good Faith Under Section 364(e) of the Bankruptcy Code. No Modification or Stay of this Interim Order**.  Based on the findings set forth in this Interim Order and in accordance with section 364(e) of the Bankruptcy Code, which is applicable to the DIP Facility contemplated by this Interim Order, in the event any of the provisions of this Interim Order are hereafter modified, amended or vacated by a subsequent order of this or any other Court, the DIP Secured Parties are entitled to the protections provided in section 364(e) of the Bankruptcy Code and no such modification, amendment or vacation shall affect the validity and enforceability of any advances made hereunder or the liens or priority authorized or created hereby. Notwithstanding any such modification, amendment or vacation, any claim granted to the DIP Secured Parties hereunder arising prior to the effective date of such modification, amendment or vacation of any DIP Protections granted to the DIP Secured Parties shall be governed in all respects by the original provisions of this Interim Order, and the DIP Secured Parties shall be entitled to all of the rights, remedies, privileges and benefits, including the DIP Protections granted herein, with respect to any such claim.  Since the loans made pursuant to the DIP Credit Agreement and the other DIP Loan Documents are made in reliance on this Interim Order, the obligations owed the DIP Secured Parties prior to the effective date of any stay, modification or vacation of this Interim Order cannot, as a result of any subsequent order in the

NY 371120084v8

Chapter 11 Cases or in any Successor Cases, be subordinated, lose their lien priority or superpriority administrative expense claim status, or be deprived of the benefit of the status of the liens and claims granted to the DIP Secured Parties under this Interim Order and/or the DIP Loan Documents.

(b)    **Expenses**.    As provided in the DIP Loan Documents, all costs and expenses of the DIP Secured Parties and the Pre-Petition First Lien Secured Parties in connection with the DIP Loan Documents and the Pre-Petition First Lien Loan Documents, including, without limitation, reasonable legal, accounting, collateral examination, monitoring and appraisal fees, financial advisory fees, fees and expenses of other consultants, indemnification and reimbursement of fees and expenses, and other out of pocket expenses will constitute DIP Obligations and will be paid by the Debtors.  Payment of such fees shall not be subject to allowance by this Court.  The DIP Secured Parties and the Pre-Petition First Lien Secured Parties shall provide to the Debtors, on a monthly basis, the total amount of professional fees and expenses incurred per calendar month in these Chapter 11 Cases, and upon request, the invoices relating to such fees and expenses (invoices may be redacted to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege or of any benefits of the attorney work product doctrine).

(c)    **Binding Effect**.    The provisions of this Interim Order shall be binding upon and inure to the benefit of the DIP Secured Parties, the Pre-Petition First Lien Secured Parties, the Pre-Petition Second Lien Secured Parties and the Debtors and their respective successors and assigns (including any trustee or other fiduciary hereinafter appointed as a legal

36

representative of the Debtors or with respect to the property of the estates of the Debtors) whether in the Chapter 11 Cases, in any Successor Cases, or upon dismissal of any such chapter 11 or chapter 7 Case.  In the event of any inconsistency between the terms and conditions of this Interim Order (or upon entry of the Final Order, the Final Order) and any other order of this Court, the Interim Order (or, as applicable, the Final Order) shall govern and control.

(d)  **No Waiver**.  The failure of the Pre-Petition First Lien Secured Parties, the DIP Secured Parties or the Pre-Petition Second Lien Parties to seek relief or otherwise exercise their respective rights and remedies under, as applicable, the Pre-Petition First Lien Loan Documents, the DIP Loan Documents, the DIP Facility, the Pre-Petition Second Lien Note Documents, this Interim Order or otherwise, as applicable, shall not constitute a waiver of any of the Pre-Petition First Lien Secured Parties', the DIP Secured Parties' and the Pre-Petition Second Lien Secured Parties' rights, as applicable, hereunder, thereunder, or otherwise.  Notwithstanding anything herein, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair the Pre-Petition Secured Parties or the DIP Secured Parties under the Bankruptcy Code or under non-bankruptcy law, including without limitation, the rights of the Pre-Petition Secured Parties and the DIP Secured Parties to (i) request conversion of the Chapter 11 Cases to cases under Chapter 7, dismissal of the Chapter 11 Cases, or the appointment of a trustee in the Chapter 11 Cases or (ii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a Plan or (iii) any of the rights, claims or privileges (whether legal, equitable or otherwise) the DIP Secured Parties or the Pre-Petition Secured Parties.

