**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**Fayetteville Division**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| ALLENS, INC. and ALL VEG, LLC | ) | Bankruptcy No. 13-73597 & |
| | ) | No. 13-73598 |
| | ) | Chapter 11 |
| | ) | Hon. Ben T. Barry |
| Debtors. | ) | |

**PACA CLAIMANTS' MEMORANDUM IN SUPPORT**
**OF SEGREGATION OF PACA TRUST ASSETS**

Before this Honorable Court is the Debtors' Proposed Final Cash Collateral Order [DE #127-1], and the objection of Razorback Farms, Inc. and Central Sales Produce, Inc. (hereinafter the "Razorback Group") filed thereto [DE #214]. Specifically, this Honorable Court asked the parties to brief the question of: Why the Debtors should be required to open a separate PACA Trust Account and fund it "freely available" funds to satisfy the PACA claims in this case? As discussed below, there are two (2) main reasons: (1) the law expressly requires it, and; (2) all reported and even un-reported case law supports it.

I.      THE STATUTORY AUTHORITY

The PACA requires the Debtors to maintain a fully-funded PACA trust account with assets "freely available" to satisfy PACA claims. The PACA begins with a general statement of what the trust covers and states the "[t]rust assets are to be preserved as a nonsegregated 'floating' trust. Commingling of trust assets is contemplated." 7 C.F.R. § 46.46(b). While it mentions commingling of trust assets with other trust assets, it makes no mention of commingling trust assets with non-trust assets (like property of the estate). The PACA then goes on to specifically define the obligations of every buyer/PACA trustee and how that PACA Trustee is to safeguard and maintain the PACA

trust in a section entitled "trust maintenance."   Anything short of this "freely available" standard is clearly defined as "unlawful" and constitutes a violation of non-Code federal law.

The regulations governing how the PACA trust actually operates and how the PACA Trustee needs to maintain the trust state as follows:

(d) Trust Maintenance

(1)  Commission merchants, dealers and brokers are *required to maintain trust assets in a manner that such assets are <u>freely available </u>to satisfy outstanding obligations to sellers* of perishable agricultural commodities.   Any act or omission which is inconsistent with this responsibility, including dissipation of trust assets, is unlawful and in violation of section 2 of the Act, (7 U.S.C. §499(b))

7 C.F.R. 46.46(d)(1) (emphasis added).   These same regulations further define the term "dissipation" to mean "any act or failure to act which could result in the diversion of trust assets *or which <u>could</u> prejudice or impair* the ability of unpaid suppliers, sellers, or agents to recover money owed in connection with produce transactions."  7 C.F.R. 46.46(a)(2)(emphasis added).

Instead of having actual funds sitting in an actual bank account somewhere, the Debtors now claim they can satisfy their PACA Trustee obligations by proclaiming "we can borrow it when we need it."  No PACA trustee can satisfy their obligation to safeguard and maintain PACA trust assets simply by showing they still have room on their "corporate credit card" with their lenders. Borrowing ability does not satisfy the statute's "freely available" standard.  Nor does it satisfy the PACA's prohibition against "dissipation" of the PACA trust.  By allowing the real cash to remain with the DIP Lenders until the Debtors meet all the numerous conditions and borrower obligations spelled out in the cash collateral order, the Debtors have not yet restored the PACA trust to a fully funded level as the law plainly requires.   In fact, the Cash Collateral Order is even proposing additional hurdles and obstacles to getting cash into the Debtors' hands for payment of PACA claims even though these steps all clearly "could prejudice or impair" the PACA creditors ability

to get their invoices paid.

The Debtors have already admitted the PACA Trust is currently in a dissipated condition. The Debtors' own pleadings and budget show the Debtors have zero present ability to pay PACA claims and only present their future borrowing ability as replacement for their obligations to have a fully funded PACA trust like the law requires. Once the Debtors admitted they do not have the "freely available" cash to satisfy their PACA claims, they admitted the PACA trust has been dissipated and that triggers the obligation to segregate to prevent further dissipation.

The Razorback Group is not being unreasonable in its requests here. The Debtors admitted the PACA claims could be over $20M in this case yet the parties are still using the more Debtor-friendly figure of $7.7M from the Debtors' proposed budget. [DE #123]. The Razorback Group is not insisting the Debtors return the PACA trust to fully funded levels with an immediate deposit of the entire $7.7M in cash like the law requires. The Razorback Group has requested the Debtors segregate only $4.0M now and the balance of $3.7M over the 16 weeks of the proposed budget. The Debtors refused and then boldly claimed there was no reported case or authority requiring them to do so.

The Debtors have admitted they have no present ability to satisfy their own admitted level of PACA Claims in this case. That qualifies as admitted "dissipation" and it is both "unlawful" and an ongoing violation of non-Code federal law. The Debtors now ask for this Honorable Court to do two (2) things: (1) ignore the fact we have an admittedly dissipated PACA trust, and; (2) allow the Debtors to continue violating non-Code federal law. Rather than accepting the Debtors' invitation to fall down the "rabbit hole" with them, this Honorable Court should force these Debtors back on track toward full compliance with non-Code federal law. This entails requiring the Debtors to immediately segregate the proposed $4.0M of funds now and the balance over the 16 weeks of the

Debtors' proposed Budget.

