IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
Fayetteville Division

| | |
|---|---|
| In re: | Chapter 11 |
| ALLENS, INC. and ALL VEG, LLC,[1] | Case No. 5:13-bk-73597 (BTB) and 5:13-bk-73598 (BTB) |
| Debtors. | |
| | Jointly Administered Under Case No. 5:13-bk-73597 (BTB) |

ORDER (A) AUTHORIZING AND APPROVING THE BIDDING PROCEDURES,
(B) AUTHORIZING DEBTOR ALLENS, INC. TO ENTER INTO THE STALKING
HORSE PURCHASE AGREEMENT AND PROVIDE BID PROTECTIONS,
(C) APPROVING THE NOTICE PROCEDURES, (D) SETTING A DATE FOR THE
SALE HEARING AND (E) GRANTING RELATED RELIEF

Upon consideration of the *Motion of the Debtors for an Order (A) Authorizing and Approving the Bidding Procedures, (b) Authorizing Debtor Allens, Inc. to Designate a Stalking Horse Purchaser, Enter into the Stalking Horse Purchase Agreement and Provide Bid Protections, (C) Approving the Notice Procedures, (D) Setting a Date for the Sale Hearing, and (E) Granting Related Relief* [Docket No. 229] (the "Motion")[2] of the above-captioned debtors and debtors in possession (the "Debtors"), pursuant to sections 105, 363 and 365 of title 11 of the United States Code (the "Bankruptcy Code"), and rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for entry of an order (this "Bidding Procedures Order"): (i) authorizing and approving the bidding procedures (as revised, the "Bidding Procedures"), (ii) authorizing Debtor Allens, Inc. ("Allens") to designate Seneca

---

[1]  The Debtors, along with the last four digits of each Debtor's tax identification number, are: All Veg, LLC (9250) and Allens, Inc. (5020).  The Debtors' business address is 305 E. Main Street, Siloam Springs, Arkansas 72761.

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed thereto in the Motion, or the Stalking Horse Purchase Agreement, as applicable.  In the event of a discrepancy between the definitions contained in the Motion and the Stalking Horse Purchase Agreement, those contained in the Stalking Horse Purchase Agreement shall control.

*NY 243463528v22*

Foods Corporation (the "Stalking Horse Purchaser") as the stalking horse purchaser, enter into that certain Asset Purchase Agreement, dated as of December 16, 2013 (as amended or modified including by the terms of this Order, the "Stalking Horse Purchase Agreement") between Allens and the Stalking Horse Purchaser for substantially all of Allens' assets as identified therein (the "Acquired Assets")[3] and providing bid protections; (iii) approving the notice procedures establishing the dates, times, and locations of the deadline to bid on substantially all of Allens' assets including the Acquired Assets (collectively, the "Assets") and to conduct the auction of the Assets (the "Auction"), (iv) setting a date for the sale hearing for the Assets (the "Sale Hearing"); (v) approving the notice of Allens' intent to assume, assign and/or transfer to the Successful Bidder(s) or Backup Bidder(s) (as such terms are defined in the Bidding Procedures), the executory contracts and unexpired leases (each a "Contract or Lease" and, collectively, the "Contracts and Leases"), and the corresponding cure amounts (the "Cure Amounts") required to be paid in connection with such assumption, assignment and/or transfer; and (vi) granting related relief; the Court having determined that the relief provided herein is in the best interest of the Debtors, their estates, creditors and other parties in interest; and due and adequate notice of the Motion having been given under the circumstances; and upon the record of the hearing on the Motion, and the full record of these cases; and after due deliberation thereon; and good and sufficient cause appearing therefore:

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A.    This Court has jurisdiction over the Motion and the transactions contemplated therein pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding

---

[3]    The Acquired Assets exclude certain assets of Allens' frozen business and the other assets as set forth in the Stalking Horse Purchase Agreement.

NY 243463528v22

pursuant to 28 U.S.C. § 157(b)(2)(A), (M) and (O). Venue in this district is proper under 28 U.S.C. §§ 1408 and 1409.

B. The Motion and this Bidding Procedures Order comply with all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules of the United States Bankruptcy Court for the Eastern and Western Districts of Arkansas (the "Local Rules").

C. Pursuant to the *Notice of (I) Entry into the Stalking Horse Purchase Agreement and (II) Filing of Revised Bidding Procedures* [Docket No. 298] filed by the Debtors on December 16, 2013 (the "Notice"), Allens has selected the Stalking Horse Purchaser and has entered into the Stalking Horse Purchase Agreement for the sale of the Acquired Assets.

D. Good and sufficient notice of the Motion and the Notice and the relief sought therein has been given under the circumstances, and no other or further notice is required except as set forth herein with respect to the Auction and Sale Hearing. A reasonable opportunity to object or be heard regarding the relief provided herein with respect to the Motion and the Notice has been afforded to parties in interest.

E. The Debtors and the Stalking Horse Purchaser have agreed that the terms of the Stalking Horse Purchase Agreement are amended and modified to provide that (a) the Sale Hearing must occur by February 10, 2014 and (b) the Break-Up Fee shall be $4,500,000 in all cases except in the case of an Alternate Transaction[4] where the Second Lien Secured Parties (as defined herein) are the Successful Bidder in which case the Break-Up Fee shall be $3,000,000. All references to the Stalking Horse Purchase Agreement, the Bid Protections and the Break-Up

---

[4] In connection with the payment of the Bid Protections, the definition of Alternate Transaction shall be as provided in the Stalking Horse Purchase Agreement.

*NY 243463528v22*

Fee in this Order shall refer to the Stalking Horse Purchase Agreement, the Bid Protections and the Break-Up Fee as modified by this Order.

F. The proposed notice of the Bidding Procedures is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Auction, the sale of the Assets, the Bidding Procedures to be employed in connection therewith, and the Sale Hearing.

G. The Notice of Assumption and Assignment (as defined below) is reasonably calculated to provide all counterparties to Contracts and Leases with proper notice of the potential assumption and assignment of their Contract or Lease and any Cure Amount relating thereto, provided, however, that the mere listing of any Contract or Lease on the Notice of Assumption and Assignment does not require or guarantee that such Contract or Lease will be assumed and assigned, and all rights of Allens and the Stalking Horse Purchaser (or any Successful Bidder(s)) with respect to such Contracts and Leases are reserved.

H. The Debtors have articulated good and sufficient business reasons for this Court to (i) approve the Bidding Procedures (ii) approve the Stalking Horse Purchaser as the stalking horse bidder; (iii) approve the Break-Up Fee and Expense Reimbursement as provided in the Stalking Horse Purchase Agreement as modified by this Order (collectively, the "Bid Protections"); (iv) approve the scheduling of the Auction and the Sale Hearing, and related deadlines in connection with each of the foregoing; and (v) approve the establishment of procedures to fix the Cure Amounts to be paid under section 365 of the Bankruptcy Code in connection with the assumption, assignment and/or transfer of the Contracts and Leases.

I. The Bid Protections, to the extent payable under the Stalking Horse Purchase Agreement as modified by this Order, (i) are and shall be deemed to be an actual and

necessary cost and expense of preserving the Debtors' estate within the meaning of sections 503(b)(1) and 507(a)(2) of the Bankruptcy Code, (ii) are of substantial benefit to the Debtors' estates, will encourage a competitive bidding process, and will not pose a detriment to unsecured creditors, (iii) are reasonable and appropriate, including in light of the size and nature of the transaction contemplated by the Stalking Horse Purchase Agreement and the efforts that have been and will be expended by the Stalking Horse Purchaser, and (iii) have been negotiated by Allens and the Stalking Horse Purchaser and their respective advisors at arms' length, in good faith, without self-dealing or manipulation.

J.      Entry into the Stalking Horse Purchase Agreement is in the best interest of the Debtors, the Debtors' estates and their creditors.  The Stalking Horse Purchase Agreement will enable the Debtors to secure an adequate floor for the Auction and will provide a clear benefit to the Debtors' estates.  The terms of the Stalking Horse Purchase Agreement were negotiated by Allens and the Stalking Horse Purchaser in good faith and at arm's length.

K.      The Bidding Procedures are reasonably designed to enable the Debtors to receive bids for the Assets and represent the best method for maximizing the realizable value of such Assets.

L.      Entry of this Bidding Procedures Order and the granting of the relief set forth herein are in the best interests of the Debtors, their estates, creditors, and other parties in interest.

M.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

*NY 243463528v22*

N.     The Sale may include the transfer of "personally identifiable information," as defined in section 101(41A) of the Bankruptcy Code.  No "consumer privacy ombudsman" need be appointed under section 363(b)(1) of the Bankruptcy Code because the Stalking Horse Purchase Agreement provides (and any competing Bid will provide) that the Stalking Horse (and/or Successful Bidder(s)) has agreed to adhere to any such privacy policies applicable to Allens.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.     The relief requested in the Motion as it relates to the Bidding Procedures and Bid Protections set forth in the Stalking Horse Purchase Agreement, and the scheduling of, and notice to be approved with respect to, the sale process, the Auction and the Sale Hearing, is granted and approved as and to the extent set forth in this Bidding Procedures Order.

2.     All objections and responses to the Motion, the Notice or the relief provided herein that have not been withdrawn, waived or settled, and all reservations of rights included therein, hereby are overruled and denied on the merits.

3.     The Bidding Procedures attached hereto as **Exhibit A** are hereby incorporated herein and approved in their entirety, and shall apply with respect to the sale of the Assets.  The failure specifically to include or reference a particular provision of the Bidding Procedures in this Bidding Procedures Order shall not diminish or impair the effectiveness of such provision. The Debtors are authorized to take all actions necessary or appropriate to implement the Bidding Procedures.  In the event of an inconsistency between this Bidding Procedures Order and the Bidding Procedures, the Bidding Procedures Order shall prevail.

*NY 243463528v22*

4.      The Debtors are hereby authorized to pursue a sale of the Assets by conducting an Auction in accordance with the Bidding Procedures.  The Assets being offered for sale include all of the Assets of Allens whether or not such Assets are designated as Acquired Assets under the Stalking Horse Purchaser Agreement[5].

5.      Allens is hereby authorized to enter into the Stalking Horse Purchase Agreement subject to the terms and conditions of this Bidding Procedures Order.  The Bid Protections contained herein and in the Stalking Horse Purchase Agreement, including, without limitation, in Section 11.3 of the Stalking Horse Purchase Agreement, as modified by this Order are hereby approved, authorized and binding upon Allens, its estate, creditors and other parties-in-interest.  Any schedules to the Stalking Horse Purchase Agreement marked "confidential" are not required to be attached to the Stalking Horse Purchase Agreement as filed with the Court but will be provided to the DIP Agent and will be included in the Diligence Materials and made available as provided in the Bidding Procedures.

6.      Subject to the terms of the Stalking Horse Purchase Agreement, Allens' obligation to pay the Bid Protections as modified by this Order shall survive termination of the Stalking Horse Purchase Agreement and shall be payable to Stalking Horse Purchaser to the extent and subject to the terms provided in the Stalking Horse Purchase Agreement.  Without limiting the foregoing, to the extent that an Alternate Transaction is consummated and the Stalking Horse Purchaser is not the Successful Bidder for the Acquired Assets (a) the Successful Bidder(s) as a necessary provision of its Successful Bid is authorized to and shall pay the Bid

---

[5] All parties wishing to submit a Bid for Assets not included in the Stalking Horse Purchase Agreement, including without limitation, the assets relating to or comprising Allens' "frozen foods business" and miscellaneous real estate, are required to submit a bid pursuant to this Bidding Procedures Order and the Bidding Procedures.

7

Protections as modified by this Order directly to the Stalking Horse Purchaser by wire transfer of immediately available good funds to an account specified by the Stalking Horse Purchaser at the Closing of any Alternate Transaction with the Successful Bidder(s); and (b) if for any reason such Successful Bidder(s) fails to pay the Bid Protections as modified by this Order directly to the Stalking Horse Purchaser, Allens is authorized and directed to pay the Bid Protections as modified by this Order to the Stalking Horse Purchaser from the gross cash proceeds of the Alternate Transaction free and clear of Interests in accordance with the terms of the Stalking Horse Purchase Agreement without further order of the Court.

