**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
Fayetteville Division**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| VEG LIQUIDATION, INC. and ALL VEG, LLC, | ) | Case No. 5:13-bk-73597 (BTB) and |
| | ) | 5:13-bk-73598 (BTB) |
| | ) | |
| Debtors. | ) | Jointly Administered Under |
| | ) | Case No. 5:13-bk-73597 (BTB) |

**POST TRIAL BRIEF IN SUPPORT OF DEBTORS' OBJECTION TO THE PACA
TRUST CLAIM OF CENTRAL PRODUCE**

Veg Liquidation, Inc. f/k/a Allens, Inc. ("*VLI*") and All Veg, LLC (hereinafter collectively the "*Debtors*"), by and through their undersigned counsel, hereby submit the following memorandum of points and authorities in: (i) support of the Debtors' Omnibus Objection to PACA Claims (the "*Objection*") [D.E. #417]; (ii) reply to Central Produce Sales, Inc.'s response in opposition to the Objection [D.E. #544], and; (iii) support of additional objections identified through the parties' completion of the discovery process.

## INTRODUCTION

On May 19 & 20, 2014, the Court held an evidentiary hearing on the Objection relating to the PACA trust claim of Central Produce Sales, Inc. ("*Central Produce*") [Claim No. 53]. At trial the Debtors presented evidence on two objections. First, the Debtors proved through documentary evidence and witness testimony that Central Produce failed to properly preserve its PACA trust rights because it did not include on its invoices the 30 day payment terms set forth in the parties' pre-transaction written agreement. This objection, while not originally raised in the Objection, is the subject of a pending Federal Rule 15(b) motion. Second, the Debtors presented documentary evidence and witness testimony that Central Produce failed to deduct contemplated expenses from its alleged PACA trust claim, as required by 7 C.F.R. § 46.46(e)(5), by including

FREEBORN & PETERS LLP
JASON R. KLINOWSKI, ESQ.
311 SOUTH WACKER DRIVE, SUITE 3000
CHICAGO, ILLINOIS 60606
TEL: (312) 360-6000 · FAX: (312) 360-6570

charges for freight in its PACA claim.  Each of these objections are discussed in detail below.

Finally, the Debtors submit that Central Produce is not entitled to prevailing party attorneys' fees

even if it is successful in this matter because this proceeding does not qualify for prevailing party

attorneys' fees under the statute cited by Central Produce and, in any event, such prevailing party

attorneys' fees are not entitled to PACA trust protection.

I.      **CENTRAL PRODUCE FAILED TO PROPERLY PRESERVE ITS PACA TRUST RIGHTS BECAUSE ITS INVOICES DO NOT STATE THE PAYMENT TERMS**

There are two ways in which a PACA trust beneficiary can preserve its trust rights.  The

first method is to serve a notice of trust preservation upon the debtor within thirty days of the

date payment is due.  *See* 7 U.S.C. § 499e(c)(3).  The second method, available to PACA

licensees, is to use the creditor's ordinary and usual billing or invoice statements including

specified PACA trust language.  *See* 7 U.S.C. § 499e(c)(4).  If this method is used, the bill or

invoice must also include certain information required by the last sentence of subsection (c)(3).

*Id.*  Specifically, in the event the parties expressly agree to payment terms different from the

PACA default of "net 10", *see* 7 C.F.R. § 46.2(aa), " . . . the terms of payment **shall be disclosed**

on invoices, accountings, and other documents related to the transaction."  7 U.S.C. § 499e(c)(3).

Failure to list pre-transaction written payment terms results in the creditor's failure to properly

preserve its PACA trust rights.  *See e.g. G&G Peppers LLC v. Ebro Foods, Inc. (In re Ebro*

*Foods, Inc.)*, 449 B.R. 759 (N.D. Ill. 2011)(holding that "because the thirty-day term agreed to

by the parties is not disclosed on G&G's invoices, G&G failed to comply with subsection (c)(4),

and thus did not preserve its PACA trust rights."); *Nature Quality Vine Ripe Tomatoes v. Rawls*

*Brokerage, Inc.*, 536 F. Supp. 2d 1259, 1268 (N.D. Ala. 2005)(holding that "PACA trust rights

lost where parties agreed to thirty-day payment term but seller's invoices stated 'PACA

Terms'").

