IN THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

| | |
|---|---|
| IN RE: VEG LIQUIDATION, INC. f/k/a ALLENS, INC. and ALL VEG, LLC, Debtors | No. 5:13-bk-73597 Jointly Administered Ch. 7 |

## ORDER

Before the Court are the chapter 7 trustee's *Plaintiff's Motion For Order Imposing Sanctions For Defendants' Violations of FRBP Rule 2019* filed on August 18, 2016; the *Participating Defendants' Opposition to Plaintiff's Motion For Order Imposing Sanctions For Defendants' [Alleged] Violations of Fed. R. B. P. 2019* filed on November 13, 2016; and *Plaintiff's Reply Memorandum re Motion For Order Imposing Sanctions For Defendants' Violations of FRBP Rule 2019* filed on February 21, 2017.[1]  For the reasons stated below, the Court denies the trustee's motion for lack of standing.

The debtors filed their voluntary chapter 11 petition on October 28, 2013.  On February 12, 2014, the Court entered its order that authorized the sale of the majority of the debtors' assets pursuant to 11 U.S.C. § 363.  After the sale and on motion of the debtor, on June 6, 2014, the Court converted the chapter 11 case to a case under chapter 7.  On the same date, the chapter 7 trustee was appointed.  Now, over two years later, the chapter 7 trustee filed this motion for the imposition of sanctions for an alleged violation of the disclosure provisions found in Federal Rule of Bankruptcy Procedure 2019.[2]

---

[1] The trustee's motion for the imposition of sanctions and the defendants' response were initially filed in the underlying adversary proceeding: 5:16-ap-7017.  The Court caused the motion and response to be transferred to the above-captioned case on November 9, 2016.

[2] Federal Rule of Bankruptcy Procedure 2019 states:
(a) Definitions. In this rule the following terms have the meanings indicated:
    (1) "Disclosable economic interest" means any claim, interest, pledge, lien, option, participation, derivative instrument, or any other right or derivative right granting the holder an economic interest that is affected by the value, acquisition, or disposition of a claim or interest.
    (2) "Represent" or "represents" means to take a position before the court or to solicit votes regarding the confirmation of a plan on behalf of another.

(b) Disclosure by Groups, Committees, and Entities.
  (1) In a chapter 9 or 11 case, a verified statement setting forth the information specified in subdivision (c) of this rule shall be filed by every group or committee that consists of or represents, and every entity that represents, multiple creditors or equity security holders that are (A) acting in concert to advance their common interests, and (B) not composed entirely of affiliates or insiders of one another.
  (2) Unless the court orders otherwise, an entity is not required to file the verified statement described in paragraph (1) of this subdivision solely because of its status as:
    (A) an indenture trustee;
    (B) an agent for one or more other entities under an agreement for the extension of credit;
    (C) a class action representative; or
    (D) a governmental unit that is not a person.
(c) Information Required. The verified statement shall include:
  (1) the pertinent facts and circumstances concerning:
    (A) with respect to a group or committee, other than a committee appointed under § 1102 or § 1114 of the Code, the formation of the group or committee, including the name of each entity at whose instance the group or committee was formed or for whom the group or committee has agreed to act; or
    (B) with respect to an entity, the employment of the entity, including the name of each creditor or equity security holder at whose instance the employment was arranged;
  (2) if not disclosed under subdivision (c)(1), with respect to an entity, and with respect to each member of a group or committee:
    (A) name and address;
    (B) the nature and amount of each disclosable economic interest held in relation to the debtor as of the date the entity was employed or the group or committee was formed; and
    (C) with respect to each member of a group or committee that claims to represent any entity in addition to the members of the group or committee, other than a committee appointed under § 1102 or § 1114 of the Code, the date of acquisition by quarter and year of each disclosable economic interest, unless acquired more than one year before the petition was filed;
  (3) if not disclosed under subdivision (c)(1) or (c)(2), with respect to each creditor or equity security holder represented by an entity, group, or committee, other than a committee appointed under § 1102 or § 1114 of the Code:
    (A) name and address; and
    (B) the nature and amount of each disclosable economic interest held in relation to the debtor as of the date of the statement; and
  (4) a copy of the instrument, if any, authorizing the entity, group, or committee to act on behalf of creditors or equity security holders.
(d) Supplemental Statements. If any fact disclosed in its most recently filed statement has changed materially, an entity, group, or committee shall file a verified supplemental statement whenever it takes a position before the court or solicits votes on the confirmation of a plan. The supplemental statement shall set forth the material changes in the facts required by subdivision (c) to be disclosed.
(e) Determination of Failure to Comply; Sanctions.
  (1) On motion of any party in interest, or on its own motion, the court may determine whether there has been a failure to comply with any provision of this rule.
  (2) If the court finds such a failure to comply, it may:
    (A) refuse to permit the entity, group, or committee to be heard or to intervene in the case;
    (B) hold invalid any authority, acceptance, rejection, or objection given, procured, or received by the entity, group, or committee; or