NY 371120084v8

(e)     **No Third Party Rights**.  Except as explicitly provided for herein and except for the Carve-Out, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect or incidental beneficiary.

(f)     **No Marshaling**.  Each Debtor expressly waives all rights that it may have now or in the future have under any statute, at common law, in equity or otherwise, to compel the DIP Agent, DIP Secured Parties, the Pre-Petition First Lien Agent, the Pre-Petition First Lien Secured Parties, the Pre-Petition Second Lien Agent or the Pre-Petition Second Lien Secured Parties to marshal assets or to proceed against any Debtor, other person or security for the payment or performance of any DIP Obligations and/or the Pre-Petition Debt before, or as a condition to, proceeding against such Debtor.

(g)     **Amendment**.  The Debtors and the DIP Agent may amend or waive any provision of the DIP Loan Documents, provided that (i) such amendment or waiver, in the judgment of the Debtors and the DIP Agent, is either non-prejudicial to the rights of third parties or is not material, and (ii) prior written notice is given to counsel to the Pre-Petition Second Lien Secured Parties, and provided however, that the Carve-Out may not be modified to adversely impact any accrued but unpaid professional fees not otherwise covered by a retainer without the consent of the affected professionals.   Except as otherwise provided herein, no waiver, modification or amendment of any of the provisions hereof shall be effective unless set forth in writing, signed by on behalf of all the Debtors and the DIP Agent (after having obtained the approval of the requisite DIP Secured Parties as provided in the DIP Loan Documents) and approved by this Court.

(h)     **Survival of Interim Order**.  The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered (i)

38

confirming any Plan in the Chapter 11 Cases, (ii) converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, (iii) dismissing any of the Chapter 11 Cases, (iv) withdrawing of the reference of any of the Chapter 11 Cases from this Court or (v) providing for abstention from handling or retaining of jurisdiction of any of the Chapter 11 Cases in this Court. The terms and provisions of this Interim Order, including the DIP Protections granted pursuant to this Interim Order and the DIP Loan Documents and any protections granted the Pre-Petition First Lien Secured Parties and the Pre-Petition Second Lien Secured Parties, shall continue in full force and effect notwithstanding the entry of such order, and such DIP Protections and protections for the Pre-Petition First Lien Secured Parties and the Pre-Petition Second Lien Secured Parties shall maintain their priority as provided by this Interim Order until (i) in the case of the DIP Obligations, Full Payment of all DIP Obligations pursuant to the DIP Credit Agreement and the other DIP Loan Documents (such payment being without prejudice to any terms or provisions contained in the DIP Facility which survive such discharge by their terms), (ii) in the case of the Pre-Petition First Lien Debt, the Full Payment of all Pre-Petition First Lien Debt and (iii) in the case of the Pre-Petition Second Lien Debt, the payment in full of the Pre-Petition Second Lien Debt (including, without limitation, any and all adequate protection obligations and claims in respect thereof).  The DIP Obligations shall not be discharged by the entry of an order confirming a Plan, the Debtors having waived such discharge pursuant to section 1141(d)(4) of the Bankruptcy Code.  The Debtors shall not propose or support any Plan that is not conditioned upon the Full Payment of all DIP Obligations and the Full Payment of all Pre-Petition First Lien Debt and, in each case, all claims prior thereto or on parity therewith, on or prior to the earlier to occur of (i) the effective date of such Plan and (ii) the Termination Date.

NY 371120084v8

(i)      **Reporting/Notices Also to be Given to Pre-Petition Second Lien Secured Parties**.  The Debtors shall provide all reports (including, without limitation, all actual to budget reconciliations, variance reports and amendments to the Budget) and all material notices delivered to or received from the DIP Agent under the DIP Loan Documents and/or this Interim Order, simultaneously to counsel to the Pre-Petition Second Lien Secured Parties.

(j)      **Inconsistency**.  In the event of any inconsistency between the terms and conditions of the DIP Loan Documents, and of this Interim Order, the provisions of this Interim Order shall govern and control.

(k)      **Enforceability**.  This Interim Order shall constitute findings of fact and conclusions of law pursuant to the Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon execution hereof.