II.      THE CASE LAW AUTHORITY

The Debtors also claimed there was "no reported case" requiring segregation of the PACA assets to prevent further "dissipation" and at least begin to restore the PACA trust to full compliance levels.  However, Federal Courts have routinely held that ordering a produce debtor/PACA Trustee to segregate PACA trust assets is the appropriate remedy once there is evidence of either actual or threatened "dissipation" or even financial instability.  See Frio Ice, S.A. v. Sunfruit, 918 F. 2d 154,159 (11th Cir 1990)(dissipation shown); DeBruyn Produce v. Olympia Produce, 734 F. Supp. 483, 486 (N.D. Ga 1989)(debtor financially troubled); Dole Fresh Fruit v. United Banana, 821 F, 2d 106, 108 (2nd Cir. 1987)(noting district court ordered segregation to prevent further dissipation).

In Tanimura & Antle v. Packed Fresh Produce, 222 F. 3d 132 (3rd Cir. 2000), the Third Circuit held that preventing "dissipation" of the PACA trust is a key purpose of the PACA statute where it specifically stated:

> If PACA's trust is to have any meaning, and Congress' intent is to be effectuated in any way, trust assets must be preserved and not dissipated.  If not for the preservation of trust assets through injunctive relief pending the outcome of litigation, the creation and maintenance of a trust by a spendthrift debtor will be a futile act indeed.  We will not read the plain language of the statute to bring about this absurd result

Id. at 138.  Further, the Tanimura Court granted injunctive relief in the form of segregation of PACA trust assets because the PACA creditor showed the PACA debtor dissipated PACA trust assets and was financially unstable. Id. at 139.

Following these cases from the Circuit Courts and District Courts, numerous Bankruptcy Courts have also routinely ordered Debtors to either segregate the PACA trust assets from anything that qualifies as "property of the estate" to prevent commingling or simply ordered the Debtors to

immediately turn over the PACA trust assets to the beneficiaries for further handling.  J.R. Brooks & Son v. Norman's Country Market, 98 Bankr. 47, 50(N.D. Fla. 1989)("***all of the cases we have reviewed support the immediate sequestration of PACA trust assets***.")(emphasis added).  See In re Southland & Keystone, 132 B.R. 632 (9th Cir. BAP 1991); In re Long John Silver's Restaurants, 230 B.R. 29, 32 (Bankr. D. Del. 1999); In re Kelly Food Products, 204 B.R. 18 (Bankr. C.D. Ill. 1997); In re Carolina Produce Distributors, 110 B.R. 207 (W.D. N.C. 1990); In re Milton Polos, 94 B.R. 648 (Bankr. C.D. Cal. 1988); In re Azonal, 93 B.R. 433 (M.D. N.C. 1988); In re Fresh Approach, 48 B.R. 926 (Bankr. N.D. Tex. 1985).

In addition to these reported cases, the Razorback Group offers the cash collateral order in another case with a sizeable pool of PACA claims.  The Bankruptcy Court in the District of Delaware ordered the Debtor to establish a segregated PACA trust account and to immediately deposit $26M to restore the Debtor's compliance with non-Code federal law.  In re Fleming Companies, *et al*, Bankr. Del No. 03-10945 (Bankr. D. Del. May 6, 2003) (copy attached as Exhibit A).  Thus, despite the Debtors' claims of no reported cases requiring segregation of trust assets *after* the PACA Trustee has admitted both "dissipation" and insolvency, Bankruptcy Courts have clearly ordered Debtors to establish, fund and maintain a segregated PACA trust account to both prevent further "dissipation" that "could prejudice or impair" immediate payment of PACA claims and also guard against any commingling of clearly non-estate property with property of the estate.

5

CONCLUSION

Based on the foregoing authorities, this Honorable Court should order the Debtors to establish a separate PACA trust account, immediately fund it with $4.0 Million and another $3.7 Million in equal installments over the 16 weeks of the Debtors' proposed budget, to prevent further dissipation of the PACA Trust and return the Debtors to compliance with non-Code federal law.

RAZORBACK FARMS, INC. and
CENTRAL PRODUCE SALES, INC.


By:    */s/ E. Kent Hirsch*
        E. Kent Hirsch, ABA # 81-087
        HIRSCH LAW FIRM, P.A.
        107 W. Emma Ave.
        Springdale, Arkansas 72764
        Tel:    479/751-0251
        Email:  kent@hirschlawfirm.com


By:    */s/ Michael J. Keaton*
        Michael J. Keaton, IB # 6207203
        KEATON LAW FIRM, P.C.
        707 Lake Cook Road, Suite 300
        Deerfield, Illinois 60015
        Tel:    847/934-6500
        Email:  keaton@pacatrust.com

CERTIFICATE OF SERVICE

I, E. Kent Hirsch, hereby certify that on this day, November 26, 2013, I electronically filed the foregoing with the Clerk of the Court using the ECF System which sent notification of such filing to the parties set forth in the Electronic Mail Notice List as of the date hereof.


/s/ E. Kent Hirsch
E. Kent Hirsch