7.      Upon the closing of the transaction under the Stalking Horse Purchase Agreement or any Alternate Transaction (as defined in the Bidding Procedures) with the Successful Bidder(s), as part of the cash purchase price for the Assets purchased, the Stalking Horse Purchaser or another Successful Bidder(s) is authorized to and shall pay directly to Lazard Middle Market ("Lazard") by wire transfer of immediately available good funds to an account specified by the Lazard, the amounts of fees including any success fee (the "Lazard Fees") owing to Lazard at the Closing of the transaction under the Stalking Horse Purchase Agreement or any Alternate Transaction with the Successful Bidder(s).  If for any reason the Stalking Horse Purchaser or a Successful Bidder(s) fails to pay the Lazard Fees directly to Lazard (as part of the cash purchase price), Allens is authorized and directed to pay the Lazard Fees to Lazard from the gross cash proceeds of the Stalking Horse Purchase Agreement or the Alternate Transaction free and clear of Interests without further order of the Court.

8.      Except for the Stalking Horse Purchaser, no other party submitting an offer, Bid or Qualified Bid for the Assets shall be entitled to any expense reimbursement or break-up, termination or similar fee or payment, or postpetition claims, including any

8

administrative expense claims or substantial contribution claims under section 503(b) of the Bankruptcy Code or otherwise, and by submitting a Bid, a Bidder (other than the Stalking Horse Purchaser) shall be deemed to waive any rights with respect thereto; provided, however, that the foregoing shall not constitute a wavier of, or otherwise limit, alter or impair, the right of the lenders under the Second Lien Note Purchase Agreement (the "Second Lien Secured Parties") to assert claims for post-petition interest, fees, and expenses (including, without limitation, professional fees and expenses) and other charges under the Second Lien Note Purchase Agreement to the extent permitted under Section 506(b) of the Bankruptcy Code (or the rights of any party-in-interest to object to such a claim).

9. As further described in the Bidding Procedures, the deadline for submitting bids for the Assets or any portion thereof (the "Bid Deadline") **is January 27, 2014 at 4:00 p.m.** (prevailing Central Time).

10. If a Bid(s), other than the Bid of the Stalking Horse Purchaser pursuant to the Stalking Horse Purchase Agreement, is timely received by Allens in accordance with the Bidding Procedures, the Auction shall take place on **February 3, 2014** at 11:30 a.m. (prevailing Eastern Time) at the offices of Greenberg Traurig at 200 Park Avenue, New York, NY 10166 or such other place and time as Allens shall notify all Qualified Bidders including the Stalking Horse Purchaser, the official committee of unsecured creditors appointed in the Debtors' chapter 11 cases (the "Committee"), the Debtors' equity holders, the Debtors' prepetition and postpetition secured lenders, and other invitees. If, however, no such Qualified Bid(s) is received by the Bid Deadline, then the Auction will not be held.

11. The Stalking Horse Purchaser shall constitute a Qualified Bidder for all purposes and in all respects regarding the Bidding Procedures.

9

12.     The Agent under the Debtors' debtor-in-possession credit facility (the "DIP Agent") is hereby deemed a Qualified Bidder and shall be entitled to credit bid all or a portion of its claims against the Debtors as a Qualified Bid, without otherwise complying with the Bid Procedures except as provided herein, to the fullest extent permissible under section 363(k) of the Bankruptcy Code.  To the extent the DIP Agent informs Allens that it wishes to submit a Bid, the DIP Agent's consultation rights provided herein or in the Bidding Procedures shall be suspended until such time as the DIP Agent certifies to Allens in writing that is has withdrawn from participating in the Auction.

13.     The Administrative Agent under the Second Lien Note Purchase Agreement (the "Second Lien Agent") shall not be entitled to receive any information not provided to other Bidders unless and until the Second Lien Agent has certified to Allens in writing that it does not intend to participate in or has withdrawn from participation in the Auction.  In the event the Second Lien Agent declines to participate in or withdraws from participating in the Auction, the Second Lien Agent shall receive the consultation rights provided to the DIP Agent and the Committee herein and in the Bidding Procedures and shall receive all information provided to the DIP Agent and the Committee (including all material information related to the sale process provided to the DIP Agent and the Committee prior to the Second Lien Agent declining to participate in or withdrawing from the Auction).

14.     Notwithstanding anything to the contrary contained herein, or in the Bidding Procedures, the Second Lien Agent (or the Second Lien Secured Parties, as applicable) shall be deemed a Qualified Bidder and is authorized to make one or more credit bids at the Auction equal to any or all of their secured claims, without otherwise complying with the Bid Procedures except to the extent set forth herein and in the Bidding Procedures, to the full extent

NY 243463528v22

permitted by Section 363(k) of the Bankruptcy Code.  All rights of the Second Lien Agent and/or Second Lien Secured Parties to object to the treatment of their claims or liens are preserved and unaffected by this Order or the Bidding Procedures.

15.    Any credit bid determined to be the Successful Bid must include sufficient cash at Closing or otherwise leave the Debtors' estates with sufficient available cash at Closing to satisfy (a) the First Priority Obligations, (b) the Carve-Out, (c) the Allowed PACA Claims, (d) any wage claims that by law have priority senior to the DIP Financing up to $100,000, and (e) any other amounts that are determined by this Court to have priority over the First Priority Obligations (collectively the "Senior Claims").  To the extent provided herein, any credit bid shall also include sufficient available cash at Closing or otherwise leave the Debtors' estates with sufficient available cash at Closing to satisfy (y) the Lazard Fee and (z) the Break-Up Fee and Expense Reimbursement owing to the Stalking Horse Purchaser under the Stalking Horse Purchase Agreement as modified by this Order.  In order to be a Qualified Bid, a credit bid must be accompanied by evidence of sufficient cash resources or committed financing to allow for the payment of the Senior Claims, the Lazard Fee and the Break-Up Fee and Expense Reimbursement as modified by this Order in cash at Closing.

16.    The Auction shall be conducted in accordance with the Bidding Procedures.

17.    The Auction will be conducted openly with all participants entitled to hear or review the material terms of each Bid.

18.    Bidding at the Auction will be transcribed or videotaped.

NY 243463528v22

19.     Notwithstanding anything to the contrary contained herein, or in the Bidding Procedures, the Debtors shall not be deemed to have accepted any Bid at the Auction unless and until such Bid is approved by this Court.

20.     The Sale Hearing shall be held before this Court on **February 10, 2014 at 9:00 a.m.** (prevailing Central Time), or as soon thereafter as counsel and interested parties may be heard.

21.     The notices described in subparagraphs (a) – (e) below are approved and shall be good and sufficient, and no other or further notice shall be required:

a.      On or before three (3) business days after entry of this Bidding Procedures Order, or as soon thereafter as such parties can be identified, the Debtors will cause (a) a notice in substantially the form annexed as **Exhibit B** hereto (the "Notice of Auction and Sale Hearing"); and (b) a copy of the Bidding Procedures Order to be sent by first-class mail postage prepaid, to the following: (i) counsel to the Stalking Horse Bidder, Jaeckle, Fleischmann & Mugel, LLP; (ii) the Office of the United States Trustee, c/o Charles Tucker, 200 W. Capitol Avenue, Suite 1200, Little Rock, Arkansas 72201; (iii) counsel for the Committee; (iv) counsel to the Debtors' prepetition secured lenders; (v) counsel to the Debtors' postpetition lenders; (vi) all taxing authorities in the States where the Assets are located, including the Internal Revenue Service, and all other federal, state and local taxing and regulatory authorities known to the Debtors to assert jurisdiction over the Assets or which are reasonably expected by the Debtors to have claims, contingent or otherwise, in connection with the ownership of the Assets, or to have any known interest in the relief requested by the Motion and the Sale Motion (as defined in the Bidding Procedures); (vii) all parties that have requested or that are required to receive special notice pursuant to Bankruptcy Rule 2002; (viii) all Persons known or reasonably believed by the Debtors to have asserted any lien, claim, encumbrance, right of first refusal, or other interest in or upon any of the Assets; (ix) the non-debtor parties to the Contracts and Leases; (x) all Persons known or reasonably believed to have expressed an interest in acquiring some or all of the Assets within the last four months; (xi) the United States Attorney's office; (xii) Attorneys General in the States where the Assets are located; (xiii) the United States Environmental Protection Agency; (xiv) any applicable state and

12

local environmental agencies; and (xv) all parties to any litigation involving the Debtors.[6]

b.    On or before three (3) business days after entry of the Bidding Procedures Order, the Debtors will serve the Notice of Auction and Sale Hearing on all known creditors of the Debtors.

c.    On or before seven (7) days after entry of the Bidding Procedures Order, subject to applicable submission deadlines, the Debtors will publish an abbreviated version of the Notice of Auction and Sale Hearing once in one or more regional and/or national publications that the Debtors deem appropriate.

d.    On or before three (3) business days after the entry of the Bidding Procedures Order, the Debtors shall serve by first class mail or hand delivery, a notice, substantially in the form attached hereto as **Exhibit C**, of the potential assumption, assignment and/or transfer of the Contracts and Leases (the "Notice of Assumption and Assignment") on all non-debtor parties to the Contracts and Leases. The Notice of Assumption and Assignment shall identify the calculation of the Cure Amounts that the Debtors believe must be paid to cure all prepetition defaults under the Contracts and Leases. In addition, if the Debtors identify additional Contracts or Leases that might be assumed by Allens and assigned and/or transferred to the Successful Bidder(s) that are not included in the original Notice of Assumption and Assignment, the Debtors shall promptly send a supplemental notice (a "Supplemental Notice of Assumption and Assignment") to the applicable counterparties to such additional Contracts or Leases.

e.    In addition to the foregoing, electronic notification of the Motion, the Bidding Procedures Order, the Notice of Auction and Sale Hearing, the Notice of Assumption and Assignment, and the Sale Motion also will be posted on: (i) the Court's electronic case filing (ECF) website, http://ecf.arwb.uscourts.gov; and (ii) the case management website maintained by the Debtors' claims and noticing agent, Epiq Bankruptcy Solutions, LLC, located at http://dm.epiq11.com/AVL/Project.

---

[6] The Notice of Auction and Sale Hearing will direct parties to contact the Debtors' counsel for more information and will provide that any party in interest that wishes to obtain a copy of any related document, subject to any necessary confidentiality agreement, may make a request in writing as specified in the Notice of Auction and Sale Hearing.

13

22.      The Notice of Auction and Sale Hearing and the Notice of Assumption and Assignment to be issued in connection with the proposed sales of the Assets, substantially in the forms annexed hereto as **Exhibits B and C**, respectively, are approved.