FREEBORN & PETERS LLP
Jason R. Klinowski, Esq.
311 South Wacker Drive, Suite 3000
Chicago, Illinois 60606
Tel: (312) 360-6000 ·Fax: (312) 360-6570

On or about June 3, 2013, the Debtors and Central Produce executed the 2013 Central Produce Sales Inc. Snap Bean Delivery Agreement for Allens Inc. (the "*Contract*"). *See* Debtors' Exhibit A-0009-10. The Contract set payment terms of 30 days for the product. *Id.* Central Produce utilized the invoices attached to its PACA Claim containing the required PACA trust language in an attempt to preserve its PACA trust rights pursuant to 7 U.S.C. § 499e(c)(4). Although Central Produce's payment reports, or invoices, contain PACA trust language, they do not list payment terms anywhere on the face of the documents as required under the statute. *See* Debtors' Exhibit A-0006-08. Victor Shank, President of Central Produce, confirmed this fact when he testified that the invoices do not contain payment terms, shipping terms, or any billing information for either the Debtors or Central Produce. Transcript of Hearing on Objection to PACA Claim of Central Produce ("*Transcript*"), Vol. I, 25:8-18; 36:2-8; 135:1-6. Mr. Shank further testified that in order to locate the payment terms, he would need to look to the Contract. *Id.* at 64:22 – 65:17. Additionally, Natasha Farmer, a grower analyst formerly employed by the Debtors, currently employed by Allens, Inc., and familiar with Central Produce's billing and payments, testified that she also could not tell from the face of the invoices the due date, the shipping terms, or the address where payment should be sent. *Id.* at 286:20 – 287:4. Accordingly, Central Produce failed to properly preserve its PACA trust rights because invoices 4203 and 4204, which are the subject of Central Produce's PACA claim, do not list the 30-day payment terms set forth in the Contract.

Several cases support the Debtors' position. For example, in *Ebro Foods*, the creditor's invoices stated that the payment terms were "PACA terms" despite the fact that the parties had a pre-transaction written agreement for "Net 30 Days" payment terms. *Ebro Foods*, 449 B.R. at 763. The Northern District of Illinois held that the creditor abrogated its PACA trust rights by

FREEBORN & PETERS LLP
Jason R. Klinowski, Esq.
311 South Wacker Drive, Suite 3000
Chicago, Illinois 60606
Tel: (312) 360-6000 · Fax: (312) 360-6570

failing to list the 30 day payment terms on the face of the invoices and that the creditor, therefore, failed to preserve its PACA trust rights. *Id.* at 766. In *Nature Quality*, Seald-Sweet, LLC entered into an agreement with Rawls Brokerage for 30 day payment terms, but Seald-Sweet failed to disclose these payment terms on any of its invoices. *Nature Quality*, 536 F. Supp. 2d at 1268. Accordingly, the Northern District of Alabama found that Seald-Sweet failed to properly preserve its PACA trust rights. *Id. See also In re Delyser*, 295 B.R. 430, 435 (Bankr. W.D.N.Y. 2003)("Should a seller fail to include the payment terms previously agreed to by the parties in writing on the very invoice that it elects to use to give notice of its intent to preserve the PACA Trust, it loses the benefits of the Trust."); *Bowlin & Son, Inc. v. San Joaquin Food Service, Inc. (In re San Joaquin Food Service, Inc.)*, 958 F.2d 938 (9th Cir. 1992)(affirming the bankruptcy court's prior decision that PACA claimant's failure to include pre-transaction written terms of payment on its invoices voided its right in the PACA trust, noting that "[w]here the parties expressly agree to a payment time period different from that established by the Secretary, the statute mandates that the terms of payment shall be disclosed on invoices, accountings, and other documents relating to the transaction." (internal quotations omitted)).

Based on the foregoing, it is clear that Central Produce failed to comply with 7 U.S.C. § 499e(c)(4)'s requirement to include on invoices 4203 and 4204 the applicable 30-day payment terms as set forth in the Contract. Central Produce therefore failed to properly preserve its PACA trust rights and the entirety of Central Produce's PACA claim should be deemed an Invalid Claim under the PACA Procedures Order.