The trustee argues that a group he calls the "Sager Creek Defendants" had an affiliation with "a number of other entities that they represent to have come to indirectly own the 'Buyer' (Sager Creek Acquisition Corp) . . . ." According to the trustee, the Sager Creek Defendants failed to disclose their relationship with these other entities and failed to disclose their relationship with Ball Metal Food Container Corporation [Ball] and an alleged "loan-to-own takeover" of the debtor. The trustee argues that the Sager Creek Defendants and Ball, acting in concert to advance their common interests, failed to disclose their entry into a pre-petition supply agreement. The trustee further argues that Ball, as a member of the Official Unsecured Creditors' Committee, was required to file a Rule 2019 disclosure based on its "disclosable economic interest" with Sager Creek in various forms. The trustee asserts that the failure of the Sager Creek Defendants and Ball to disclose their agreements resulted in a violation of due process and perpetrated fraud upon the court. The trustee believes that the Court would likely have rejected the proposed auction proceeding and subsequent sale of the debtor's assets if the proper disclosures had been made.

The defendants argue that the trustee misunderstands the requirements under Rule 2019 concerning who must make a disclosure. The defendants assert that the duty to file a disclosure statement could only be imposed on the Official Creditors Committee itself and that the individual creditors referenced in the trustee's motion–Ball and Sager Creek Defendants–did not have an obligation to file disclosures either separately or collectively because they did not form a group of creditors or equity security holders that are required to file the disclosures under the Rule. The defendants also state that they disclosed the pre-petition agreement between Ball and Sager Creek to the United States Trustee on the questionnaire for the Official Committee of Unsecured Creditors and argue that sanctions are not warranted.

---

(C) grant other appropriate relief.

According to the Rule, Rule 2019 applies only to cases under chapter 9 and chapter 11. This case was a case under chapter 11 from the date the petition was filed on October 28, 2013, until the case converted to a case under chapter 7 on June 6, 2014. A review of the Court's docket prior to conversion reflects that no committee or entity filed a Rule 2019 disclosure with the Court. On February 12, 2014, while the case was proceeding under chapter 11, the Court entered its order authorizing and approving the sale of substantially all of the debtor's assets after a sale of the assets was completed in accordance with 11 U.S.C. § 363. The current chapter 7 trustee was appointed on June 6, 2014, when the case converted.

Now, over two and a half years after the sale concluded and over two years after his appointment, the chapter 7 trustee has filed a motion for the Court to issue sanctions based on the alleged Rule 2019 non-disclosure of the "Sager Creek Defendants" and Ball prior to the sale of the assets and subsequent conversion to a case under chapter 7. In his motion, the trustee speculates that "[*i*]*n all likelihood*, compliance by the Defendants with Rule 2019 would have obviated" one of the pending adversary proceedings in this case because "disclosure *would likely have* derailed" the defendants' "scheme." The trustee also speculates that the Court "*likely would have* ordered different auction and bid procedures" and the "Creditors' Committee *would probably have been* reconstituted by the Court." The basis for the trustee's motion is subsection (e) of Rule 2019, which states that "[o]n motion of any party in interest, or on its own motion, the court may determine whether there has been a failure to comply with any provision of this rule." Before proceeding, the Court must first determine whether the trustee has standing as a "party in interest" to raise the alleged violation of Rule 2019 that occurred over two and a half years ago.