(l)      **Objections Overruled**.  All objections to the DIP Motion to the extent not withdrawn or resolved, are hereby overruled.

(m)      **No Waivers or Modification of Interim Order**.  The Debtors irrevocably waive any right to seek any modification or extension of this Interim Order without the prior written consent of the DIP Agent and no such consent shall be implied by any other action, inaction or acquiescence of the DIP Agent and the Pre-Petition First Lien Agent.

(n)      **Waiver of Any Applicable Stay**.  Any applicable stay is hereby waived and shall not apply to the effectiveness of this Interim Order.

18.      **Opportunity to Object to Entry of Final Order.**

(a)      The Debtors shall file and serve a copy of the proposed Final Order on or before November 5, 2013, on the parties listed in subparagraph 18(b) of this Interim Order.  Any objections to entry of the Final Order shall be filed on or before November 19, 2013 (the

40

"**Objection Deadline**").  Any objection to entry of the Final Order shall be filed with the Court, and served upon (i) counsel to the Debtors (ii) counsel to the Pre-Petition First Lien Agent, (iii) the Pre-Petition First Lien Agent, (iv) counsel to the Pre-Petition Second Lien Agent, (v) the Pre-Petition Second Lien Agent, (vi) counsel to the proposed DIP Agent and (vii) counsel to any committee appointed pursuant to section 1102 of the Bankruptcy Code, if any, on or before the Objection Deadline.  Any objections to the entry of the Final Order will be set for hearing ~~by~~ at 1:30 pm on November 21, 2013, in the U.S. Bankruptcy Court, Fayetteville, Ark. ~~subsequent notice~~.  If no objections are filed by the Objection Deadline, the Court may enter the Final Order without further notice or hearing.

(b)     The Debtors shall serve by overnight mail copies of a notice of entry of this Interim Order, together with a copy of this Order, on:  (i) the Office of the United States Attorney General for the Western District of Arkansas, (ii) the Office of the United States Trustee, (iii) creditors holding the twenty (20) largest unsecured claims as set forth in the consolidated list filed with the Debtors' petitions, unless an official committee of unsecured creditors has been appointed and then to the counsel to any such committee in lieu of service to the twenty (20) largest creditors, (iv) counsel to the Pre-Petition First Lien Agent, (v) the Pre-Petition First Lien Agent, (vi) counsel to the Pre-Petition Second Lien Agent, (vii) the Pre-Petition Second Lien Agent, (viii) counsel to the proposed DIP Agent (ix) the Internal Revenue Service, (x) any other persons which the Debtors know are entitled to notice under Bankruptcy Rule 4001(b) as of such date, (xi) all secured creditors of record and (xi) any other party-in-interest for which counsel to the Debtors have received a written request in this case on such date to receive such pleadings.

19.     Notwithstanding anything in this Interim Order to the contrary, the rights of any claimants under the Perishable Agricultural Commodities Act of 1930, as amended, 7 U.S.C. §§

499a et seq. ("**PACA**"), subject to the effect of the chapter 11 filing, if any, on those rights, are hereby preserved in full and shall not be prejudiced by this Interim Order. The foregoing does not prejudice the rights of the Debtors or any other party in interest, including the Debtors' first and second lien lenders, and proposed DIP lenders, to contest the amount, validity, enforceability, or priority of any asserted PACA claim. Notwithstanding anything in this Interim Order, in the event that there are valid and allowed PACA Claims, such claims shall be paid.

Dated: _____

_____
Ben Barry
United States Bankruptcy Judge
Dated:  10/31/2013

Prepared and submitted by:

MITCHELL, WILLIAMS, SELIG,
GATES & WOODYARD, P.L.L.C.
425 West Capitol Avenue, Suite 1800
Little Rock, Arkansas 72201-3525
Telephone: (501) 688-8800
Facsimile: (501) 688-8807
Stan D. Smith (Ark. Bar No. 90117)
Lance R. Miller (Ark. Bar No. 85109)
Chris A. McNulty (Ark. Bar No. 08198)

-and-

GREENBERG TRAURIG, LLP
200 Park Avenue
New York, New York 10166
Telephone:  (212) 801-9200
Facsimile:  (212) 801-6400
Nancy A. Mitchell
Maria J. DiConza
Matthew L. Hinker

*Proposed Counsel for the Debtors*
*and Debtors in Possession*

42

*NY 371120084v8*