23.      Objections, if any, to the sale of the Assets, the transactions contemplated by the Stalking Horse Purchase Agreement, or the relief requested in the Sale Motion, other than the relief approved herein, must:  (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Rules; (c) be filed with the clerk of the Bankruptcy Court for the Western District of Arkansas on or before **4:00 p.m. (Prevailing Central Time) on January 27, 2014**, or such later date and time as the Debtors may agree; and (d) be served so as to be received on the same day by: (i) counsel to the Debtors, Greenberg Traurig, LLP, 200 Park Avenue, New York, New York 10166, Attn: Maria J. DiConza and Matthew Hinker; (ii) local counsel to the Debtors, Mitchell, Williams, Selig, Gates & Woodyard, P.L.L.C., 425 West Capitol Avenue, Suite 1800, Little Rock, Arkansas 72201, Attn: Stan Smith and Lance Miller; (iii) counsel to the Stalking Horse Purchaser, Jaeckle, Fleischmann & Mugel, LLP, 200 Delaware Ave., Buffalo, NY 14202, Attn: Tim C. Loftis; (iv) local counsel to the Stalking Horse Purchaser, Wright, Lindsey & Jennings, LLP, 200 West Capital Avenue, Suite 2300, Little Rock, Arkansas 72201, Attn: Charles T. Coleman; (v) counsel to the Committee, Cooley LLP, 1114 Avenue of the Americas, New York, NY 10036, Attn: Cathy Hershcopf and Jeffrey Cohen; (vi) local counsel to the Committee, Eichenbaum Law Firm, 124 W. Capital Ave., Ste. 1900, Little Rock, AR 72201-3736, Attn: Martha Jett McAlister; (vii) counsel to the Debtors' post-petition lenders, Jacoway Law Firm, Ltd., 223 S. East Avenue, Fayetteville, Arkansas 72701, Attn: Jill Jacoway, Esq. and Jones Day, 77 West Wacker Drive, Chicago, Illinois 60601, Attn: Brad Erens, Esq. and Robert Krebs, Esq.; (viii) counsel to the Second Lien Agent, Proskauer Rose LLP, Eleven Times Square, New York,

14

New York 10036, Attn: Scott K. Rutsky and Jared D. Zajac and local counsel to the Second Lien Agent, Friday, Eldredge & Clark LLP, 3425 North Futrall Drive, Suite 103, Fayetteville, Arkansas 72703 Attn: Jason N. Bramlett;  and (ix) the Office of the United States Trustee (Region 13), 200 West Capitol Avenue, Suite 1200, Little Rock, Arkansas 72201, Attn: Charles Tucker (collectively, the "Notice Parties").  Notwithstanding the foregoing, objections, if any, relating solely to facts and circumstances occurring after the foregoing deadline including, without limitation, to the qualification of Bidders, the conduct of the Auction or the selection of the Successful Bid(s) may be raised at the Sale Hearing.  All objections must state with specificity the nature of such objection and will be heard by the Court at the Sale Hearing.

24.     Unless the non-debtor party to a Contract or Lease files an objection (the "Cure Amount/Assignment Objection") to (a) their scheduled Cure Amount and/or (b) to the proposed assumption, assignment and/or transfer of such Contract or Lease, including, without limitation, any objections relating to the adequate assurance of future performance by the Stalking Horse Purchaser by (i) 4:00 p.m. (prevailing Central Time) on **January 27, 2014** or (ii) in connection with a Supplemental Notice of Assumption and Assignment, 4:00 p.m. (prevailing Central time) on the date that is ten (10) days after service of the relevant Supplemental Notice of Assumption and Assignment (such date, the "Cure/Assignment Objection Deadline") and serves a copy of the Cure Amount/Assignment Objection so as to be received no later than the Cure/Assignment Objection Deadline on the Notice Parties, then such non-debtor party (i) will be forever barred and estopped from objecting to the Cure Amount and Allens and the Successful Bidder(s) shall be entitled to rely solely upon the Cure Amount, and (ii) if the Contract or Lease is identified as an Asset to be acquired by the Successful Bidder(s) and/or Backup Bidder(s), will be deemed to have consented to the assumption, assignment and/or

15

transfer of such Contract or Lease and will be forever barred and estopped from asserting or claiming against the Debtors, the Successful Bidder(s) and/or the Backup Bidder(s), or any other assignee of the relevant Contract or Lease that any additional amounts are due or defaults exist, or conditions to assumption, assignment and/or transfer must be satisfied, under such Contract or Lease.  Notwithstanding the foregoing, as provided in paragraph 26 below, in the event the Stalking Horse Purchaser is not the Successful Bidder for a particular Contract or Lease, each non-debtor party to such Contract or Lease shall retain the right to object, at the Sale Hearing (or such later date as may be agreed to by Allens and the Successful Bidder(s)) to the assumption, assignment or transfer of its Contract or Lease based solely on the issue of whether the Successful Bidder(s) or Backup Bidder(s) (other than the Stalking Horse Purchaser) can provide adequate assurance of future performance as required by section 365 of the Bankruptcy Code.

25.     If an objection challenges a Cure Amount (or asserts any other objection to assumption, assignment and/or transfer of a Contract or Lease), the objection must set forth the cure amount being claimed by the objecting party with appropriate documentation in support thereof, and specify (with appropriate supporting documentation) the factual and legal basis for any other objection to assumption, assignment and/or transfer of such Contract or Lease.  Upon receipt of a timely filed Cure Amount/Assignment Objection, Allens in consultation with the Stalking Horse Purchaser (or, if applicable, the Successful Bidder(s) if other than the Stalking Horse Purchaser), is authorized, but not directed, to resolve any Cure Amount/Assignment Objection by mutual agreement with the objecting counterparty to any Contract or Lease without further order of the Court.  In the event that Allens and any objecting party are unable to resolve consensually any timely filed Cure Amount/Assignment Objection, the Court will resolve any

16

such Cure Amount/Assignment Objection at the Sale Hearing (or such other date and time as is fixed by the Court).

26.     Except as may otherwise be agreed to by the Successful Purchaser and the non-debtor party or parties to a Contract or Lease, at or promptly following the Closing, the cure of any defaults under such Contract and Lease necessary to permit assumption and assignment thereof in accordance with section 365(b) of the Bankruptcy Code, shall be by (i) payment of the undisputed Cure Amount, (ii) payment of the Cure Amount judicially determined by the Court to be the correct amount, and/or (iii) the establishment by the Stalking Horse Purchaser or Successful Bidder(s), as applicable, of a reserve (either in an amount agreed to by the parties or established by the Court) with respect to any disputed Cure Amount that has not been resolved at or prior to the Sale Hearing (which reserve shall for all purposes constitute the maximum Cure Amount that may be due and payable in connection with the assumption and assignment of such Contract and Lease).

27.     Notwithstanding anything to the contrary contained in this Bidding Procedures Order, the Debtors, the Stalking Horse Bidder or, if applicable, any Successful Bidder or Backup Bidder that is not the Stalking Horse Bidder, as the case may be, may determine to add or exclude any Contract or Lease from the list of Assets to be acquired no later than (i) five (5) day(s) prior to the Sale Hearing, or, (ii) if the Court determines at any hearing on a Cure Amount/Assignment Objection that the applicable cure amount for such contract is greater than the Cure Amount proposed by the Debtors, no later than five (5) days following the date such determination is reflected in an order entered by the Bankruptcy Court. The non-debtor party or parties to any such excluded Contract or Lease will be notified of such exclusion by written notice mailed within two (2) business days of such determination.

17

NY 243463528v22

28. Within one (1) day after the conclusion of the Auction for the Assets, Allens will file a statement with the identity of the Successful Bidder(s) and Backup Bidder(s) for the Assets, and the total price received for the Assets and serve such statement on the United States trustee in satisfaction of Federal Rule 6004(f)(1).

29. Within one (1) day after the conclusion of the Auction for the Assets, the Debtors will serve a notice identifying the Successful Bidder(s) and Backup Bidder(s) to the non-debtor parties to the Contracts and Leases that have been identified in such Successful Bid and Backup Bid. In the event the Stalking Horse Purchaser is not the Successful Bidder for a particular Contract or Lease, the non-debtor parties to such Contracts and Leases will have until the commencement of the Sale Hearing (the "Adequate Assurance Objection Deadline") to object to the assumption, assignment and/or transfer of such Contract or Lease solely on the issue of whether the Successful Bidder can provide adequate assurance of future performance as required by section 365 of the Bankruptcy Code. For the sake of clarity, any and all objections to the assumption and assignment of a Contract or Lease to the Stalking Horse Purchaser, including without limitation objections based upon adequate assurance of future performance, must be filed by the Cure/Assignment Objection Deadline specified in paragraph 22 above.

30. Within two (2) business days after the Closing Date, the Debtors will file with this Court a complete list of the Contracts and Leases to be assumed and assigned, as of the Closing Date, to the Successful Bidder(s).

31. The Sale Hearing may be adjourned, from time to time, without further notice to creditors or other parties in interest other than by announcement of said adjournment before this Court or on this Court's calendar on the date scheduled for said hearing.

NY 243463528v22

32. Except as otherwise provided in this Bid Procedures Order, the Debtors further reserve the right as they may reasonably determine to be in the best interests of their estates, subject to conformity with the Bidding Procedures and in consultation with the DIP Agent and the Committee, to: (a) determine which bidders are Qualified Bidders; (b) determine which bids are Qualified Bids; (c) determine which Qualified Bid is the highest or otherwise best proposal and which is the next highest or otherwise best proposal; (d) reject any bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code, or (iii) contrary to the best interests of the Debtors and their estates; (e) waive terms and conditions set forth herein with respect to all potential bidders; (f) impose additional terms and conditions with respect to all potential bidders; (g) extend the deadlines set forth herein; (h) adjourn or cancel the Auction and/or Sale Hearing without further notice; and (i) modify the Bidding Procedures as Allens may determine to be in the best interest of their estates or to withdraw the Sale Motion at any time with or without prejudice.

33. Allens' obligations under this Bidding Procedures Order in respect of the Bid Protections shall survive confirmation of any plan of reorganization or discharge of claims thereunder and shall be binding upon Allens and any reorganized or reconstituted Allens as the case may be, after the effective date of a confirmed plan (including any order entered after conversion to a case under chapter 7 of the Bankruptcy Code).

34. With the consent of the Debtors and the Stalking Horse Purchaser, the originally executed Stalking Horse Purchase Agreement is hereby deemed amended and modified to provide that (a) the Sale Hearing must occur by February 10, 2014 and (b) the Break-Up Fee shall be $4,500,000 in all cases except in the case of an Alternate Transaction

19

where the Second Lien Secured Parties (as defined herein) are the Successful Bidder in which case the Break-Up Fee shall be $3,000,000.

35.     Notwithstanding anything to the contrary set forth in this Order, the Bid Procedures, or the Stalking Horse Purchase Agreement, the terms and provisions of the Stalking Horse Purchase Agreement or the Bidding Procedures that relate to 503(b)(9) Claims, including, without limitation, any escrow and/or allocation of the Purchase Price to or for the benefit of 503(b)(9) claims, shall not in any manner (i) constitute or be deemed to constitute a finding or determination by this Court that any such terms and provisions relating to the 503(b)(9) claims (including, without limitation, any allocation or escrow from the Purchase Price required thereunder to or for the benefit of 503(b)(9) claims) are valid or otherwise do not violate the Bankruptcy Code or other applicable law, (ii) limit or restrict the power of this Court to reallocate funds escrowed or otherwise allocated to or for the benefit of 503(b)(9) claims as the Court determines is appropriate, (iii)  be binding on any creditors or other parties in interest, (iv) require, as a condition to being a Qualified Bid, that the purchase price under such Qualified Bid be escrowed for or otherwise allocated to or for the benefit of 503(b)(9) claims, and (v) constitute or be deemed to constitute a waiver of the rights of the DIP Lenders, the Second Lien Secured Parties or any other party in interest to object at the Sale Hearing to allocation of funds to or for the benefit of 503(b)(9) claims. All rights of the Debtors, the DIP Lenders, the Second Lien Secured Parties, the Committee and other parties in interest with respect to the allocation of funds to or for the benefit of the 503(b)(9) claims are hereby expressly reserved including, without limitation, the rights of the Debtors (or any successor with legal standing to assert such claims) to assert that the 503(b)(9) claims are a 506(c) expense or the Debtors or any other party in interest to assert that such claims are otherwise entitled to priority, whether in accordance with

20

paragraph 20 of the Final DIP Order or otherwise, or the rights of the Second Lien Secured Parties or any other party in interest to contest any such assertion; provided that any such right of the Debtors or any party in interest shall be limited by the 506(c) waiver in the DIP Order.

36.     Notwithstanding anything to the contrary herein or set forth in the Bidding Procedures, the Stalking Horse Purchase Agreement or the Motion, the Bidding Procedures Order, the Bidding Procedures and Allens' obligations under the Stalking Horse Purchase Agreement are subject in all respects, including, without limitation, any right, authorization or discretion herein or therein, to the requirements imposed on the Debtors under the DIP Order, the DIP Credit Agreement and the other DIP Loan Documents including, without limitation, the Budget.  Notwithstanding the foregoing, the Stalking Horse Purchaser shall be entitled to receive the Bid Protections provided for herein if such Bid Protections are earned and payable pursuant to the terms of the Stalking Horse Purchase Agreement and the Bid Procedures Order.  In addition, Allens (i) will exercise its termination right under 11.1(c)(iii) of the Stalking Horse Purchase Agreement in the event that Estimated Cash Purchase Price less the amount of the Purchase Price Escrow provided for thereunder is less than the Minimum Cash Component (as defined in the Bidding Procedures), exclusive of the Break-Up Fee and Expense Reimbursement, and (ii) will not accept a Qualified Bid(s) for an Alternate Transaction that provides for less than the Minimum Cash Component, in each case unless otherwise consented to by the DIP Agent.