## II.   THE DEBTORS PROPERLY RAISED THE PRESERVATION OBJECTION AT TRIAL THROUGH A TIMELY RULE 15(b).

At the conclusion of the Debtors' case-in-chief, but prior to resting their case, the Debtors moved, pursuant to Federal Rule 15(b) to amend the Omnibus Objection to conform to the

FREEBORN & PETERS LLP
JASON R. KLINOWSKI, ESQ.
311 SOUTH WACKER DRIVE, SUITE 3000
CHICAGO, ILLINOIS 60606
TEL: (312) 360-6000 · FAX: (312) 360-6570

evidence presented at the evidentiary hearing with respect to the objection discussed above in Section I relating to Central Produce's failure to preserve its PACA trust rights. *See* Transcript, Vol. 1, 287:14 – 290:6. The Debtors admitted that this objection was not raised in the Omnibus Objection, but stated that the Debtors discovered the basis for this objection during discovery. *See id.* 296:22 – 298:20. The Debtors placed Central Produce on notice of this objection on or about April 25, 2014 via a letter issued to counsel for Central Produce detailing the factual and legal bases for the objection. The Court admitted this letter into evidence as Debtors' Exhibit B2-135. Transcript, Vol. 2, 9:15 – 10:10.

On May 20, 2014, as further support for the Rule 15(b) motion, the Debtors filed a Memorandum of Law in Support of Debtors' Oral Motion to Amend Omnibus Objection to PACA Claims Pursuant to Rule 15(b) (the "*Memorandum of Law*") [Doc. No. 916] and Declaration of Attorney Jason R. Klinowski in Support of Debtors' Oral Motion to Amend the Omnibus Objection (the "*Declaration*") [Doc No. 917]. Accordingly, the Debtors request that the Court take judicial notice of the Memorandum of Law and Declaration and hereby incorporate all facts and legal arguments asserted therein into this Brief. *See Stahl v. United States Dep't of Agric.*, 327 F.3d 697, 700 (8th Cir. 2003) (a court may take judicial notice of public records); *In re Moffitt*, 406 B.R. 825, 829 n.2 (Bankr. E.D. Ark. 2009) (taking judicial notice of the docket in the case).

In addition to the Memorandum of Law and Declaration, the Debtors also note that in its closing arguments, Central Produce did not raise a single fact or argument that is germane to the inquiry under Rule 15(b)(1) or (2). Significantly, Central Produce had actual notice of the objection to its trust preservation as early as April 25, 2014 (*see* Debtors' Exhibit B2-135) and had adequate opportunity to cure any surprise resulting from the objection. Central Produce did

FREEBORN & PETERS LLP
JASON R. KLINOWSKI, ESQ.
311 SOUTH WACKER DRIVE, SUITE 3000
CHICAGO, ILLINOIS 60606
TEL: (312) 360-6000 · FAX: (312) 360-6570

not assert any lack of notice, surprise, or even prejudice. Central Produce has not and cannot assert any of these arguments because it in fact has no defense to the objection raised in Section I above. Accordingly, the Debtors respectfully request that the Court grant their Rule 15(b) motion to amend the Omnibus Objection in order to conform to the evidence presented under Rule 15(b)(2), or alternatively to aid in presenting the merits of this case under Rule 15(b)(1).

## III.   THE DEBTORS PROPERLY RAISED THE PRESERVATION OBJECTION AT TRIAL THROUGH A TIMELY RULE 15(b).

In its closing argument, Central Produce requested that the Court set a deadline to submit a fee application so that Central Produce could request prevailing party attorneys' fees pursuant to ACA § 16-22-308. Arkansas Code provides that:

> [i]n a civil action to recover on an open account, statement of account, account stated, promissory note, bill, negotiable instrument, or contract relating to the purchase or sale of goods, wares, or merchandise, or for labor or services, or breach of contract . . . the prevailing party may be allowed a reasonable attorney's fee to be assessed by the court and collected as costs.

This section allows recovery of attorneys' fees in contract actions, but does not permit recovery of attorneys' fees in unrelated actions such as tort claims. *See Barringer v. Hall*, 89 Ark. App. 293, 305 (Ark. Ct. App. 2005). The Debtors do not object to Central Produce's contractual right to the principal due and owing on invoices 4203 and 4204. Rather, the Debtors object to Central Produce's entitlement to PACA trust protection on those invoices. Thus, this is not a contract action, but an action to determine Central Produce's trust benefits. Accordingly, ACA § 16-22-308 is not applicable to this proceeding.