Standing is a constitutional requirement and a "threshold question in every federal case . . . ." *Warth v. Seldin*, 422 U.S. 490, 498 (1975); *Steger v. Franco, Inc.*, 228 F.3d 889, 892 (8th Cir. 2000). A defect in standing cannot be waived and "must be raised,

4

either by the parties or by the court, whenever it becomes apparent . . . ." *Baron & Budd, P.C. v. Unsecured Asbestos Claimants Comm.*, 321 B.R. 147, 158 (D.N.J. 2005) (citing *Belitskus v. Pizzingrilli*, 343 F.3d 632, 639 (3d Cir. 2003). The Supreme Court has articulated the requirements to satisfy Article III standing:

> a plaintiff must show (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, *not conjectural or hypothetical*; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, *as opposed to merely speculative*, that the injury will be redressed by a favorable decision.

*Eckles v. City of Corydon*, 341 F.3d 762, 767 (8th Cir. 2003) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000) (emphasis added).

Because Rule 2019 is only applicable in a chapter 11 case and not a chapter 7 case, the Court will look to chapter 11 to focus its inquiry. According to § 1109(b), a party in interest "may raise and appear and be heard on any issue in a case under this chapter." 11 U.S.C. § 1109(b). This subsection also recognizes a party in interest as including "the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee . . . ." *Id*. The trustee in a chapter 11 case is either a trustee appointed under § 1104 or the debtor-in-possession [DIP] acting under § 1107.

Although the yet-to-be-appointed chapter 7 trustee is not a named party in interest under § 1109, he may still be considered a party in interest if he has "'a sufficient stake in the outcome of the proceeding so as to require representation.' [citation omitted] Generally speaking, a 'sufficient stake' to be considered a party-in-interest can be a pecuniary interest that is directly or adversely affected." *Baron & Budd, P.C.*, 321 B.R. at 158; *see also Opportunity Fin., LLC v. Kelley*, 822 F.3d 451, 458 (8th Cir. 2016) (person aggrieved doctrine for purposes of appeal limits standing to persons "directly and adversely affected pecuniarily by the order") (citing *In re Peoples*, 764 F.3d 817, 820 (8th

5

Cir. 2014)).

In this case, it appears that the trustee filed his motion because "in all likelihood" had the parties complied with Rule 2019, the disclosure "would likely have" exposed the defendants' alleged "scheme" to influence the sale. Additionally, the trustee believes that the Court "likely would have" required different auction and bid procedures and "would probably have" required the United States Trustee to appoint a different Committee of Unsecured Creditors. However, each of these speculative events represent only potential pecuniary harm based on the alleged Rule 2019 non-disclosure and are "several steps removed" from a direct and adverse pecuniary impact. *Opportunity Fin.*, 822 F.3d at 458. The mere "possibility of harm does not satisfy the persons aggrieved standard." *Id*. Accordingly, the Court finds that the chapter 7 trustee has not suffered an "injury-in-fact" and does not have standing to move for an order imposing sanctions for the defendants' alleged violations of Rule 2019.

Even if the Court were to find the chapter 7 trustee had standing to pursue his motion for sanctions, the Court does not believe sanctions are warranted for three reasons: (1) the disclosure by Ball to the United States Trustee and the United States Trustee's duty to appoint an official unsecured creditors' committee, (2) the United States Trustee's and DIP's statutory duties while the case was proceeding in chapter 11, and (3) the Court's order authorizing the § 363 sale, including the fact that no party–including the chapter 7 trustee who was appointed four months after the completion of the sale–timely appealed the order or moved for the Court to reconsider its findings or set aside the order.[3] The Court will address each of these events below.

---

[3] Although the chapter 7 trustee did allege fraud on the court and collusion under § 363(n) in one of the adversary proceedings that has been filed in this case, the Court found that there was neither fraud on the court nor collusion under § 363(n) connected with the sale of the debtor's assets and has dismissed those two causes of action.