37.     The stays provided for in Bankruptcy Rules 6004(h) and 6006(d) are waived and this Bidding Procedures Order shall be effective immediately upon its entry.

38.     All time periods set forth in this Bidding Procedures Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

21

22

39. This Court shall retain jurisdiction over any matters related to or arising from the implementation of this Bidding Procedures Order.

_____ RY

Ben Barry
United States Bankruptcy Judge
Dated: 01/07/2014

22

NY 243463528v22

## <u>Exhibit A to Bidding Procedures Order</u>

### Bidding Procedures

*See Attached*

*NY 243463528v22*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF ARKANSAS**
**Fayetteville Division**

| | |
|---|---|
| In re: | Chapter 11 |
| ALLENS, INC. and ALL VEG, LLC,[1] | Case No. 5:13-bk-73597 (BTB) and 5:13-bk-73598 (BTB) |
| Debtors. | Jointly Administered Under Case No. 5:13-bk-73597 (BTB) |

## BIDDING PROCEDURES

By motion dated November 22, 2013 (the "Motion"),[2] the above-captioned debtors and debtors in possession (the "Debtors") sought approval of, among other things, the procedures through which they will conduct the sale (the "Sale") of substantially all of the assets or any portion thereof, of Debtor Allens, Inc. (collectively, the "Assets"). Pursuant to the Motion, the debtors designated a stalking horse purchaser and filed revised bidding procedures by notice on December 16, 2013 (the "Notice")

On January __, 2014, the United States Bankruptcy Court for the Western District of Arkansas (the "Court") entered an order (the "Bidding Procedures Order"), which, among other things, authorized Allens, Inc. ("Allens") to conduct the Sale of the Assets through the process and procedures set forth below (the "Bidding Procedures"). Allens reserves the right to modify the Bidding Procedures, provided that any such modification shall not be inconsistent with the Bidding Procedures Order.

The Sale will be subject to competitive bidding as set forth herein and approval of the Court pursuant to sections 105, 363 and 365 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

Allens entered into that certain Asset Purchase Agreement, dated as of December 16, 2013 (as amended or modified, the "Stalking Horse Purchase Agreement") between Allens and Seneca Foods Corporation (the "Stalking Horse Purchaser") for substantially all of the Assets as identified therein (the "Acquired Assets"). A copy of the Stalking Horse Purchase Agreement is attached to the Notice as Exhibit A[3]. The Debtors are soliciting bids for the Assets

---

[1] The Debtors, along with the last four digits of each Debtor's tax identification number, are: All Veg, LLC (9250) and Allens, Inc. (5020). The Debtors' business address is 305 E. Main Street, Siloam Springs, Arkansas 72761.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion, the Bidding Procedures Order, or the Stalking Horse Purchase Agreement, as applicable.

[3] The Stalking Horse Purchase Agreement was amended pursuant to the Bidding Procedures Order to provide (a) that the Sale Hearing must occur by February 10, 2014 and (b) the Break-Up Fee will be $4,500,000 in the event of an acquisition by a party other than the Debtors' second lien secured creditors in which case the Break-

or any portion thereof (including Assets which are not subject to the Stalking Horse Purchase Agreement) and, if competing bids for some or all of the Assets are received in conformance with these Bidding Procedures, Allens will conduct an auction to determine the highest or otherwise best bid for the Assets.

At the conclusion of the auction process, if applicable, Allens, in consultation with the DIP Agent and the Committee, will determine which bid, or combination of bids, constitutes the highest or otherwise best offer for the Assets pursuant to the criteria set forth in the Bidding Procedures Order and these Bidding Procedures.  Allens reserves the right to accept bids at the Auction for some or all of the Assets in its discretion, after consultation with the DIP Agent and the Committee.

**Assets to Be Sold**

The Assets include substantially all of Allens' operating assets, real property, and intellectual property rights, along with certain executory contracts and unexpired leases.  The Assets being offered include all of Allens' Assets whether or not such Assets are Acquired Assets under the Stalking Horse Purchase Agreement.  Allens is offering to sell the Assets to one or more bidders.  The Assets are being sold either as a whole or in one or more lots at Allens' discretion, in consultation with the DIP Agent and the Committee.

**Access to Diligence Materials**

To participate in the bidding process and to receive access to due diligence materials (the "Diligence Materials"), a party (other than the Stalking Horse Purchaser) must submit to Allens an executed confidentiality agreement in the form and substance satisfactory to Allens[4].  A party who receives access to Diligence Materials shall be a "Preliminary Interested Bidder."  All due diligence requests must be directed to Allens' investment banker, Lazard, 600 Fifth Avenue, 8th Floor, New York, New York 10020, Attn:  Andrew Torgove and Dermott O'Flanagan.

For any Preliminary Interested Bidder who is a competitor of the Debtors or is affiliated with any competitor of the Debtors, Allens reserves the right to withhold any Diligence Materials that Allens, in its sole discretion, determines are business-sensitive or otherwise not appropriate for disclosure to such Preliminary Interested Bidder.

**Due Diligence from Bidders**

Each Preliminary Interested Bidder and Qualified Bidder (as defined below) shall comply with all reasonable requests for additional information and due diligence access by Allens or its advisors regarding such Bidder (and its equity holders, members and/or Bidders, as applicable, and its financing sources) and its contemplated transaction.  Failure by a Preliminary Interested

---

Up Fee will be $3,000,000.  All references to the Stalking Horse Purchase Agreement, the Break-Up Fee and the Bid Protections herein shall take into account such amendment and modification.

[4]  Debtors' prepetition first and second lien lenders and post-petition lenders are covered by confidentiality arrangements satisfactory to the Debtors.

NY 243463528v22

Bidder to comply with requests for additional information and due diligence access will be a basis for Allens to determine in its discretion that such bidder is not a Qualified Bidder or that a Bid (defined below) by such party is not a Qualified Bid.

**Auction Qualification Process**

To be eligible to participate in the Auction (defined below), each offer, solicitation or proposal (each, a "<u>Bid</u>"), and each party submitting such a Bid (each, a "<u>Bidder</u>"), must be determined by Allens to satisfy each of the following conditions (and the failure to satisfy each such condition may result in Allens' determination that such Bid will not be considered for the Auction)[5]:

a. <u>Good Faith Deposit</u>: Each Bid for the Assets (other than the offer of the Stalking Horse Purchaser pursuant to the Stalking Horse Purchase Agreement) must be accompanied by a cash deposit equal to five percent (5%) of the cash purchase price of such Bid which will be deposited into an interest bearing escrow account to be identified and established by Allens (the "<u>Good Faith Deposit</u>"). Notwithstanding the foregoing, no Good Faith Deposit will be required to be provided in order for a credit bid to be a Qualified Bid.

b. <u>Executed Agreement</u>: Each Bid must include fully executed transaction documents, signed by an authorized representative of such Bidder (the "<u>Modified Asset Purchase Agreement</u>"), pursuant to which the Bidder proposes to effectuate a transaction or series of related transactions relating to all or substantially all of the Acquired Assets (whether in the form of an asset sale, stock sale, merger, reorganization or other similar transaction including a stand-alone plan of reorganization or refinancing) (an "<u>Alternate Transaction</u>"). Each Bid must identify the Assets or subset of Assets covered by such Alternate Transaction. A Bid for the Assets shall also include a copy of a marked Modified Asset Purchase Agreement reflect all variations from the Stalking Horse Purchase Agreement.

c. <u>Minimum Bid</u>: Each Bid (including a credit bid) must propose a minimum cash purchase price payable at Closing and net of any escrows, holdbacks or adjustments (or, with regard to items identified in clause (v) below, assume such amounts so long as the other items listed below are paid in the full in cash) equal to or greater than the aggregate of the sum of (i) the Estimated Cash Purchase Price set forth in the Stalking Horse Purchase Agreement determined in the reasonable judgment of Allens in consultation with the DIP Agent and the Committee as set forth below[6]; (ii) the Break-Up Fee payable to the Stalking

---

[5]   The Debtors may determine in their discretion, consultation with the DIP Agent and the Committee, to qualify Bids that do not meet one or more of the conditions below.

[6]   The Estimated Cash Purchase Price shall be sufficient in the judgment of the Debtors and the DIP Agent to pay in full, in cash at Closing (a) the First Priority Obligations, (b) PACA Claims, (c) any wage claims that by law have priority senior to the DIP Financing up to $100,000, (d) the Carve-Out, and (e) any other claims that are

Horse Purchaser, (iii) the Expense Reimbursement[7] payable to the Stalking Horse Purchaser, (iv) the Lazard Fee, (v) dollar amounts included in (and whether or not allocated pursuant to) the Stalking Horse Purchase Agreement for the payment of allowed claims pursuant to 11 U.S.C. Section 503(b)(9) and post-petition purchases of goods and services; and (vi) $500,000 (the "Minimum Cash Component"). Allens will provide all Bidders with a calculation of the Minimum Cash Component to be used for purposes of the Auction no later than five (5) days before the Bid Deadline. In the event a Bid provides for a purchase of less than all the Assets, Allens, in consultation with the DIP Agent and the Committee, shall have the right to adjust the Minimum Cash Component and overbid requirements set forth above to reflect the limited subset of Assets[8].

d.   Designation of Assumed Contracts and Leases:  A Bid must identify any and all Contracts and Leases of Allens that the Bidder wishes to have assumed and assigned to it pursuant to an Alternate Transaction. A Bidder must also provide documentation sufficient to provide adequate assurance of future performance for the benefit of the non-debtor parties to such Contracts and Leases.

e.   Corporate Authority:  A Bid must include written evidence reasonably acceptable to Allens demonstrating appropriate corporate authorization to consummate the proposed Alternate Transaction.

f.   Proof of Financial Ability to Perform:  A Bid (including a credit bid) must include written evidence that Allens, in consultation with their legal and financial advisors, the DIP Agent and the Committee reasonably concludes demonstrates that the Bidder has the necessary financial ability to fund the Minimum Cash Component at Closing, close the Alternate Transaction and provide adequate assurance of future performance under all Contracts and Leases to be assumed and assigned in such Alternate Transaction. For the avoidance of doubt, all Bids (including any credit bid) must include evidence of financing and/or available cash resources sufficient to fund the Minimum Cash Component.

g.   Contingencies/Privacy Policy:  Each Bid may not be conditioned on obtaining financing or any internal approval or on the outcome or review of due diligence. In addition, each Bid must comply with the Allens' privacy policy as provided in the Stalking Horse Purchase Agreement.

---

senior to the First Priority Obligations. In the event the Estimated Cash Purchase Price is not sufficient to pay such claims, the Debtors will not proceed with the Auction without the consent of the DIP Agent.

[7]   Counsel for the Stalking Horse Purchaser will, upon written request of counsel for the Debtors prior to the commencement of the Bid Deadline, provide counsel to the Debtors with a reasonable estimate of the amount of the Expense Reimbursement through and including the Auction, which amount shall be used by the Debtors to calculate the Expense Reimbursement for purposes of determining Qualified Bids.

[8]   To the extent a Bid is for Assets not included in the Stalking Horse Bid, no Break-Up Fee or Expense Reimbursement will be payable in connection with a sale of those Assets.