Alternatively, to the extent that ACA § 16-22-308 may be applicable to this proceeding, the Debtors note that the right to attorneys' fees was not specifically set forth in the Contract, any attorneys' fees awarded to Central Produce are not entitled to PACA trust protection as a "sum owing in connection" with the transaction. Simply put, there is not enough of a nexus between a

FREEBORN & PETERS LLP
Jason R. Klinowski, Esq.
311 South Wacker Drive, Suite 3000
Chicago, Illinois 60606
Tel: (312) 360-6000 · Fax: (312) 360-6570

statutory right to recover attorneys' fees that is contingent upon the outcome of litigation to be considered a "sum owing in connection" with a specific produce transaction.  Furthermore, Central Produce has not alleged or shown that any part of its notice of PACA trust protection to the Debtors included any mention of the recovery of attorneys fees.  *See E. Aramata, Inc. v. Platinum Funding Corp.*, 887 F. Supp. 590, 594 (S.D.N.Y. 1995) ("Attorneys' fees are not available under the PACA statute where a contractual basis for the fees is lacking."); *Morris Okun, Inc. v. Harry Zimmerman, Inc.*, 814 F. Supp. 346, 351 (S.D.N.Y. 1993) (declining an award of attorneys' fees where there was no contractual provision).  Accordingly, any award of attorneys' fees is not entitled to PACA trust protection.

Based on the foregoing, the Debtors request that the Court deny Central Produce's request to submit a fee application for prevailing party attorneys' fees or, in the alternative, hold that such attorneys' fees are not entitled to PACA trust protection.[1]

## IV. CENTRAL PRODUCE FILED AN INFLATED PACA TRUST CLAIM IN CLEAR VIOLATION OF THE REGULATIONS GOVERNING THE PACA

The terms of a pre-transaction written agreement and course of dealing among the parties can limit what is properly included in a PACA Claim.  These limits and exceptions to "sums owing in connection with a produce transaction" have been specifically authorized by Congress.[2] The House Agriculture Committee Report stated, in relevant part, as follows:

---

[1]     The Debtors reserve all rights to raise further objections to any attorneys' fees application filed by Central Produce.

[2]     Importantly, 7 C.F.R. §46.46(e) controls the ability of a buyer and seller to use their right to contract to enlarge the protections Congress set forth in the PACA.  For example, §46.46(e)(1) requires a buyer and seller to enter into pre-transaction written agreement if they elect to utilize payment terms other than those set forth in §46.2(z)-(aa).  §46.46(e)(2) prohibits a buyer and seller from utilizing a pre-transaction written agreement to extend payment terms beyond 30 days without losing PACA trust protection.  §46.46(e)(3) states that a seller will not lose PACA trust protection if it enters into a post-default written agreement with a buyer to satisfy a properly perfected PACA trust obligation.  Section 46.46(e)(4) states that PACA's trust provisions do not apply between a cooperative association and its members, which is all based upon contract.

FREEBORN & PETERS LLP
JASON R. KLINOWSKI, ESQ.
311 SOUTH WACKER DRIVE, SUITE 3000
CHICAGO, ILLINOIS 60606
TEL: (312) 360-6000 · FAX: (312) 360-6570

> [i]t is intended that the amount claimable against the trust by a seller-suppler, including a grower, will be the net amount due him after allowable deductions for expenses or advances of the buyer [Debtors herein] . . . . **H.R. 3867 does not, in any way, interfere with the ability of the seller-supplier, and buyer-receiver to set contract terms**.

H.R. Rep. No. 98-543 (1983) *reprinted in* 1984 U.S.C.C.A.N. 405, 408.  (emphasis added).

Consistent with this legislative mandate, section 46.46(e)(5) of Title 7 of the Code of Federal

Regulations provides, in relevant part, that:

> [t]he amount claimable against the trust by a beneficiary or grower will be the **net amount due after allowable deductions of contemplated expenses or advances made in connection with the transaction** by the commission merchant, dealer, or broker.

7 C.F.R. § 46.46(e)(5) (emphasis added).  Stated differently, a PACA trust beneficiary may not

artificially inflate its PACA trust claim to include every possible debt or financial obligation

between the parties.  Rather, a proper PACA trust claim is comprised only of the net amount due

to a claimant on a given Produce transaction (or series of transactions) after the subtraction of

any and all allowable deductions.   Under 7 C.F.R. § 46.46(e)(5), there are two recognized

categories of allowable deductions: the buyer's [Debtors herein] contemplated expenses, and the

buyer's advances made to the seller [PACA trust claimant herein] in connection with a given

Produce transaction.  *See id*.