First, when this case was filed on October 28, 2013, the debtor filed its list of the top 20 unsecured creditors in the case including, at the top of the list, Ball with a claim of over $46 million. In a questionnaire from the United States Trustee's office concerning the official committee of unsecured creditors, Ball disclosed to the Trustee in response to Question #8 the following information:

> 8. Do you or any affiliated entities have any financial arrangement that may affect the value of your claim(s) against or interest(s) in the debtor(s) (e.g., personal guarantees, credit insurance, etc.)?
>
> Ball Metal Food Container Corp. ("Ball") is party to two financial arrangements that may affect the value of its claims against the Debtors:
>
> (a) Ball maintains a trade credit coverage policy covering shipments to, among others, Allens, Inc. ("Allens"). The value of the credit insurance as it relates to Ball's claim against Allens is uncertain and the insurer may contest coverage. Ball's credit insurance with repsect to Allens has a maximum value to Ball of $11 million.
>
> (b) Ball engaged in negotiations with Allens' second lien lenders prior to the petition date. These negotiations resulted in an agreement pursuant to which the second lien lenders, in the event they are the successful bidder for the Debtors' asset in a sale under section 363 of the Bankruptcy Code, will cause the Debtors' supply agreement with Ball to be amended to reflect revised business terms and to be assumed and assigned to the purchaser ("NewCo") in connection with the sale. Ball will receive a reduced "cure" in the form of the following: (I) the issuance by Newco of a $10 million principal amount third-lien note bearing interest at 5% per annum and payable in three equal installments on December 31, 2016, 2017 and 2018; (ii) assumption by Newco of $4 million of Ball's pre-petition payable and (iii) an additional $4.5 million payment if Newco is sold for an amount that implies a total enterprise value equal to or greater than $175 million.
>
> Ball's agreement with the second lien lenders is not exclusive and Ball is permitted to engage in negotiations with other bidders. In the event that Ball agrees with another bidder to terms more favorable than those agreed to with the second lien lenders, Ball has agreed to offer the same more favorable terms to the second lien lenders.

Either despite these disclosures or in the light of the disclosures, on November 12, 2013, the United States Trustee appointed Ball to the official committee of unsecured creditors and filed his Appointment of Committee of Unsecured Creditors.

Second, as mentioned above, the DIP has the rights and powers and performs the functions and duties of a trustee serving in a case under chapter 11. 11 U.S.C. § 1107(a). With this obligation, the DIP could have moved under Rule 2019 for the Court to determine whether there was a failure to comply with the required disclosures under Rule 2019 prior to the § 363 sale that occurred in February 2014, when it may have had the impact to which the chapter 7 trustee now speculates. Neither the DIP nor the United

7

States Trustee took such action and the chapter 7 trustee is bound by the acts of the DIP. *Armstrong v. Norwest Bank, Minneapolis, N.A.*, 964 F.2d 797, 801 (8th Cir. 1992).

Finally, the debtor liquidated its assets in an authorized § 363 sale that was completed over three years ago and for which the Court has already found there was neither fraud on the court nor collusion under § 363(n). *Order Granting in Part and Den. in Part Participating Def.'s Mot. to Dismiss* [doc. 119, 5:16-ap-7017]. Neither the sale order nor the order finding no collusion and no fraud on the court were timely appealed and no party moved for the Court to reconsider its findings or set aside the orders. The sanctions suggested by the trustee would effectively gut the Court's sale order even though "[a] bankruptcy sale under 11 U.S.C. § 363, free and clear of all liens, is a judgment that is good as against the world, not merely as against parties to the proceedings." *Regions Bank v. J.R. Oil Co., LLC*, 387 F.3d 721, 732 (8th Cir. 2004).

When considering the totality of the circumstances surrounding the trustee's request for sanctions, the Court finds that even if a technical violation of Rule 2019 occurred, sanctions would not be appropriate in this situation. The information required to be disclosed by Ball appears to have been disclosed and available to the United States Trustee, who then placed Ball on the official creditor's committee. To the extent Sager Creek was operating as an *ad hoc* committee and was required to file Rule 2019 disclosures, the Court found the sale to be proper and done at arm's length. In this instance, the debtor liquidated its assets in an authorized § 363 sale that was completed over three years ago and for which the Court found there was neither collusion under § 363(n) nor fraud on the court. Considering the sanctions requested by the trustee, it appears to the Court that this is simply an attempt by the chapter 7 trustee to renegotiate the terms of a sale conducted by the DIP in which the chapter 7 trustee was not involved and for which he does not like the result.

Because the Court finds that the chapter 7 trustee lacks standing to pursue a motion to

8

impose sanctions for an alleged violation of Rule 2019 when the case was proceeding in chapter 11, the Court dismisses the trustee's motion.

IT IS SO ORDERED.

/s/ Ben Barry
Ben Barry
United States Bankruptcy Judge
Dated: 03/20/2017

cc: all interested parties