4

h.    Irrevocable:   Each Bid must be irrevocable through the Auction, provided, however, that if such Bid is accepted as the Successful Bid or the Backup Bid (each as defined herein), such Bid shall continue to remain irrevocable, subject to the terms and conditions of the Bidding Procedures.

i.    Bid Deadline:  The following parties must receive a Bid in writing, on or before **January 27, 2014 at 4:00 p.m. (prevailing Central Time)** or such later date as may be agreed to by Allens (the "Bid Deadline"): (i) Allens, Inc., 305 E. Main, Siloam Springs, Arkansas 72761, Attn: Jonathan C. Hickman; (ii) counsel to Allens, Greenberg Traurig, LLP, 200 Park Avenue, New York, New York 10166, Attn: Maria J. DiConza and Matthew Hinker; (iii) local counsel to Allens, Mitchell, Williams, Selig, Gates & Woodyard, P.L.L.C., 425 West Capitol Avenue, Suite 1800, Little Rock, Arkansas 72201, Attn: Stan Smith and Lance Miller; (iii) Allens' investment banker, Lazard Middle Market, 600 Fifth Avenue, 8th Floor, New York, New York 10020, Attn:  Andrew Torgove; and (iv) counsel to the DIP Agent, Jones Day, 77 West Wacker Drive, Chicago, Illinois 60601, Attn: Brad Erens, Esq. and Robert Krebs, Esq.

**Qualified Bids Relating to the Assets**

A Bid received from a Bidder before the Bid Deadline that meets the above requirements for the applicable assets or is otherwise qualified by Allens shall constitute a "Qualified Bid" for the Assets, and such Bidder shall constitute a "Qualified Bidder" for purposes of the Auction. Notwithstanding anything herein to the contrary, the Stalking Horse Purchase Agreement submitted by the Stalking Horse Purchaser shall be deemed a Qualified Bid for the Assets, and the Stalking Horse Purchaser shall be deemed a Qualified Bidder for the Assets.  Allens shall use reasonable efforts to inform counsel to the Stalking Horse Purchaser whether Allens will consider such Bids to be Qualified Bids by not later than three (3) days prior to the date first scheduled for the Auction (and in any event will inform the Stalking Horse Purchaser of any ongoing Bid negotiations by or before such time) but in any event no later than two (2) days prior to the Auction.

Allens shall promptly upon receipt and determination thereof provide copies of each Qualified Bid and all supporting materials to the DIP Agent and the Committee.

In addition no later than two (2) days prior to the Auction, each Qualified Bidder (including the Stalking Horse Purchaser) will receive from counsel to Allens a copy of any Qualified Bids including, without limitation, (a) a true and complete copy of the clean executed Modified Asset Purchase Agreement (together with all Schedules and Exhibits), (b) a marked version of such agreement marked to show revisions from the Stalking Horse Purchase Agreement; and (c) an estimated valuation (which shall include the estimated cash value) of the Auction Baseline Bid (as defined herein), as prepared by Lazard in consultation with the DIP Agent.

The DIP Agent under the Debtors' debtor-in-possession credit facility (the "DIP Agent") is hereby deemed a Qualified Bidder and shall be entitled to credit bid all or a portion of its

5

claims against the Debtors as a Qualified Bid, without otherwise complying with the Bid Procedures, except to the extent stated herein, to the fullest extent permissible under section 363(k) of the Bankruptcy Code.  Except as provided herein or in the Bidding Procedures Order, any credit bid determined to be the Successful Bidder must include a sufficient cash component at Closing or otherwise leave the Debtors' estates with sufficient cash to satisfy the Minimum Cash Component.  To the extent the DIP Agent informs Allens that it wishes to submit a Bid, the DIP Agent consultation rights provided herein or in the Bidding Procedures Order shall be suspended until such time as the DIP Agent certifies to Allens in writing that it has withdrawn from participating in the Auction.

**Auction**

If one or more Qualified Bids (other than the Stalking Horse Purchase Agreement submitted by the Stalking Horse Purchaser) are received by the Bid Deadline, Allens will conduct an auction (the "Auction") to determine the highest or otherwise best Qualified Bid(s). This determination shall take into account any factors Allens, in consultation with the DIP Agent and the Committee, reasonably deem relevant to the value of the Qualified Bid(s) to the estate and may include, among other things, the following:  (a) the amount and nature of the consideration; (b) the number, type and nature of any changes to the Stalking Horse Purchase Agreement requested by each Bidder; (c) the extent to which such modifications are likely to delay closing of the sale of the Assets and the cost to Allens of such modifications or delay; (d) the total consideration to be received by the Debtors; (e) the likelihood of the Bidder's ability to close a transaction and the timing thereof; (f) the subset of Assets covered by such Bid(s); and (g) the net benefit to the estate, taking into account the Stalking Horse Purchaser's rights to the Break-Up Fee and Expense Reimbursement (collectively, the "Bid Assessment Criteria").  Only parties that Allens, in consultation with its legal and financial advisors, the DIP Agent and the Committee, determine are Qualified Bidders in accordance with these Bidding Procedures may participate in the Auction.

If no Qualified Bid (other than the Stalking Horse Purchase Agreement) is received by the Bid Deadline, (i) the Stalking Horse Purchaser shall be deemed to be the Successful Purchaser, and (ii) Allens shall cancel the Auction and proceed to seek approval of the Stalking Horse Purchase Agreement at the Sale Hearing.

**Auction Rules**

The Auction shall take place on **February 3, 2014 at 11:30 a.m. (prevailing Eastern Time)** at the offices of Greenberg Traurig at 200 Park Avenue, New York, NY 10166, or such other place and time as Allens shall notify all Qualified Bidders, including, without limitation, the Stalking Horse Purchaser, the Committee, the Debtors' equity holders, the prepetition and postpetition lenders to the Debtors, and other invitees.

Only the Debtors and their counsel and advisors, the Debtors' equity holders and their counsel and advisors, the Debtors' prepetition and postpetition lenders and their counsel and advisors, members of the Committee and its counsel and advisors, the Stalking Horse Purchaser and its counsel and advisors, and any other Qualified Bidder and its counsel and advisors, in each case, along with their representatives, shall attend the Auction in person, and only the Stalking

6

Horse Purchaser and such other Qualified Bidders will be entitled to make any Bids at the Auction.

Allens and its professionals shall direct and preside over the Auction. Subject to their compliance with these Bidding Procedures, Allens, in consultation with the DIP Agent and the Committee, may conduct the Auction in the manner it determines will result in the highest or otherwise best offer for the Assets. At the start of the Auction, Allens shall describe the terms of the highest or otherwise best Qualified Bid or Qualified Bids for the Assets received prior to the Bid Deadline (the "Auction Baseline Bid"). Allens shall advise each Qualified Bidder (including the Stalking Horse Purchaser), in writing, regarding which Qualified Bid shall be the Auction Baseline Bid as soon as reasonably practicable prior to the commencement of the Auction. In the event Allens determine in its discretion, in consultation with the DIP Agent and the Committee, to offer the Assets in lots, Allens, in consultation with the DIP Agent and the Committee, shall modify the Bidding Procedures to accommodate such determination in its discretion and shall notify each Qualified Bidder (including the Stalking Horse Purchaser) of such changes.

Each Qualified Bidder participating in the Auction must confirm on the record (a) at the commencement of the Auction and again at the conclusion of the Auction, that it has not engaged in any collusion with respect to the bidding or sale of any of the assets described herein, and (b) at the commencement of the Auction, that it has reviewed and understands and accepts the Bidding Procedures.

An "Overbid" is any bid made at the Auction subsequent to Allens' announcement of the respective Auction Baseline Bid. Subject to modification in Allens' discretion to accommodate the sale of the Assets in lots, to submit an Overbid for purposes of the Auction, a Bidder must comply with the following conditions:

(a)   Minimum Overbid Increments: Any Overbid for the Assets after and above the Auction Baseline Bid shall be made in increments valued at not less than $500,000 in cash and/or noncash consideration subject to adjustment in the discretion of Allens, in consultation with the DIP Agent and the Committee, to accommodate multiple bids[9]. For the avoidance of doubt, in the case of an Overbid by the Stalking Horse Purchaser, the Stalking Horse Purchaser shall be permitted to include for the purposes of comparison to any Overbid in connection with each round of bidding in the Auction, the full amount of the Expense Reimbursement and the Break-Up Fee.

(b)   Remaining Terms Are the Same as for Qualified Bids: Except as modified herein, an Overbid at the Auction must comply with the conditions for a Qualified Bid set forth above, provided, however, that the Bid Deadline shall not apply. Any

---

[9]   The Debtors will use good faith efforts to provide Bidders for lots with guidance on how the Overbid requirements, Break-Up Fee and Expense Reimbursement will be handled for lot Bids at least 5 days prior to the date of the Auction.

7

Overbid must remain open and binding on the Bidder until and unless Allens accepts a higher Overbid from such Bidder.

In the exercise of Allens' business judgment, and in consultation with the DIP Agent and the Committee, Allens may require that, to the extent not previously provided (which shall be determined by Allens), a Bidder submitting an Overbid at the Auction must submit, as part of its Overbid, written evidence (in the form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to Allens) demonstrating such Bidder's ability to close the Alternate Transaction proposed by such Overbid.

(c)     <u>Announcement of Overbids</u>:  Allens shall announce at the Auction the material terms of each Overbid and the basis for calculating the total consideration offered in each such Overbid.

(d)     <u>Consideration of Overbids</u>:  Bidders at the Auction shall have no more than thirty (30) minutes within which to respond to the previous Bid determined by Allens to be the highest or otherwise best Bid unless Allens determines to provide additional time in its reasonable discretion. Allens reserves the right, in its reasonable business judgment, to make one or more continuances of any Auction to, among other things: facilitate discussions between Allens and individual Bidders or between Bidders and shall make an announcement on the record at the Auction if the Debtors facilitate discussions between Bidders; allow individual Bidders to consider how they wish to proceed; and give Bidders the opportunity to provide Allens with such additional evidence as Allens in its reasonable business judgment may require, that the Bidder has sufficient internal resources, or has received sufficient debt and/or equity funding commitments, to consummate the proposed Alternate Transaction at the prevailing Overbid amount.

**Backup Bidder**

Notwithstanding anything in the Bidding Procedures to the contrary, if the Auction is conducted, the party with the next highest or otherwise best Qualified Bid at the Auction, as determined by Allens, in the exercise of its business judgment, in consultation with the DIP Agent and the Committee, will be designated as the potential backup bidder (each a "<u>Potential Backup Bidder</u>").  In the event that a Qualified Bidder is identified by Allens as a Potential Backup Bidder, such party shall be required to serve as the backup bidder if selected to do so (each a "<u>Backup Bidder</u>" and, collectively, the "<u>Backup Bidders</u>").

Each Backup Bidder shall be required to keep its initial Bid (or if the Backup Bidder submitted one or more Overbids at the Auction, its final Overbid) (the "<u>Backup Bid</u>") open and irrevocable until the earlier of 4:00 p.m. (prevailing Central Time) on the date that is thirty (30) days after the date of the Auction (the "<u>Outside Backup Date</u>") or the closing of the transaction with the Successful Bidder(s) (defined herein).  Following the Sale Hearing, if any Successful Bidder (defined herein) fails to consummate an approved transaction, because of a breach or failure to perform on the part of such Successful Bidder (defined herein) within twenty-five (25)

8

days following the entry of an order approving such transaction, Allens may designate one or more Backup Bidders to be the new Successful Bidders (defined herein), and Allens will be authorized, but not required, to consummate the transaction with each designated Backup Bidder without further order of the Court.  In such case, the defaulting Successful Bidder's deposit shall be forfeited to Allens, and Allens specifically reserves the right to seek all available damages from the defaulting Successful Bidder (defined herein).  The deposit of the Backup Bidder shall be held by Allens until the earlier of 72 hours after (i) the closing of the transaction with the Successful Bidder (defined herein) for the assets bid upon by such Backup Bidder and (ii) the Outside Backup Date.  In the event that the Stalking Horse Purchaser is not the Successful Bidder(s) but otherwise has the next highest or otherwise best Qualified Bid at the Auction, the Stalking Horse Purchaser shall be the Backup Bidder.