A.     **THE RULES OF STATUTORY CONSTRUCTION SUPPORT THE DEBTOR'S POSITION THAT CENTRAL PRODUCE'S INFLATED PACA CLAIM VIOLATED 7 C.F.R. § 46.46(e)(5)**

Under applicable rules of statutory construction, "in the absence of a statutory definition

for a term, Arkansas courts resort to the plain meaning of the term."  *State v. Jernigan*, 385 S.W.

3d 776, 781 (Ark. 2011); "The rules of statutory construction mandate, when a statute's language

is plain, the sole function of the courts is to enforce it according to its terms."  *Carton v. General

Motor Acceptance Corp.*, 611 F.3d 451 (8th Cir. 2010); A term left undefined by a statute carries

FREEBORN & PETERS LLP
JASON R. KLINOWSKI, ESQ.
311 SOUTH WACKER DRIVE, SUITE 3000
CHICAGO, ILLINOIS 60606
TEL: (312) 360-6000 · FAX: (312) 360-6570

its ordinary meaning.  *Id*.  Only if the language of a statute is ambiguous may a court examine legislative history and other authorities to determine legislative intent.  *Estate of Farman v. C.I.R.*, 583 F.3d 581, 584 (8th Cir. 2009); Words in statutes are to be taken in their ordinary meaning unless they are technical terms or words of art.  *U.S. v. Mooney*, 425 F.3d 1093, 1100 (8th Cir. 2005); Dictionary definitions are used to determine the ordinary meaning of undefined terms in statutes.  *Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872, 879-80 (8th Cir. 2011).

In addition to legal cannons of statutory construction, courts also use grammatical rules to interpret statutory language.  To this end, the grammatical "rule of the last antecedent" states that a limiting clause of phrase should ordinarily be read as modifying only the noun or phrase that it immediately follows.  *Barnhart v. Thomas*, 540 U.S. 20 (2003); *See also Schumacher v. Cargill Meat Solutions Corp.*, 515 F.3d 867 (8th Cir. 2008)(noting the disjunctive effect of the word "*or*").

Under the rule of the last antecedent, § 46.46(e)(5) requires the word "*made*" to modify the word "*advances*" only.   Simply put, § 46.46(e)(5) requires seller-suppliers to deduct contemplated expenses (regardless of whether they were made or unmade) OR advances that were actually made.   The aforementioned interpretation is further supported by Congress' election to use the word "or" to separate "contemplated expenses" from advances made." Congress' use of the word "or" must be taken at face value and given its intended disjunctive effect.  *See Schumacher v. Cargill Meat Solutions Corp.*, 515 F.3d 867 (8th Cir. 2008)(noting the disjunctive effect of the word "*or*").   The rules of statutory construction mandate, when a statute's language is plain, the sole function of the courts is to enforce it according to its terms. *Carton v. General Motors Acceptance Corp.*, 611 F.3d 451 (8th Cir. 2010).

FREEBORN & PETERS LLP
JASON R. KLINOWSKI, ESQ.
311 SOUTH WACKER DRIVE, SUITE 3000
CHICAGO, ILLINOIS 60606
TEL: (312) 360-6000 ·FAX: (312) 360-6570

In this case, it is clear that § 46.46(e)(5) requires seller-suppliers to deduct contemplated expenses (regardless of whether they were made or unmade) OR advances that were actually made.  Central Produce's claims for PACA trust protection on such non-produce items like freight and fuel surcharges clearly constitute contemplated expenses and should not be included in any claim for trust protection.  The evidence clearly indicates that the parties' Contract and subsequent performance called for or otherwise contemplated that the Debtors would bear full responsibility for all freight charges incurred in connection with the parties Contract.  Central Produce never provided freight services to the Debtors with the expectation that the Debtors would not pay for such services without the need for Central Produce to look towards the charges associated with the Produce to cover the costs of the freight.  Central Produce contemplated and the Debtors agreed to pay for freight services obtained pursuant to the Contract.  These items (produce and freight) were separately negotiated, priced and verified for reasonableness.  Also the parties Contract contained separate payment terms for freight and product.  The foregoing illustrates the fact that Central Produce's freight charges to the Debtors constitute contemplated expenses of the Debtor and, therefore, are not properly part of Central Produce's trust claim.  As a direct result, Central Produce's claim for trust protection for freight and fuel surcharges should be denied as a matter of law.