**Additional Procedures**

Allens, in the exercise of its fiduciary obligations, and in consultation with the DIP Agent and the Committee, may announce at the Auction additional procedural rules that Allens determines after consultation with the DIP Agent and the Committee, will promote the goals of the Auction and which are reasonable under the circumstances for conducting the Auction so long as such rules are not inconsistent in any material respect with these Bidding Procedures or the Stalking Horse Purchase Agreement.

The Administrative Agent under the Second Lien Note Purchase Agreement (the "Second Lien Agent") shall not be entitled to receive any information not provided to other Bidders unless and until the Second Lien Agent has certified to Allens in writing that it has withdrawn from participation in the Auction.  In the event the Second Lien Agent withdraws from participating in the Auction, the Second Lien Agent shall receive the consultation rights provided to the DIP Agent and the Committee herein and shall receive the information provided to the DIP Agent and the Committee in connection therewith  (including all material information related to the sale process provided to the DIP Agent and the Committee prior to the Second Lien Agent declining to participate in or withdrawing from the Auction).

**Consent to Jurisdiction as Condition to Bidding**

The Stalking Horse Purchaser and all other Qualified Bidders at the Auction shall be deemed to have consented to the core jurisdiction of the Court and waived any right to a jury trial in connection with any disputes relating to these Bidding Procedures, the Stalking Horse Purchase Agreement, any Modified Asset Purchase Agreement, the Auction or the construction and enforcement of any Alternate Transaction documents.  The Stalking Horse Purchaser shall be deemed to be an interested party in any proceeding related to the foregoing matters.

**Closing the Auction**

The Auction shall continue until Allens, in consultation with the DIP Agent and the Committee, determines the Bid(s) (including credit bids) which in its reasonable business judgment, after consultation with its financial and legal advisors, the DIP Agent and the Committee, constitutes the overall highest or otherwise best Qualified Bid at the Auction for some or all of the Assets (each such Bid a "Successful Bid," and each such Bidder submitting

such Successful Bid, a "Successful Bidder"). In making this decision, Allens, in consultation with its financial and legal advisors, shall consider the Bid Assessment Criteria.

The Auction shall close upon the execution of the Stalking Horse Purchase Agreement or a Modified Asset Purchase Agreement Asset memorializing the terms of its respective Successful Bid.

Allens shall not consider any Bids submitted after the Auction is closed.

Notwithstanding anything to the contrary provided herein, the Debtors shall not be deemed to have accepted any Bid at the Auction unless and until such Bid is approved by the Court.

**Bid Protections**

Pursuant to the Bidding Procedures Order, the Stalking Horse Purchaser is entitled to: (a) the Break-Up Fee in the amount of $4,500,000 or, if the Successful Bid is a Bid by the Second Lien Secured Parties $3,000,000 and (b) the Expense Reimbursement in an amount equal to the lesser of (i) the aggregate documented, actual, reasonable out-of-pocket fees and expenses (including, without limitation, fees and expenses of legal counsel, accounting fees and expenses, HSR Act filing fees, escrow and other fees and expenses) incurred by Buyer in connection with this Agreement (including, without limitation, the drafting, negotiation and implementation of this Agreement), the transactions contemplated hereby and matters related hereto and thereto (including, without limitation, relating to business, legal and accounting due diligence and all matters in connection with the Bankruptcy Case), in each case whether incurred before or after the Petition Date, and (ii) $1,000,000.

Pursuant to the Bidding Procedures Order, except for the Stalking Horse Purchaser no other party submitting an offer or Bid for the Assets or a Qualified Bid for the Assets shall be entitled to any expense reimbursement, break-up fee, termination or similar fee or payment.

**Lazard Fees**

As part of the cash purchase price for the Assets purchased, the Stalking Horse Purchaser or another Successful Bidder(s) shall be authorized to and shall pay directly to Lazard the Lazard Fees as provided in the Bidding Procedures Order.

**Sale Hearing**

The Debtors intend to file a motion for an order (a) authorizing and approving the Sale to the Successful Bidder(s) or Back-Up Bidder(s), as applicable, free and clear of all liens, claims, encumbrances and interests, (b) authorizing and approving the assumption and assignment of certain executory contracts and unexpired leases, and (c) granting related relief (the "**Sale Motion**"). Once filed, copies of the Sale Motion may be accessed on: (i) the main Allens case docket on the Court's electronic case filing (ECF) website, http://ecf.arwb.uscourts.gov; and (ii) the case management website maintained by the Debtors' claims and noticing agent, Epiq Bankruptcy Solutions, LLC, located at http://dm.epiq11.com/AVL/Project.

*NY 243463528v22*

The Debtors have scheduled a hearing (the "Sale Hearing") on **February 10, 2014 at 9:00 a.m. (prevailing Central time)**, to seek approval of the transactions contemplated by the Stalking Horse Purchase Agreement and/or any Successful Bid or Successful Bids.  Objections, if any, to the sale of all or any portion of the Assets to any Successful Bidder, the transactions contemplated by the Stalking Horse Purchase Agreement, and/or the relief requested in the Sale Motion, other than the relief approved in the Bidding Procedures Order, must be in writing and filed with the Court **on or before 4:00 p.m. on January 27, 2014** and be served such that they are actually received by (i) counsel to Allens, Greenberg Traurig, LLP, 200 Park Avenue, New York, New York 10166, Attn: Maria J. DiConza and Matthew Hinker; (ii) local counsel to Allens, Mitchell, Williams, Selig, Gates & Woodyard, P.L.L.C., 425 West Capitol Avenue, Suite 1800, Little Rock, Arkansas 72201, Attn: Stan Smith; (iii) counsel to the Stalking Horse Purchaser, Jaeckle, Fleischmann & Mugel, LLP, 200 Delaware Ave., Buffalo, NY 14202, Attn: Tim C. Loftis; (iv) local counsel to the Stalking Horse Purchaser, Wright, Lindsey & Jennings, LLP, 200 West Capital Avenue, Suite 2300, Little Rock, Arkansas 72201, Attn: Charles T. Coleman; (v) counsel to the Committee, Cooley LLP, 1114 Avenue of the Americas, New York, NY 10036, Attn: Cathy Hershcopf and Jeffery Cohen; (vi) local counsel to the Committee, Eichenbaum Law Firm, 124 W. Capital Ave., Ste. 1900, Little Rock, AR 72201-3736, Attn: Martha Jett McAlister; (vii) counsel to the Debtors' post-petition lenders, Jacoway Law Firm, Ltd., 223 S. East Avenue, Fayetteville, Arkansas 72701, Attn: Jill Jacoway, Esq. and Jones Day, 77 West Wacker Drive, Chicago, Illinois 60601, Attn: Brad Erens, Esq. and Robert Krebs, Esq.; (viii) counsel to the Second Lien Agent, Proskauer Rose LLP, Eleven Times Square, New York, New York 10036, Attn: Scott K. Rutsky and Jared D. Zajac and local counsel to the Second Lien Agent, Friday, Eldredge & Clark LLP, 3425 North Futrall Drive, Suite 103, Fayetteville, Arkansas 72703 Attn: Jason N. Bramlett; and (ix) the Office of the United States Trustee (Region 13), 200 West Capitol Avenue, Suite 1200, Little Rock, Arkansas 72201, Attn: Charles Tucker.  The Sale hearing may be adjourned from time to time without further notice to parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing or a notice filed with the Bankruptcy Court, as applicable.  Notwithstanding the foregoing, objections, if any relating solely to the conduct of the Auction or the selection of the Successful Bid(s) may be raised at the Hearing.  All objections must state with specificity the nature of such objection and will be heard by the Court at the Sale Hearing.

**Return of Good Faith Deposits**

The Good Faith Deposits of all Qualified Bidders shall be held in one or more non-interest-bearing escrow accounts by Allens, but shall not become property of Allens' estate absent further order of the Court.  The Good Faith Deposit of any Qualified Bidder that is neither a Successful Bidder nor a Backup Bidder shall be returned to such Qualified Bidder not later than three (3) business days after the Sale Hearing.  The Good Faith Deposit of each Backup Bidder(s), if any, shall be returned to the respective Backup Bidder on the date that is the earlier of 72 hours after (a) the closing of the transaction with the Successful Bidder(s) for the assets bid upon by such Backup Bidder and (b) the Outside Backup Date.  Upon the return of the Good Faith Deposits, their respective owners shall receive any and all interest that will have accrued thereon.  If a Successful Bidder(s) timely closes its winning transaction, its Good Faith Deposit shall be credited towards its purchase price.

11

**Reservation of Rights**

Allens further reserve the right as it may reasonably determine to be in the best interest of its estate, in consultation with the DIP Agent and the Committee, to:  (a) determine which bidders are Qualified Bidders; (b) determine which Bids are Qualified Bids; (c) determine which Qualified Bid is the otherwise best proposal and which is the next highest or otherwise best proposal; (d) reject any Bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code or (iii) contrary to the best interests of Allens and its estate; (e) waive terms and conditions set forth herein with respect to all potential bidders; (f) impose additional terms and conditions with respect to all potential bidders; (g) extend the deadlines set forth herein; (h) continue or cancel the Auction and/or Sale Hearing in open court without further notice; and (i) modify the Bidding Procedures as they may determine to be in the best interests of its estate or to withdraw the Motion or the Sale Motion at any time with or without prejudice.  Notwithstanding the forgoing, Allens (i) will exercise its termination right under 11.1(c)(iii) of the Stalking Horse Purchase Agreement in the event that Estimated Cash Purchase Price less the amount of the Purchase Price Escrow provided for thereunder is less than the Minimum Cash Component, exclusive of the Break-Up Fee and Expense Reimbursement, and (ii) will not accept a Qualified Bid(s) for an Alternate Transaction that provides for less than the Minimum Cash Component, in each case unless otherwise consented to by the DIP Agent.

Notwithstanding anything to the contrary herein or set forth in the Bidding Procedures, the Bidding Procedures Order, the Stalking Horse Purchase Agreement or the Motion, the Bidding Procedures Order, the Bidding Procedures and Allens' obligations under the Stalking Horse Purchase Agreement are subject in all respects, including, without limitation, any right, authorization or discretion herein or therein, to the requirements imposed on the Debtors under the DIP Order, the DIP Credit Agreement and the other DIP Loan Documents including, without limitation, the Budget.  Notwithstanding the foregoing, the Stalking Horse Purchaser shall be entitled to receive the Bid Protections provided for herein if such Bid Protections are earned and payable pursuant to the terms of the Stalking Horse Purchase Agreement and the Bid Procedures Order.

**Insider Protocol**

In the event that any insiders of the Debtors (as defined in the Bankruptcy Code) become a Bidder, the Debtors and such insiders shall consult with the DIP Agent and the Committee as to the need for any modifications to the Bidding Procedures necessary with respect to such insider Bid.  In the event that an insider Bid becomes a Qualified Bid, the Debtors shall provide notice to all other Bidders within two (2) business days after such Bid becomes a Qualified Bid.