### B.  THERE IS NO BASIS FOR CENTRAL PRODUCE'S FAILURE TO DEDUCT CONTEMPLATED EXPENSES FROM ITS TRUST CLAIM

Notwithstanding Central Produce's arguments to the contrary, there is no legal authority, rule of grammar, or rule of statutory construction that stands for the proposition that the Debtors must actually make or pay for the contemplated expenses in order for said expenses to be deducted from a proper PACA trust claim pursuant to § 46.46(e)(5).  As a matter of fact, the sole support for Central Produce's opposition to the Debtors' interpretation is based on preamble

FREEBORN & PETERS LLP
JASON R. KLINOWSKI, ESQ.
311 SOUTH WACKER DRIVE, SUITE 3000
CHICAGO, ILLINOIS 60606
TEL: (312) 360-6000 · FAX: (312) 360-6570

language related to the final rule that contained language that did not make it into and is otherwise wholly absent from § 46.46(e)(5). It is well settled in the 8th Cir. that "if Congress enacted into law something different from what it intended, then it should amend the statute to conform to its intent." *Carton v. General Motors Acceptance Corp.*, 611 F.3d 451 (8th Cir. 2010). Congress did not draft § 46.46(e)(5) to require the buyer to actually pay the "contemplated expenses" as a pre-condition to their eligibility to be deducted from a proper PACA claim. Rather, Congress only required that the parties contemplate the expenses as an expense of the buyer, which enables the Debtors to utilize their pre-transaction written agreements to mitigate their PACA trust liability exposure. The foregoing is consistent with the very purpose of § 46.46(e) in that it "governs… eligibility for trust protection." *Id*.

Importantly, Central Produce's opposition to the plain and unambiguous language of § 46.46(e)(5) is also based on an out of context statement regarding the payment of contemplated expenses made by an agent. The practical problem with Central Produce's attempt to rely on such legal authority is that Central Produce failed to present any evidence (nor could it) that the Debtors, as the buyer of the Produce, acted as an agent of the seller. Central Produce's own PACA claim makes the foregoing position untenable because the sale of Produce at issue is based on a written contract. Moreover, any allegation that the Debtors served as an agent of Central Produce stands in stark contract to long standing case law holding that the seller [Central Produce] is the agent of the buyer [Debtors] with respect to situations where the seller provides freight services to the buyer, which is the same situation at bar. *See In re Ben Gatz Company*, 38 Agric. Dec. 1038 (1979). In light of the above, it is clear that Central Produce failed to properly deduct the Debtors' contemplated expenses from its PACA trust claim in violation of §

FREEBORN & PETERS LLP
JASON R. KLINOWSKI, ESQ.
311 SOUTH WACKER DRIVE, SUITE 3000
CHICAGO, ILLINOIS 60606
TEL: (312) 360-6000 · FAX: (312) 360-6570

46.46(e)(5).  As such, the Debtors' objection should be sustained against Central Produce in its entirety.

Dated: June 3, 2014                        FREEBORN & PETERS LLP

                                           /s/ Jason R. Klinowski
                                           _____

                                           Jason R. Klinowski, Esq.
                                           FREEBORN & PETERS LLP
                                           311 South Wacker Dr., Ste. 3000
                                           Chicago, IL 60606-6677
                                           Telephone: (312) 360-6000
                                           Facsimile: (312) 360-6520

                                           *Special PACA Counsel for the Debtors*

FREEBORN & PETERS LLP
JASON R. KLINOWSKI, ESQ.
311 SOUTH WACKER DRIVE, SUITE 3000
CHICAGO, ILLINOIS 60606
TEL: (312) 360-6000 · FAX: (312) 360-6570

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Post Trial Brief in the Central Produce Matter, along with all exhibits thereto, if any, was served upon all counsel of record, via the Court's CM/ECF system, this 3rd day of June 2014.

FREEBORN & PETERS LLP


/s/ Jason R. Klinowski

Jason R. Klinowski, Esq.
FREEBORN & PETERS LLP
311 South Wacker Dr., Ste. 3000
Chicago, IL 60606-6677
Telephone: (312) 360-6000
Facsimile: (312) 360-6520

*Special PACA Counsel for the Debtors*

3115254v1/28215-0007

FREEBORN & PETERS LLP
JASON R. KLINOWSKI, ESQ.
311 SOUTH WACKER DRIVE, SUITE 3000
CHICAGO, ILLINOIS 60606
TEL: (312) 360-6000 · FAX: (312) 360-6570