12

*NY 243463528v22*

## **Exhibit B to Bidding Procedures Order**

Notice of Auction and Sale Hearing

*See Attached*

*NY 243463528v22*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF ARKANSAS**
**Fayetteville Division**

| | |
|---|---|
| In re: | Chapter 11 |
| ALLENS, INC. and ALL VEG, LLC, [1] | Case No. 5:13-bk-73597 (BTB) and 5:13-bk-73598 (BTB) |
| Debtors. | Jointly Administered Under Case No. 5:13-bk-73597 (BTB) |

**NOTICE OF BID PROCEDURES AND SALE HEARING IN CONNECTION WITH**
**THE SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS**

NOTICE IS HEREBY GIVEN, as follows:

1. On January ___, 2014, the United States Bankruptcy Court for the Western District of Arkansas (the "**Bankruptcy Court**") entered an Order [Docket No. ___] (the "**Bidding Procedures Order**") on the motion (the "**Motion**") of the above-captioned debtors and debtors-in-possession (the "**Debtors**") (i) authorizing and approving the bidding procedures (as revised, the "**Bidding Procedures**"), (ii) authorizing Debtor Allens, Inc. ("**Allens**") to designate Seneca Foods Corporation (the "**Stalking Horse Purchaser**") as the stalking horse purchaser, enter into that certain Asset Purchase Agreement, dated as of December 16, 2013 (as amended or modified including pursuant to the Bidding Procedures Order, the "**Stalking Horse Purchase Agreement**") between Allens and the Stalking Horse Purchaser for substantially all of Allens' assets as identified therein (the "**Acquired Assets**") and providing bid protections; (iii) approving the notice procedures establishing the dates, times, and locations of the deadline to bid substantially all of Allens' assets including the Acquired Assets (collectively, the "**Assets**"), the auction of the Assets (the "**Auction**"), (iv) setting a date for the sale hearing for the Assets (the "**Sale Hearing**"); (v) approving the notice of Allens' intent to assume, assign and/or transfer to the Successful Bidder(s) or Backup Bidder(s) (as such terms are defined in the Bidding Procedures), the executory contracts and unexpired leases (each a "**Contract or Lease**" and, collectively, the "**Contracts and Leases**"), and the corresponding cure amounts (the "**Cure Amounts**") required to be paid in connection with such assumption, assignment and/or transfer; and (vi) granting related relief. Copies of the Bidding Procedures Order may be accessed on: (i) the main Allens case docket on the Court's electronic case filing (ECF) website, http://ecf.arwb.uscourts.gov; and (ii) the case management website maintained by the Debtors' claims and noticing agent, Epiq Bankruptcy Solutions, LLC, located at http://dm.epiq11.com/AVL/Project.

2. All interested parties are invited to submit a bid (a "**Bid**") and to make offers to purchase the Assets in accordance with the terms of the Bidding Procedures and the Bidding Procedures Order. The deadline to submit a bid is **January 27, 2014 at 4:00 p.m. (prevailing Central Time)** (the "**Bid Deadline**"). The following parties must receive a Bid in writing, on or before the Bid

---

[1] The Debtors, along with the last four digits of each Debtors' tax identification number, are: All Veg, LLC (9250) and Allens, Inc. (5020). The Debtors' business address is 305 E. Main Street, Siloam Springs, Arkansas 72761.

2

NY 243463528v22

Deadline or such later date as may be agreed to by Allens: (i) Allens, Inc., 305 E. Main, Siloam Springs, Arkansas 72761, Attn: Jonathan C. Hickman; (ii) counsel to the Debtors, Greenberg Traurig, LLP, 200 Park Avenue, New York, New York 10166, Attn: Maria J. DiConza and Matthew Hinker; (iii) local counsel to the Debtors, Mitchell, Williams, Selig, Gates & Woodyard, P.L.L.C., 425 West Capitol Avenue, Suite 1800, Little Rock, Arkansas 72201, Attn: Stan Smith and Lance Miller; (iv) Allens' investment banker, Lazard Middle Market, 600 Fifth Avenue, 8th Floor, New York, New York 10020, Attn: Andrew Torgove; and (iv) counsel to the DIP Agent, Jones Day, 77 West Wacker Drive, Chicago, Illinois 60601, Attn: Brad Erens, Esq. and Robert Krebs, Esq. A Bid received before the Bid Deadline that meets the requirements of the Bidding Procedures and the Bidding Procedures Order or is otherwise qualified by Allens shall constitute a "**Qualified Bid**" for the Acquired Assets, and such a bidder shall constitute a "**Qualified Bidder**."

3. Pursuant to the Bidding Procedures Order, in the event that one or more Qualified Bids (other than the Stalking Horse Purchase Agreement submitted by the Stalking Horse Purchaser) for some or all of the Assets are received in conformance with the Bidding Procedures, Allens will conduct an auction (the "**Auction**") to determine the highest and otherwise best bid for such Assets. Only parties that Allens, in consultation with its legal and financial advisors, the DIP Agent under the Debtors' debtor-in-possession credit facility (the "**DIP Agent**") and the Official Committee of Unsecured Creditors appointed in these cases (the "**Committee**"), determine are Qualified Bidders in accordance with these Bidding Procedures may participate in the Auction. If no Qualified Bid (other than the Stalking Horse Purchase Agreement) is received by the Bid Deadline, (i) the Stalking Horse Purchaser shall be deemed to be the Successful Purchaser, and (ii) Allens shall cancel the Auction and proceed to seek approval of the Stalking Horse Purchase Agreement at the Sale Hearing.

4. The Auction will take place **on February 3, 2014 at 11:30 a.m. (prevailing Eastern Time)**, at the offices of Greenberg Traurig at 200 Park Avenue, New York, NY 10166, or such other place and time as Allens shall notify all Qualified Bidders, the Committee, the Debtors' equity holders, the prepetition and postpetition secured lenders to the Debtors, and other invitees.

5. The Auction will continue until Allens determines the Bid(s), which in their reasonable business judgment, after consultation with their financial and legal advisors, the DIP Agent and the Committee, constitute the overall highest or otherwise best Qualified Bid at the Auction for some or all of the Assets (each such Bid a "**Successful Bid**," and each such bidder submitting such Successful Bid, a "**Successful Bidder**"). The Auction shall close upon the execution of the Stalking Horse Purchase Agreement or a Modified Asset Purchase Agreement memorializing the terms of its respective Successful Bid(s). Allens shall not consider any Bid submitted after the Auction is closed.

6. Notwithstanding anything in the Bidding Procedures or the Bidding Procedures Order to the contrary, if the Auction is conducted, the party with the next highest or otherwise best Qualified Bid at the Auction, as determined by Allens, in the exercise of its business judgment, in consultation with the DIP Agent and the Committee, will be designated as the potential backup bidder (each a "**Potential Backup Bidder**"). In the event that a Qualified Bidder is identified by Allens as a Potential Backup Bidder, such party shall be required to serve as the backup bidder if selected to do so (each a "**Backup Bidder**" and, collectively, the "**Backup Bidders**"). Each Backup Bidder shall be required to keep its initial Bid open and irrevocable until the earlier of 4:00 p.m. (prevailing Central Time) on the date that is the earlier of thirty (30) days after the date of the Auction (the "**Outside Backup Date**") or the closing of the transaction with the Successful Bidder(s). Following the Sale Hearing, if any Successful Bidder fails to consummate an approved transaction, because of a breach or failure to perform on the part of such Successful Bidder, Allens may within twenty-five (25) days following the entry of an order approving such

3

transaction designate one or more Backup Bidders to be the new Successful Bidders, and Allens will be authorized, but not required, to consummate the transaction with each designated Backup Bidder without further order of the Court.

7. Allens, in the exercise of its fiduciary obligations, and in consultation with the DIP Agent and the Committee, may announce at the Auction additional procedural rules that are reasonable under the circumstances for conducting the Auction so long as such rules are not inconsistent in any material respect with the Bidding Procedures or the Stalking Horse Purchase Agreement.

8. The Stalking Horse Purchaser and all other Qualified Bidders at the Auction shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court and waived any right to a jury trial in connection with any disputes relating to the Bidding Procedures, the Stalking Horse Purchase Agreement, the Auction, or the construction of any executed transaction documents related thereto.  The Stalking Horse Purchaser shall be deemed to be an interested party in any proceeding related to the foregoing matters.

9. The Debtors have filed a motion for an order (a) authorizing and approving the Sale of substantially all of the assets of Debtor Allens, Inc. free and clear of all liens, claims, encumbrances, and interests, (b) authorizing and approving the Asset Purchase Agreement, (c) approving assumption and assignment of certain executory contracts and unexpired leases, and (d) granting related relief [Docket No. 350] (the "**Sale Motion**").  Copies of the Sale Motion may be accessed on: (i) the main Allens case docket on the Court's electronic case filing (ECF) website, http://ecf.arwb.uscourts.gov; and (ii) the case management website maintained by the Debtors' claims and noticing agent, Epiq Bankruptcy Solutions, LLC, located at http://dm.epiq11.com/AVL/Project.

10. The Debtors have scheduled the Sale Hearing on **February 10, 2014 at 9:00 a.m. (prevailing Central time)**, to seek approval of the Sale Motion and transactions contemplated by the Stalking Horse Purchase Agreement and/or any Successful Bid or Successful Bids.  Objections, if any, to the sale of all or any portion of the Assets to any Successful Bidder, the transactions contemplated by the Stalking Horse Purchase Agreement, and/or the relief requested in the Sale Motion must be in writing and filed with the Court **on or before 4:00 p.m. January 27, 2014** and be served such that they are actually received by (i) counsel to the Debtors, Greenberg Traurig, LLP, 200 Park Avenue, New York, New York 10166, Attn: Maria J. DiConza and Matthew Hinker; (ii) local counsel to the Debtors, Mitchell, Williams, Selig, Gates & Woodyard, P.L.L.C., 425 West Capitol Avenue, Suite 1800, Little Rock, Arkansas 72201, Attn: Stan Smith; (iii) counsel to the Stalking Horse Purchaser, Jaeckle, Fleischmann & Mugel, LLP, 200 Delaware Ave., Buffalo, NY 14202, Attn: Tim C. Loftis; (iv) local counsel to the Stalking Horse Purchaser, Wright, Lindsey & Jennings, LLP, 200 West Capital Avenue, Suite 2300, Little Rock, Arkansas 72201, Attn: Charles T. Coleman; (v) counsel to the Committee, Cooley LLP, 1114 Avenue of the Americas, New York, NY 10036, Attn: Cathy Hershcopf and Jeffrey Cohen; (vi) local counsel to the Committee, Eichenbaum Law Firm, 124 W. Capital Ave., Ste. 1900, Little Rock, AR 72201-3736, Attn: Martha Jett McAlister; (vii) counsel to the Debtors' post-petition lenders, Jacoway Law Firm, Ltd., 223 S. East Avenue, Fayetteville, Arkansas 72701, Attn: Jill Jacoway, Esq. and Jones Day, 77 West Wacker Drive, Chicago, Illinois 60601, Attn: Brad Erens, Esq. and Robert Krebs, Esq., (viii) counsel to the Second Lien Agent, Proskauer Rose LLP, Eleven Times Square, New York, New York 10036, Attn: Scott K. Rutsky and Jared D. Zajac, (ix) local counsel to the Second Lien Agent, Friday, Eldredge & Clark LLP, 3425 North Futrall Drive, Suite, 103, Fayetteville, Arkansas 72703 Attn: Jason N. Bramlett; and (x) the Office of the United States Trustee (Region 13), 200 West Capitol Avenue, Suite 1200, Little Rock, Arkansas 72201, Attn: Charles Tucker.  The Sale hearing may be adjourned from time to time without further notice to parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing or a notice filed with the Bankruptcy Court, as applicable.

4

*NY 243463528v22*

Notwithstanding the foregoing, objections, if any relating solely to the conduction of the Auction or the selection of the Successful Bid(s) may be raised at the Hearing. All objections must state with specificity the nature of such objection and will be heard by the Court at the Sale Hearing.

11. Requests for any other information concerning the Bidding Procedures or the Auction should be directed by written request to the undersigned Debtors' counsel.

[Remainder of Page Left Blank Intentionally]

Dated: _____

| | |
|---|---|
| MITCHELL, WILLIAMS, SELIG, GATES & WOODYARD, P.L.L.C. | GREENBERG TRAURIG, LLP |

MITCHELL, WILLIAMS, SELIG,
GATES & WOODYARD, P.L.L.C.
Stan D. Smith (Ark. Bar No. 90117)
Lance R. Miller (Ark. Bar No. 85109)
Chris A. McNulty (Ark. Bar No. 08198)
425 West Capitol Avenue, Suite 1800
Little Rock, Arkansas 72201-3525
Telephone: (501) 688-8800
Facsimile: (501) 688-8807

GREENBERG TRAURIG, LLP
Nancy A. Mitchell (*pro hac vice*)
Maria J. DiConza (*pro hac vice*)
Matthew L. Hinker (*pro hac vice*)
200 Park Avenue
New York, New York 10166
Telephone: (212) 801-9200
Facsimile: (212) 801-6400

*Counsel for the Debtors and Debtors in Possession*

5

**<u>Exhibit C to Bidding Procedures Order</u>**

**Notice of Assumption and Assignment**

*See Attached*

*NY 243463528v22*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
Fayetteville Division**

| | |
|---|---|
| In re: | Chapter 11 |
| ALLENS, INC. and ALL VEG, LLC, [1] | Case No. 5:13-bk-73597 (BTB) and 5:13-bk-73598 (BTB) |
| Debtors. | Jointly Administered Under Case No. 5:13-bk-73597 (BTB) |

**NOTICE OF (I) POTENTIAL ASSUMPTION OF EXECUTORY
CONTRACTS AND UNEXPIRED LEASES, (II) FIXING
OF CURE AMOUNTS, AND (III) DEADLINE TO OBJECT THERETO**

PLEASE TAKE NOTICE that on January __, 2014, the United States Bankruptcy Court for the Western District of Arkansas (the "**Bankruptcy Court**") entered an Order [Docket No. ___] (the "**Bidding Procedures Order**") on the motion (the **"Motion"**) of the above-captioned debtors and debtors-in-possession (the "**Debtors**") (i) authorizing and approving the bidding procedures (as revised, the "**Bidding Procedures**"), (ii) authorizing Debtor Allens, Inc. ("**Allens**") to designate Seneca Foods Corporation (the "**Stalking Horse Purchaser**") as the stalking horse purchaser, enter into that certain Asset Purchase Agreement, dated as of December 16, 2013 (as amended or modified including by the Bidding Procedures Order, the "**Stalking Horse Purchase Agreement**") between Allens and the Stalking Horse Purchaser for substantially all of Allens' assets as identified therein (the "**Acquired Assets**")[2] and providing bid protections; (iii) approving the notice procedures establishing the dates, times, and locations of the deadline to bid substantially all of Allens' assets including the Acquired Assets (collectively, the "**Assets**"), the auction of the Assets (the "**Auction**"), (iv) setting a date for the sale hearing for the Assets (the "**Sale Hearing**"); (v) approving the notice of Allens' intent to assume, assign and/or transfer to the Successful Bidder(s) or Backup Bidder(s) (as such terms are defined in the Bidding Procedures), the executory contracts and unexpired leases (each a "**Contract or Lease**" and, collectively, the "**Contracts and Leases**"), and the corresponding cure amounts (the "**Cure Amounts**") required to be paid in connection with such assumption, assignment and/or transfer; and (vi) granting related relief.

PLEASE TAKE FURTHER NOTICE that the Debtors have filed a motion for an order (a) authorizing and approving the Sale of substantially all of the assets of Debtor Allens, Inc. free and clear of all liens, claims, encumbrances, and interests, (b) authorizing and approving the Asset Purchase Agreement, (c) approving assumption and assignment of certain executory contracts and unexpired leases, and (d) granting related relief [Docket No. 350] (the "**Sale Motion**"). Copies of the Sale Motion may be accessed on: (i) the main Allens case docket on the Court's electronic case filing (ECF) website, http://ecf.arwb.uscourts.gov; and (ii) the case management website maintained by the Debtors' claims and noticing agent, Epiq Bankruptcy Solutions, LLC, located at http://dm.epiq11.com/AVL/Project.

---

[1] The Debtors, along with the last four digits of each Debtors' tax identification number, are: All Veg, LLC (9250) and Allens, Inc. (5020). The Debtors' business address is 305 E. Main Street, Siloam Springs, Arkansas 72761.

[2] The Acquired Assets exclude certain assets of Allens' frozen business and the other assets as set forth in the Stalking Horse Purchase Agreement.

2

*NY 243463528v22*

**PLEASE TAKE FURTHER NOTICE** that the Sale Hearing to seek approval of the Sale Motion and transactions contemplated by the Stalking Horse Purchase Agreement and/or any Successful Bid or Successful Bids shall be held before the Bankruptcy Court on [February 10], 2014 at 9:00 a.m. (prevailing Central Time), or as soon thereafter as counsel and interested parties may be heard.

**PLEASE TAKE FURTHER NOTICE** that in connection with the sale, the Debtors may seek to assume, assign and/or transfer to the Successful Bidder or Backup Bidder certain Contracts and Leases. Bidders must provide documentation sufficient to provide adequate assurance of future performance ("**Adequate Assurance**") for the benefit of the non-debtor parties to Contracts and Leases which the bidder wishes to have assumed and assigned.  Pursuant to the Bidding Procedures Order, attached hereto as Exhibit A, the Debtors have indicated each potentially assumable and assignable Contract or Lease along with the corresponding Cure Amounts, calculated as of _____, 2014, that the Debtors believe must be paid to compensate the non-Debtor parties for any actual and pecuniary losses arising from any defaults under the Contract or Lease in connection with the potential assumption, assignment and/or transfer of such Contract or Lease.

**PLEASE TAKE FURTHER NOTICE** that if the Debtors identify additional Contracts or Leases that might be assumed by Allens and assigned and/or transferred to the Successful Bidder that are not included in Exhibit A attached hereto, the Debtors shall promptly send a supplemental notice (a "**Supplemental Notice of Assumption and Assignment**") to the applicable counterparties to such additional Contracts or Leases.

**PLEASE TAKE FURTHER NOTICE** that objections to (a) the scheduled Cure Amounts, whether or not such party previously has filed a proof of claim with respect to amounts due under the applicable Contract or Lease, and/or (b) the proposed assumption, assignment and/or transfer of such Contract or Lease, including, without limitation, any objections relating to the adequate assurance of future performance by the Stalking Horse Purchaser (each, a "**Cure Amount/Assignment Objection**"), must be filed by the later of (i) **January 27, 2014 at 4:00 p.m. (prevailing Central Time)** or (ii) **in connection with a Supplemental Notice of Assumption and Assignment, 4:00 p.m. (Prevailing Central Time) on the date that is ten (10) days after service of the relevant Supplemental Notice of Assumption and Assignment** (such date, the "**Cure/Assignment Objection Deadline**") and served so as to be received no later than the Cure/Assignment Objection Deadline on the following parties: (i) counsel to the Debtors, Greenberg Traurig, LLP, 200 Park Avenue, New York, New York 10166, Attn: Maria J. DiConza and Matthew Hinker; (ii) local counsel to the Debtors, Mitchell, Williams, Selig, Gates & Woodyard, P.L.L.C., 425 West Capitol Avenue, Suite 1800, Little Rock, Arkansas 72201, Attn: Stan Smith and Lance Miller; (iii) counsel to the Stalking Horse Purchaser, Jaeckle, Fleischmann & Mugel, LLP, 200 Delaware Ave., Buffalo, NY 14202, Attn: Tim C. Loftis; (iv) local counsel to the Stalking Horse Purchaser, Wright, Lindsey & Jennings, LLP, 200 West Capital Avenue, Suite 2300, Little Rock, Arkansas 72201, Attn: Charles T. Coleman; (v) counsel to the Committee, Cooley LLP, 1114 Avenue of the Americas, New York, NY 10036, Attn: Cathy Hershcopf and Jeffrey Cohen; (vi) local counsel to the Committee, Eichenbaum Law Firm, 124 W. Capital Ave., Ste. 1900, Little Rock, AR 72201-3736, Attn: Martha Jett McAlister; (vii) counsel to the Debtors' post-petition lenders, Jacoway Law Firm, Ltd., 223 S. East Avenue, Fayetteville, Arkansas 72701, Attn: Jill Jacoway, Esq. and Jones Day, 77 West Wacker Drive, Chicago, Illinois 60601, Attn: Brad Erens, Esq. and Robert Krebs, Esq.; (viii) counsel to the Second Lien Agent, Proskauer Rose LLP, Eleven Times Square, New York, New York 10036, Attn: Scott K. Rutsky and Jared D. Zajac and local counsel to the Second Lien Agent, Friday, Eldredge & Clark LLP, 3425 North Futrall Drive, Suite 103, Fayetteville, Arkansas 72703 Attn: Jason N. Bramlett;  and (ix) the Office of the United States Trustee (Region 13), 200 West Capitol Avenue, Suite 1200, Little Rock, Arkansas 72201, Attn: Charles Tucker.

3

**PLEASE TAKE FURTHER NOTICE** that in the event no objection is timely filed with respect to a Contract or Lease, the non-debtor counterparty to such Contract or Lease (i) will be forever barred and estopped from objecting to the Cure Amount and Allens and the Successful Bidder(s) shall be entitled to rely solely upon the Cure Amount, and (ii) if the Contract or Lease is identified as an Asset to be acquired by the Successful Bidder(s) and/or Backup Bidder(s), will be deemed to have consented to the assumption, assignment and/or transfer of such Contract or Lease and will be forever barred and estopped from asserting or claiming against the Debtors, the Successful Bidder(s) and/or the Backup Bidder(s), or any other assignee of the relevant Contract or Lease that any additional amounts are due or defaults exist, or conditions to assumption, assignment and/or transfer must be satisfied, under such Contract or Lease. Each non-debtor party shall retain the right to object, at the Sale Hearing (or such later date as may be agreed to by the Debtors and the Successful Bidder(s)) to the assumption, assignment or transfer of its Contract or Lease based solely on the issue of whether the Successful Bidder(s) or Backup Bidder(s) (other than the Stalking Horse Purchaser) can provide adequate assurance of future performance.

**PLEASE TAKE FURTHER NOTICE** that if an objection challenges a Cure Amount (or asserts any other objection to assumption, assignment and/or transfer of a Contract or Lease), the objection must set forth the cure amount being claimed by the objecting party with appropriate documentation in support thereof, and specify (with appropriate supporting documentation) the factual and legal basis for any other objection to assumption, assignment and/or transfer of such Contract or Lease. Upon receipt of a timely filed Cure Amount/Assignment Objection, Allens in consultation with the Stalking Horse Purchaser (or, if applicable, the Successful Bidder(s) if other than the Stalking Horse Purchaser), is authorized, but not directed, to resolve any Cure Amount/Assignment Objection by mutual agreement with the objecting counterparty to any Contract or Lease without further order of the Court. In the event that Allens and any objecting party are unable to resolve consensually any timely filed Cure Amount/Assignment Objection, the Court will resolve any such Cure Amount/Assignment Objection at the Sale Hearing (or such other date and time as is fixed by the Court).

**PLEASE TAKE FURTHER NOTICE** that notwithstanding anything to the contrary contained in the Bidding Procedures Order, the Debtors, the Stalking Horse Purchaser or, if applicable, any Successful Bidder(s) or Backup Bidder(s), as the case may be, may determine to add or exclude any Contract or Lease from the list of Assets no later than (i) five (5) day(s) prior to the Sale Hearing, or, (ii) if the Court determines at any hearing on a Cure Amount/Assignment Objection that the applicable Cure Amount for such contract is greater than the Cure Amount proposed by the Debtors, no later than five (5) days following the date such determination is reflected in an order entered by the Bankruptcy Court. The non-debtor party or parties to any such excluded Contract or Lease will be notified of such exclusion by written notice mailed within two (2) business days of such determination.

**PLEASE TAKE FURTHER NOTICE** that the inclusion of a contract or lease on Exhibit A does not require or guarantee that such Contract or Lease will be assumed and assigned, and all rights of Allens and the Stalking Horse Purchaser (or any Successful Bidder(s)) with respect to such Contracts and Leases are reserved.

Dated: _____

MITCHELL, WILLIAMS, SELIG,                      GREENBERG TRAURIG, LLP
GATES & WOODYARD, P.L.L.C.                       Nancy A. Mitchell (*pro hac vice*)
Stan D. Smith (Ark. Bar No. 90117)               Maria J. DiConza (*pro hac vice*)
Lance R. Miller (Ark. Bar No. 85109)             Matthew L. Hinker (*pro hac vice*)
Chris A. McNulty (Ark. Bar No. 08198)            200 Park Avenue
425 West Capitol Avenue, Suite 1800              New York, New York 10166
Little Rock, Arkansas 72201-3525                 Telephone:  (212) 801-9200

4

5

Telephone: (501) 688-8800                    Facsimile:  (212) 801-6400
Facsimile: (501) 688-8807

*Counsel for the Debtors and Debtors in Possession*

*NY 243463528v22*